UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT "SONNY" WOOD, an individual; ACCESS MEDICAL, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br>v.<br>NAUTILUS INSURANCE GROUP, a Delaware limited liability company, *et al.*,<br><br>Defendant. | Case No. 2:17-cv-02393-MMD-CWH<br><br>ORDER<br><br>(Def.'s Motion to Dismiss – ECF No. 8, Def.'s Motion to Strike – ECF No. 11, Pls.' Motion to Remand – ECF No. 18) |

## I. SUMMARY

Before the Court are three motions: Plaintiffs Robert "Sonny" Wood and Access Medical, LLC's (together, "Insureds") motion to remand (ECF No. 18); Defendant Nautilus Insurance Group's ("Nautilus") motion to dismiss (ECF No. 8); and Nautilus's motion to strike (ECF No. 11). The Court has reviewed the parties' responses and replies (ECF Nos. 19, 20, 26, 27, 29, 35). For the reasons discussed below, the Insureds' motion to remand is denied, Nautilus's motion to dismiss is granted in part and denied in part, and Nautilus's motion to strike is denied as moot.

## II. BACKGROUND

This action is intertwined with two other actions, one filed in California state court in 2011 ("Switzer Action") and the other filed in this Court in 2014 ("Coverage Action"). In the Switzer Action, a non-party named Ted Switzer alleged four claims for interference with prospective economic advantage against the Insureds. In the Coverage Action,

Nautilus obtained a declaration that it was not required to defend or indemnify the Insureds in the Switzer Action. In the current action, the Insureds primarily contend that Nautilus was required to defend and indemnify them in the Switzer Action after all.

The Switzer Action arose from a soured business relationship formed between Plaintiff Wood and a non-party, Ted Switzer. (*See* ECF No. 13-1 at 3.) Wood and Switzer founded Flournoy Management, LLC ("Flournoy") to market and sell medical implants.[1] (*Id.*) When the relationship deteriorated, Switzer initiated the Switzer Action against Wood and Flournoy to compel access to Flournoy's books and records. (ECF No. 1-1 at 9-10.) In the course of the Switzer Action, Switzer filed a cross-complaint asserting *inter alia* four claims for interference with prospective economic advantage against the Insureds. (*See* ECF No. 13-1 at 3, 7.)

Nautilus initiated the Coverage Action after the Insureds requested that Nautilus defend them in the Switzer Action. (ECF No. 1-1 at 12-13.) Nautilus sought a declaration in the Coverage Action that it did not owe a duty to defend or indemnify the Insureds. (*Id.* at 13.) The Insureds argued that Nautilus owed a duty to defend and indemnify because Switzer might advance a defamation claim based on certain factual allegations in his cross-complaint. (ECF No. 13-1 at 7.) (The insurance policy essentially required Nautilus to defend the Insureds against defamation claims.[2]) Nautilus argued that the factual allegations in the cross-complaint, coupled with the lack of any live defamation claims, were insufficient to trigger its duty to defend and indemnify. (*See id.*) The Court agreed with Nautilus and declared that it did not owe a duty to defend or indemnify. (*Id.* at 12.)

///

///

---

[1]Plaintiff Access Medical ("Access") conducted the same kind of business as Flournoy. (ECF No. 1-1 at 9.) Flournoy expected to receive certain profits from Access as well as profits from other companies that were owned by Switzer. (*Id.*)

[2]The Insureds' policy with Nautilus required Nautilus to defend and indemnify the Insureds for "personal and advertising injuries" resulting from claims relating to the "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." (ECF No. 13-1 at 3.)

2

Despite that judgment, the Insureds filed suit against Nautilus alleging five claims that are now pending before this Court: (1) declaratory relief (in the form of declarations that Nautilus owed a duty to defend and indemnify in the Switzer Action and that Nautilus was required to pay in full for the Insureds' independent counsel); (2) breach of contract; (3) breach of implied covenants; (4) promissory estoppel; and (5) violation of various provisions of NRS § 686A.310, which prohibits insurers from engaging in certain unfair claims settlement practices. (ECF No. 1-1.) Although the Insureds initially filed the lawsuit in Nevada state court, Nautilus removed to this Court. (ECF No. 1.)

### III.  MOTION TO REMAND (ECF No. 18)

#### A.  Legal Standard

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). However, courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

To establish subject matter jurisdiction pursuant to diversity of citizenship, the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Where it is not facially evident from the complaint that $75,000 was in controversy at the time of removal, a defendant seeking removal must prove, by a preponderance of the evidence, that the amount in controversy requirement is met. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

Under a preponderance standard, a removing defendant must "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the

jurisdictional minimum. *Id.* at 1117 (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). As to the kind of evidence that may be considered, the Ninth Circuit has adopted the "practice of considering facts presented in the removal petition as well as any 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Conclusory allegations are insufficient. *Id.*

B. **Discussion**

1. **Diversity of Citizenship**

Insureds first argue that removal is improper because Nautilus's petition for removal fails to allege the citizenship of the owners of Access. (ECF No. 18 at 3.) "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Thus, Insureds contend that Nautilus "is required to prove that every owner and member of Access is a citizen of a different state than Nautilus." (ECF No. 18 at 4.)

In its petition for removal, Nautilus alleged that Wood is a citizen of Nevada and that Access is a Delaware company with its principal place of business in Nevada. (ECF No. 1 at 3.) Nautilus also alleged its own citizenship in Arizona. (*Id.*) While Nautilus did not expressly enumerate every owner and member of Access and identify their citizenship, it had good reason—Wood testified under oath that "he is, and always has been, the sole member of Access." (ECF No. 29 at 12 (citing ECF No. 32-5 at 5-7).) Insureds do not dispute this fact. (*See* ECF No. 35.) Accordingly, the Court finds that Nautilus has demonstrated complete diversity.

2. **Amount in Controversy**

Insureds additionally argue that removal is improper because Nautilus did not set forth any evidence that the amount in controversy exceeds $75,000 in its petition for removal. (ECF No. 18 at 3.) It is not evident from the face of the underlying Complaint that Insureds seek more than $75,000 in damages. (*See* ECF No. 1-1 at 24.) However, the

Insureds clarify in their reply that they only seek damages related to Nautilus's failure to defend, allowing the Court to exclude indemnification for damages awarded in the Switzer Action. (ECF No. 35 at 3 (citing ECF No. 1-1 at 24).)

Nautilus's strongest argument is that the defense costs sought by Insureds exceed $75,000. (ECF No. 29 at 9.) While Nautilus provides a number of declarations attesting to various costs, the Court cannot consider those declarations because they constitute inadmissible hearsay. *Matheson*, 319 F.3d at 1090 (noting that the Ninth Circuit has "endorsed the Fifth Circuit's practice of considering . . . summary-judgement-type evidence relevant to the amount in controversy at the time of removal" (internal quotation marks omitted)); *see also Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). Nevertheless, given the extent of litigation that has taken place, it is more likely than not that the defense costs for which Insureds seek damages exceed $75,000. Using even conservative estimates, the cost of preparing for and defending in a twenty-five-day jury trial easily surpasses $75,000. Accordingly, the Court finds that Nautilus has sufficiently alleged amount in controversy for purposes of diversity jurisdiction.

**IV.   MOTION TO DISMISS (ECF No. 8)**

    **A.   Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations—but not legal conclusions—in the complaint. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

The Court will consider court records and other documentation from the Switzer Action and Coverage Action in evaluating Nautilus's motion to dismiss without converting it into a motion for summary judgment since both actions are matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) (citing Fed. R. Evid. 201).

### B. Discussion

Nautilus contends that the Insureds' claims are barred by issue preclusion and claim preclusion. (ECF No. 8 at 11-13.) Alternatively, Nautilus argues, the Insureds have failed to state claims. (*Id.* at 15-21.) The Court finds that the Insureds' first three claims (declaratory relief, breach of contract, and breach of implied covenants) are barred by issue preclusion. The Court also finds that the Insureds have failed to state a claim for violation of NRS § 686A.310. However, the Court finds that the Insureds successfully state a claim for promissory estoppel that is not barred by either issue or claim preclusion based on the judgment in the Coverage Action.

#### 1. Issue Preclusion

"The doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *Robi v. Five*

*Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (quoting *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979)). "In both the offensive and defensive use situations the party against whom estoppel [issue preclusion] is asserted has litigated and lost in an earlier action." *Id.* (alteration in original) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). "The issue must have been 'actually decided' after a 'full and fair opportunity' for litigation." *Id.* (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4416, at 138 (1981)). "A party invoking issue preclusion must show: 1) the issue at stake is identical to an issue raised in the prior litigation; 2) the issue was actually litigated in the prior litigation; and 3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action."[3] *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003).

The Insureds' first three claims are predicated on resolution of a single issue—whether Nautilus owes a duty to defend based on the terms of the insurance policy. The Insureds' first claim is for a declaratory judgment that "Nautilus is required to pay in full for the Insureds' independent counsel due to the existence of an actual controversy."[4] (ECF No. 1-1 at 17-18.) The Insureds allege that an actual controversy exists because Nautilus owes a duty to defend in the Switzer Action based on the terms of the insurance policy. (*See id.* at 17.) The Insureds' second claim is for breach of contract, which is also predicated on a finding that Nautilus has a duty to defend based on the terms of the insurance policy. (*Id.* at 18.) The Insureds' third claim is for breach of implied covenants of good faith and fair dealing. (*Id.* at 19.) This claim also turns on whether Nautilus owes a duty to defend based on the terms of the insurance policy: if Nautilus does not owe a

///

---

[3]The preclusive effect of a federal-court judgment (such as the prior judgment at issue here) is determined by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

[4]The Court construes the first claim as a request for declaratory relief based solely on the terms of the insurance contract. Although the Insureds' first claim contains allegations related to their promissory estoppel theory, the Insureds pleaded promissory estoppel as a separate claim for which declaratory relief can be granted.

duty to defend, then its refusal to defend could not have breached the implied covenants of the insurance policy.

Having defined one of the issues presently before the Court as whether Nautilus owes a duty to defend based on the terms of the insurance policy, the Court next considers four factors in evaluating the first element of the claim preclusion inquiry—whether this issue is identical to the issue raised in the Coverage Action:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
> (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
> (4) how closely related are the claims involved in the two proceedings?

*Resolution Tr. Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).

The first factor of the first element is satisfied because the evidence and arguments substantially overlap. Beginning with evidence, the Insureds relied on two allegations in the Coverage Action: Switzer's cross-claims and an allegedly defamatory e-mail sent by a representative of Access ("Weide E-mail"). (ECF No. 13-1 at 7.) The Weide E-mail stated that the "[d]istributor in the California area is now banned from selling Alphatec products." (ECF No. 1-1 at 12.) Here, the Insureds again rely on those two pieces of evidence (*id.* at 11-12), introducing only two additional pieces of evidence (*id.* at 16). The first additional piece of evidence the Insureds offer is a statement made by Switzer during his deposition—Switzer "indicated that he might have been terminated from selling Alphatec products." (ECF No. 1-1 at 16.) The Insureds suggest that this statement could ground a defamation claim by Switzer since the Weide E-mail stated that Switzer was in fact banned from selling Alphatec products. (*Id.*) The second additional piece of evidence the Insureds offer is a statement made by an individual named Dixie Switzer during her deposition that "contrary to Mr. Wood's representations, Mr. Switzer never informed a third party that he wanted to terminate their business relationship." (*Id.*) Presumably the Insureds intend to argue that this could also ground a defamation claim by Switzer (potentially triggering

8

Nautilus's duty to defend). Given that the Insureds pleaded half of the allegations upon which they rely in the Coverage Action, the evidence to be advanced in this proceeding substantially overlaps the evidence advanced in the Coverage Action. Moreover, the value of the additional factual allegations is dubious. Switzer's statement that he might have been terminated from selling Alphatec products could confirm that the Weide E-mail was true, undercutting the Insureds' contention that Switzer has an inchoate defamation claim at his disposal. Regarding Dixie Switzer's statement, the Insureds have failed to explain how it could ground a defamation claim.

Turning to the arguments, those also substantially overlap. The Insureds' claims for declaratory relief, breach of contract, and breach of implied covenants are predicated on arguments that Nautilus owes a duty to defend. The Insureds already advanced those arguments in the Coverage Action. (ECF No. 13-1 at 7.) The Insureds would likely attempt to advance new arguments based on the additional facts they have alleged, but the Insureds have failed to explain how the arguments they make in this action would differ from the arguments they made in the Coverage Action. (*See* ECF No. 20 at 7-9.)

The second factor in determining whether the issues are identical is satisfied because the two additional pieces of evidence the Insureds offer involve application of the same "rule of law" as that involved in the prior action. In the prior proceeding, the Court applied the terms of the insurance policy to the Insureds' factual allegations regarding Switzer's cross-complaint and the Weide E-mail to determine that Nautilus owed no duty to defend. (ECF No. 13-1 at 9-12.) Here, the Court would again apply the terms of the insurance policy to those factual allegations (and two additional factual allegations) to determine whether Nautilus owes a duty to defend. The same "rule of law"—here, the terms of the insurance policy—applies in both instances.

The third factor is satisfied because discovery in the Coverage Action could have uncovered the factual allegations the Insureds seek to present here. The Insureds had ample opportunity to conduct depositions of the Switzers in the Coverage Action but apparently elected not to do so. (ECF No. 13-1 at 6 ("Defendants . . . do not explain why

they could not have deposed these defendants in connection with this lawsuit, and discovery closed well before Nautilus filed its summary-judgment motion.").)

The fourth factor is satisfied because the Insureds' claims for declaratory relief, breach of contract, and breach of implied covenants are essentially the same as the claim decided in the Coverage Action. There, Nautilus sought a declaration that it did not owe a duty to defend, and here the Insureds seek a judgment that Nautilus does owe a duty to defend.

Nautilus has also shown that the other two elements of issue preclusion—that the issue was actually litigated in the prior action and that the determination of the issue in the prior action must have been a critical and necessary part of the judgment—are satisfied. Regarding the first of these remaining elements, the issue of whether Nautilus owed a duty to defend was actually litigated in the Coverage Action and decided on a motion for summary judgment. (ECF No. 13-1 at 12.) Regarding the last remaining element, the determination of the issue was a critical and necessary part of the judgment because it was the primary issue pending before the Court. (*See id.* at 2.)

Accordingly, the prior judgment in the Coverage Action has preclusive effect on the first three claims the Insureds advance.[5]

### 2. Claim Preclusion

Having found that the Insureds' claims for declaratory relief, breach of contract, and breach of implied covenants are barred by the doctrine of issue preclusion, the Court next considers whether the Insureds remaining claims for promissory estoppel and violation of NRS § 686A.310 are barred by claim preclusion.[6] "Claim preclusion 'treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on

---

[5] Nautilus has failed to show that the Insureds' remaining claims for promissory estoppel and violation of NRS § 686A.310 are barred by issue preclusion. Nautilus does not argue that the Insureds even hinted at a theory of promissory estoppel in the Coverage Action, and the issue of whether Nautilus owed a duty to defend is unrelated to whether it violated NRS § 686A.310.

[6] Nautilus contends that these claims are barred by claim preclusion. (ECF No. 8 at 11-13.)

10

the same claim or cause of action.'" *Robi*, 838 F.2d at 321 (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978)). "Claim preclusion 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.* (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)). Claim preclusion applies where the prior adjudication (1) involves the same claim as the later suit, (2) has reached a final judgment on the merits, and (3) involves the same parties or their privies. *United States v. Banco Intrenacional/Bital S.A.*, 110 F. Supp. 2d 1272, 1276 (C.D. Cal. 2000).

Like issue preclusion, the first element of the claim preclusion inquiry involves consideration of four factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;
> (2) whether substantially the same evidence is presented in the two actions;
> (3) whether the two suits involve infringement of the same right; and
> (4) whether the two suits arise out of the same transactional nucleus of facts."

*Banco*, 110 F. Supp. 2d at 1276 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–1202 (9th Cir.1982)). "These factors, however, are considered 'tools of analysis, not requirements.'" *Id.* (quoting *Int'l Union of Operating Eng'rs-Emp'rs Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993)). The fourth factor is the most important. *Id.* (citing *Costantini*, 681 F.2d at 1202).

The fourth and most important factor weighs against preclusion. The essential facts that gave rise to the Coverage Action were the following: Switzer filed a cross-complaint against the Insureds that potentially gave rise to a defamation action for which Nautilus would owe a duty to defend. The facts that give rise to the Insureds remaining claims for promissory estoppel and violation of NRS § 686A.310 are different. The Insureds' promissory estoppel claim arises from a letter that Nautilus sent to the Insureds on November 7, 2016 ("November Letter"), stating that it "will continue to provide a defense to [the] Insureds in the [Switzer Action] until there is a decision on the Insureds' motion for

reconsideration and appeal, if any[, in the Coverage Action]." (ECF No. 1-1 at 14.) The Insureds' claim for violation of NRS § 686A.310 essentially arises from factual allegations that Nautilus failed to communicate promptly when the Insureds tendered defense of the Switzer Action. (*Id.* at 23-24.)

Two of the three remaining factors also weigh against preclusion. Regarding the first factor (whether this action would impair rights or interests established in the prior judgment), the Coverage Action established that Nautilus had a right to refrain from defending the Insureds. (ECF No. 13-1 at 12.) That right would not be impaired by a determination in this action that Nautilus violated NRS § 686A.310. Nor would that right be impaired by a determination that Nautilus was estopped from withdrawing its defense based on the November Letter. Nautilus's right to refrain from defending the Insureds as established in the Coverage Action is based solely on the terms of the insurance policy and Insureds' factual allegations relating to Switzer's cross-complaint and the Weide E-mail. (ECF No. 13-4 at 4.) Nautilus may still have a right to refrain from defending on that basis, but Nautilus could simultaneously have assumed an obligation to defend on a different basis, e.g., promissory estoppel.

Regarding the third factor (whether the two suits involve infringement of the same right), the rights at issue in the two actions are different. In the Coverage Action, the right at issue was Nautilus's right to refrain from defending the Insureds in the Switzer Action based on the terms of the insurance policy as applied to the factual allegations before the Court. (*Id.*) The right at issue in the Insureds' claim for violation of NRS § 686A.310 is qualitatively different—at issue is the right to be free from unfair claims settlement practices. The right at issue in the Insureds' claim for promissory estoppel is also different—at issue is the right to a defense based on promissory estoppel, not a right to a defense based on the terms of the insurance contract as applied to the Insureds' factual allegations.

While the Insureds present substantially the same evidence in this action as in the Coverage Action (as discussed *supra*), the factors taken as a whole weigh against a

finding of preclusion. Accordingly, the Court finds that the Insureds' claims for promissory estoppel and violation of NRS § 686A.310 are not barred by claim preclusion.

### 3. Failure to State a Claim

#### a. Promissory Estoppel

To state a claim for promissory estoppel under Nevada law, the Insureds must show four elements exist: "(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that that party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984).

Nautilus first argues that estoppel cannot be used to create coverage under an insurance policy where such coverage did not originally exist. (ECF No. 8 at 17.) While coverage did not exist based on the Court's ruling in the Coverage Action, Nautilus nevertheless agreed to defend the Insureds in the Switzer Action "until there is a decision on the Insureds' motion for reconsideration [of the initial order in the Coverage Action] and appeal, if any." (ECF No. 1-1 at 14.) Nautilus allegedly made this representation after this Court had already determined that Nautilus did not owe a duty to defend.[7] While Nautilus apparently could have withdrawn under its reservation of rights at that point, Nautilus instead agreed to defend the Insureds in the Switzer Action through appeal of the Coverage Action to the Ninth Circuit.

Nautilus next argues that the Insureds fail to explain how they relied on Nautilus's purported promise to their detriment. (ECF No. 8 at 19.) The Insureds counter that they sufficiently alleged detrimental reliance by alleging that they asked Nautilus "to reconsider its position based on the fact that the Insureds relied on Nautilus's previous representations and that trial in the Underlying Action was scheduled to begin in less than

///

---

[7]In the Coverage Action, the Court issued its order on September 27, 2016 (ECF No. 13-1 at 1), and Nautilus made this representation on November 7, 2016 (ECF No. 1-1 at 14).

13

a month." (ECF No. 20 at 17-18 (citing ECF No. 1-1 at 15).) This allegation does not state *how* the Insureds relied to their detriment, but the Court can reasonably infer that the Insureds suffered a detriment when they lost their counsel on the verge of trial (and prior to conclusion of their appeal of the Coverage Action judgment). This detriment resulted from their reliance on Nautilus's representation that it would defend through appeal of the Coverage Action—if the Insureds were aware that they might lose their counsel prior to the conclusion of the Coverage Action appeal, they might have taken measures to mitigate the effects of Nautilus's withdrawal.

The parties do not appear to dispute that the Insureds have adequately pleaded facts to support the first three elements of promissory estoppel. Accordingly, the Insureds have stated a claim for promissory estoppel.

### b. NRS § 686A.310

The Insureds advance a number of claims for violation of NRS § 686A.310, but the Insureds have failed to plead factual allegations sufficient make any of these claims plausible.

First, the Insureds allege violation of NRS § 686A.310(1)(a), which prohibits "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue." The Insureds argue that Nautilus violated this provision by misrepresenting that it did not have a duty to defend even when the Insureds presented two new factual allegations in their second tender[8]—the statements by the Switzers during their depositions. (ECF No. 20 at 18.) This argument fails because Nautilus had a strong basis for representing that it did not have a duty to defend as the Court had already rendered judgment in the Coverage Action.[9] While the Court's decision did not take into

---

[8] The Insureds tendered defense of the Switzer Action for the first time on November 14, 2013. (ECF No. 1-1 at 11.) After receiving notice that Nautilus planned to withdraw representation in the Switzer Action, the Insureds tendered defense a second time on July 28, 2017 based on additional facts discovered in deposition testimony. (*Id.* at 15-16.)

[9] The Court's decision in the Coverage Action issued on September 27, 2016 (ECF No. 13-1 at 12), and the Insureds submitted their second tender to Nautilus on July 28, 2017 (ECF No. 1-1 at 16).

14

account the two additional factual allegations that the Insureds raised in their second tender, it would have been reasonable for Nautilus to evaluate the Insureds' new facts in light of that decision's reasoning and conclude that it still did not owe a duty to defend. The reasonableness of Nautilus's determination is borne out by the Court's subsequent decisions. In considering the Insureds' new facts on a motion for relief from judgment, the Court concluded that the allegations "probably did not trigger Nautilus's coverage." (ECF No. 13-4 at 4-5.)

The Insureds also argue that Nautilus violated this provision by misrepresenting that the Insureds were required to pay part of the costs of independent counsel. (ECF No. 20 at 18.) This argument fails because the Insureds have alleged no basis for asserting that Nautilus was required to pay in full for independent counsel. The Insureds do not cite to any source of such legal obligation, whether statutory, contractual, or otherwise. (*Id.* at 18; *see also* ECF No. 1-1 at 12-13.)

Next, the Insureds claim violation of NRS § 686A.310(1)(b), which prohibits "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." The Insureds argue that Nautilus violated this provision by failing to acknowledge the Insureds' first tender (made November 14, 2013) until December 6, 2013. (ECF No. 20 at 19; *see also* ECF No. 1-1 at 11-12.) The Insureds also argue that Nautilus violated this provision by failing to respond to their second tender (made July 28, 2017) until August 10, 2017. (ECF No. 20 at 19; ECF No. 1-1 at 15-16.) Nautilus responds that the Insureds' claims related to the first tender are time-barred under the three-year statute of limitations for actions based upon a liability created by NRS § 11.190. (ECF No. 27 at 16.) The Court agrees that claims for violation of NRS § 686A.310 related to the first tender are time-barred. Regarding the second tender, Nautilus cites to persuasive authority that a three-month delay in processing an insurance claim is not an unreasonable delay that constitutes a violation of NRS § 686A.310. *Williams v. Am. Family, Mut. Ins. Co.*, 593 Fed App'x 610, 612 (9th Cir. 2014); *see also Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1238 (D. Nev. 2010) (finding that a

15

delay of just over two months could not support a claim under NRS § 686A.310(d)). The delay of less than half a month between the second tender and Nautilus's response is far less than three months. Thus, the Insureds have failed to plead that Nautilus did not provide a coverage decision within a reasonable period of time.

The Insureds further claim violation of NRS § 686A.310(1)(c), which prohibits "[f]ailing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies." The Insureds argue that Nautilus's failure to adopt reasonable standards can be inferred from the delays between their tenders and Nautilus's responses. (*See* ECF No. 20 at 19.) The Court disagrees. The delay between the second tender and Nautilus's decision was thirteen days, a fairly short period of time. While the delay between the first tender and Nautilus's decision was significantly longer—four months—the Court infers that Nautilus's decision-making process took a long time because the issue was complicated. The very existence of the Coverage Action bolsters this inference. Accordingly, the Insureds have failed to plead facts that give rise to a plausible inference that Nautilus failed to adopt and implement reasonable standards.

The Insureds further claim violation of NRS §§ 686A.310(1)(d) and (e), which prohibit "[f]ailing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured" and "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." The Insureds argue that Defendant violated these provisions based on the same factual allegations used to support their claim for violation of subsection (c). (ECF No. 20 at 19.) The Court will dismiss these claims for the same reason stated in discussion of subsection (c).

The Insureds further claim violation of NRS § 686A.310(1)(f), which prohibits "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably

similar to the amounts ultimately recovered." The Insureds fail to allege any facts that they made claims for amounts similar to the amounts ultimately recovered. (*See* ECF No. 1-1 at 23; ECF No. 20 at 19-20.) Accordingly, the Court will dismiss this claim.

Finally, the Insureds claim violation of NRS § 686A.310(n), which prohibits "[f]ailing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim." The Insureds fail to describe how the explanation for denial of its claim was unreasonable, particularly given the Court's determination that Nautilus did not owe a duty to defend. (*See* ECF No. 1-1 at 23; ECF No. 20 at 19-20.) Accordingly, the Court will dismiss this claim.

## V. MOTION TO STRIKE (ECF No. 11)

In light of the Court's ruling on Nautilus's motion to dismiss, it is unclear whether Nautilus still seeks to strike portions of the Insureds' Complaint. Regardless, some of the requests in the motion are rendered moot by the Court's rulings. (*See*, *e.g.*, ECF No. 11 at 14 (requesting that certain allegations in the breach of contract cause of action be struck).) Accordingly, the motion to strike is denied as moot.

## VI. AMENDMENT

The Court grants leave to amend with respect to the Insureds' claims for violations of subsections (a), (c), (e), and (f) of NRS § 686A.310 because it is conceivable that the Insureds could amend their Complaint to cure the deficiencies that have resulted in dismissal of these claims. *See Contreras v. Toyota Motor Sales U.S.A. Inc.*, 484 F. App'x 116, 118 (9th Cir. 2012) ("Courts 'should freely give leave' to amend 'when justice so requires.'" (quoting Fed. R. Civ. P. 15(a)(2)); *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.").

The Court does not grant leave to amend claims under subsections (b) and (d) because the Insureds' claims relating to the first tender are time-barred, and Nautilus

responded fairly quickly to the Insureds' second tender. The Court does not grant leave to amend a claim under subsection (n) because Nautilus's determination that it did not owe a duty to defend could not have been unreasonable in light of the Court's decision in the Coverage Action.

**VII.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Insureds' motion to remand (ECF No. 18) is denied.

It is further ordered that Nautilus's motion to dismiss (ECF No. 8) is granted in part and denied in part. It is granted as to the Insureds' claims for declaratory relief, breach of contract, breach of implied covenants, and violations of NRS § 686A.310. It is denied as to the Insureds' claim for promissory estoppel, which the Court permits to proceed. The Insureds will be given leave to file an amended complaint to cure the deficiencies with respect to its claims for violations of subsections (a), (c), (e), and (f) of NRS § 686A.310 within ten (10) days.  Failure to file an amended complaint will result in dismissal of these claims with prejudice and the case will proceed on the Insureds' claim for promissory estoppel.

It is further ordered that Nautilus's motion to strike (ECF No. 11) is denied as moot.

DATED THIS 26th day of December 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE