**COMP**
MARTIN J. KRAVITZ, ESQ.
Nevada Bar No. 83
L. RENEE GREEN, ESQ.
Nevada Bar No. 12755
KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 So. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone:  (702) 362-6666
Facsimile:   (702) 362-2203
mkravitz@ksjattorneys.com
rgreen@ksjattorneys.com

JORDAN P. SCHNITZER, ESQ.
Nevada Bar No. 10744
THE SCHNITZER LAW FIRM
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148
Telephone: (702) 960-4050
Facsimile: (702) 960-4092
Jordan@TheSchnitzerLawFirm.com

*Attorney for Plaintiffs,*
ROBERT "SONNY" WOOD and
ACCESS MEDICAL, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT "SONNY" WOOD, an individual; ACCESS MEDICAL, LLC, a Delaware limited liability company,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>NAUTILUS INSURANCE COMPANY, an Arizona corporation; and DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br>　　　　　　　　Defendants. | Case No.: 2:17-cv-02393-MMD-CWH |

## FIRST AMENDED COMPLAINT

COME NOW, Plaintiffs Robert "Sonny" Wood ("Wood"), and Access Medical, LLC ("Access") by and through their attorneys of record, the law firm of KRAVITZ, SCHNITZER & JOHNSON, CHTD., pray and allege against Defendant Nautilus Insurance Company ("Nautilus"), as follows:

1

## JURISDICTION AND VENUE

1. The Eighth Judicial District Court ("Court") has personal jurisdiction over the claims set forth pursuant to NRS 14.065 on the grounds that such jurisdiction is consistent with the Nevada Constitution and the United States Constitution.

2. Venue is proper pursuant to NRS 13.010 et seq. because, among other reasons, the events alleged in the Complaint primarily occurred in the County of Clark, State of Nevada. Moreover, the obligations that arise in the Complaint were to occur in the County of Clark, State of Nevada.

3. This Complaint states a controversy from which the Court has jurisdiction and venue is properly in that as Nautilus were residents and/or had its principal place of business in Clark County, Nevada.

4. Further, the relevant policy of insurance was formed and/or executed in Clark County, Nevada.

5. Further, the relationship between the insured and insurer was formed in Clark County, Nevada.

## PARTIES

6. Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through 5 and incorporates herein by reference as fully set forth herein.

7. Plaintiff ROBERT SONNY WOOD, at all times relevant to this Complaint, was a resident in the State of Nevada.

8. Plaintiff ACCESS MEDICAL, LLC, at all times relevant to this Complaint, was a limited liability company existing under the laws of the State of Delaware with its principal place of business in the State of Nevada.

9. Defendant NAUTILUS INSURANCE COMPANY ("Nautilus") is a company organized and existing under the laws of the State of Arizona that is authorized and doing business in the State of Nevada as an insurance carrier by offering for sale insurance products, such as the policy of insurance sold by Nautilus to Plaintiffs.

10. The true names or capacities, whether individual, corporate, associate or

1 otherwise of Defendants DOES I - X and/or ROES CORPORATIONS I - X, inclusive, are
2 unknown to Plaintiffs who, therefore, sues said Defendants by such fictitious names. Plaintiffs
3 are informed, believe and allege that Defendants designated herein as a DOE and/or ROE
4 CORPORATION are any one of the following:

    a.    A party responsible in some manner for the events and happenings hereunder referred to, and in some manner proximately caused injuries and damages to the Plaintiffs as herein alleged including, but not limited to, responsible for issuing the insurance policy and responsible for failing to agree to defend Plaintiffs in accordance to Nautilus's representations to its Insureds;

    b.    A party responsible in some manner for the events and happenings hereunder referred to, and in some manner proximately caused injuries and damages to the Plaintiffs as herein alleged including, but not limited to having Nautilus's insured, Mr. Wood, pay out of pocket expenses for independent counsel;

    c.    Parties that were the agents, servants, authorities and contractors of the Defendant Nautilus, each of them acting within the course and scope of their agency, employment, or contract; and/or

    d.    Parties that have assumed or retained the liabilities of any of the Defendants by virtue of an agreement, sale, transfer or otherwise.

**GENERAL ALLEGATIONS**

11. Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through 10 and incorporates herein by reference as fully set forth herein.

12. Plaintiff Access is a medical implant third party distributer.

13. On or about January 15, 2011, Nautilus provided a Policy to its Insureds, policy number of BN952426 (hereinafter the "Policy"). The effective dates of coverage for the 2011 Policy were January 15, 2011 to January 15, 2012.

14. On or about January 15, 2012, Nautilus renewed the 2011 Policy, which was

given a new policy number of BN954806 ("2012 Policy"). The 2012 policy contained the identical language as that set forth above from the Initial Policy and 2011 Policy.

15. On or about May 16, 2011, Mr. Wood formed, and became a Member and Manager of Flournoy Management, LLC ("Flournoy").

16. On or about June 1, 2011, Flournoy was added as an additional insured to the policy.

17. From June 1, 2011, to August 31, 2011, Flournoy conducted business substantially similar to Access. Further, Flournoy was intended to receive certain profits from Access, as well as profits from companies owned by the other member of Flournoy, Ted Switzer ("Switzer").

18. Prior to August 31, 2011, Mr. Wood became suspicious that Switzer was not acting faithfully to Flournoy and ended the relationship. Switzer then sought access to Flournoy's books and records. When he was unsatisfied with the response, he filed suit against Flournoy and Wood to compel access to the books and records in California on December 27, 2011.

19. Section II(c) of the 2011 Policy, titled "WHO IS AN INSURED" sets forth, *inter alia*, the following:

> **SECTION II- WHO IS AN INSURED**
>
> ...
>
> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

20. Based upon Section II(c) of the Policy, Plaintiffs Access and Mr. Wood are insureds in accordance to the Policy (hereinafter collectively the "Insureds").

21. Based on Coverage B in the Policy, the Policy provided that Nautilus would provide a defense and indemnification for Plaintiffs from claims against Plaintiffs involving "Personal and Advertising Injury."

22. The Policy defined "Personal and Advertising Injury" as an injury arising out of an "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]"

23. The Policy did not contain a right to reimbursement provision that provided Nautilus had the right to seek reimbursement for the payment of an insured's defense costs if it is later determined that a claim is not covered under the Policy.

24. Mr. Switzer filed a Cross-Complaint against Mr. Wood on June 3, 2013 (hereinafter the "Underlying Action").

25. In the Cross-Complaint described in Paragraph 24, Mr. Switzer asserted the tort intentional interference with prospective business, specifically titled "Interference with Prospective Economic Advantage," against the Insureds on multiple occasions.

26. California law applied to the tortious acts that Mr. Switzer alleged against the Insureds in the Cross-Complaint in the Underlying Action.

27. As held by the California Supreme Court in *Della Penna v. Toyota Motor Sales, U.S.A.*, 902 P.2d 740, 751 (Cal. 1995), one of the elements to the tort intentional interference with prospective business advantage is that the tortfeasor committed intentional acts that disrupted the prospective business relationship.

28. As held by the California Supreme Court in *Della Penna v. Toyota Motor Sales, U.S.A.*, in order to sufficiently allege that the tortfeasor committed intentional acts that disrupted the prospective business relationship, the claimant must allege that the tortfeasor engaged in an independent act that was wrongful by some legal measure other than the fact of interference itself.

29. In accordance to the California Court of Appeals in *PMC, Inc. v. Saban Entm't, Inc.*, 52 Cal. Rptr. 2d 877, 891 (Ct. App. 1996), the independent actionable acts as specified in Paragraph 28 of this Complaint can include "violations of federal or state law or unethical business practices, e.g., violence, misrepresentation, unfounded litigation, defamation, trade libel or trademark infringement."

30. Ted Switzer's Cross-Complaint failed to sufficiently allege the causes of action

titled "Interference with Prospective Economic Advantage" because Mr. Switzer failed to allege that the Insureds engaged intentional acts that disrupted the prospective business relationship and that these intentional acts were independent and wrongful by some legal measure other than the fact of interference itself.

31. Instead of pleading that the Insureds engaged in intentional acts that were independent and wrongful by some legal measure other than the fact of interference itself, Mr. Switzer merely alleged that the Insureds engaged in wrongful acts that resulted in a disruption of the relationship between Mr. Switzer and various third parties in his Cross-Complaint.

32. Based on the allegations pleaded in the Cross-Complaint, Mr. Switzer's causes of action titled "Interference with Prospective Economic Advantage" in the Cross-Complaint were legally deficient in accordance to California law.

33. Based upon the Underlying Action, the Insureds tendered defense to Nautilus on or about November 14, 2013.

34. In support of tendering the defense of the Underlying Action to Nautilus, the Insureds presented Nautilus with an e-mail written by Jacqueline Weide from which the Insureds indicated potentially gives rise to Nauitlus's duty to defend.

35. After more than four months of Plaintiffs receiving no response from Nautilus regarding Plaintiffs' tender of defense although Plaintiffs requested a response multiple times, Nautilus agreed to defend the Insureds in the Underlying Action.

36. After accepting the Insureds' tender of defense in the Underlying Action, Nautilus controlled the defense, investigation and settlement opportunities of the Insureds as it related to the Underlying Action.

37. Due to the fact that Nautilus failed to promptly communicate with Plaintiffs its decision to defend Plaintiffs in the Underlying Action, coupled with the fact that Nautilus indicated that it still did not believe that it owed a duty to defend, an actual conflict of interest was present between Plaintiffs and Nautilus.

38. The Supreme Court of Nevada has held that when there is conflict of interest between the insurer and the insured, the insurer is required to allow insureds to select their own

counsel and to pay the reasonable costs for the independent counsel's representation. *State Farm Mut. Auto. Ins. Co. v. Hansen*, 357 P.3d 338 (Nev. 2015).

39. In accordance to *State Farm Mut. Auto. Ins. Co. v. Hansen*, Nautilus was required to allow Plaintiffs to select their own independent counsel due to the fact there was an actual conflict of interest between Nautilus and its Insureds in regard to Nautilus's duty to defend and indemnify in the Underlying Action at the time Nautilus agreed to defend the Insureds.

40. In accordance to *State Farm Mut. Auto Ins. Co. v. Hansen*, Nautilus was required to pay for reasonable costs for the independent counsel's representation due to the fact there was an actual conflict of interest between Nautilus and its Insureds in regards to Nautilus's duty to defend and indemnify in the Underlying Action at the time Nautilus agreed to defend the Insureds.

41. Although Nautilus was required to pay for the reasonable rate of Insureds' independent counsel, Nautilus refused to pay the full hourly rate that the Insureds' independent counsel billed throughout the time that independent counsel represented the Insureds.

42. Independent counsel continued to represent the Insureds throughout the Underlying Action, from which a verdict was not reached until November of 2017.

43. The hourly rate billed by the independent counsel was reasonable for the work that was required and expected to be done.

44. Instead of Nautilus paying independent counsel for the Insureds' legal fees, the Insureds were required to independently pay for a portion of the amount that independent counsel billed throughout the year of 2017.

45. In accordance with *United Natl. Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (2004), Nautilus had a duty to investigate the facts behind the legally deficient Cross-Complaint in the Underlying Action in order to ascertain whether it had the duty to defend and indemnify its Insureds.

46. Although Nautilus controlled the reigns of defense in the Underlying Action, Nautilus failed to sufficiently investigate and ascertain the facts behind the legally deficient Cross-Complaint to determine if facts existed that would trigger the duty to defend or the duty to

indemnify.

47. One of the instances from which Nautilus failed to investigate the facts behind the deficient Cross-Complaint in the Underlying Action was conducting an independent investigation as to whether the e- mail written by Ms. Weide gave rise to Nautilus's duty to defend.

48. Instead of Nautilus investigating the facts behind Mr. Switzer's legally deficient Cross-Complaint either on its own or through the defense counsel it hired in the Underlying Action, defense counsel in the Underlying Action merely answered the legally deficient Cross-Complaint.

49. Instead of answering the legally deficient Cross-Complaint, Nautilus was required to have the defense counsel in the Underlying Action file a Motion to Dismiss or Motion for a More Definite Statement in regards to seeking clarity in the legally deficient Cross-Complaint.

50. As a result of the failure to strike the legally deficient Cross-Complaint, the Insureds were left vulnerable to Mr. Switzer pleading and seeking damages for multiple causes of action that Mr. Switzer failed to sufficiently plead in the Cross-Complaint under the causes of action titled "Interference with Prospective Economic Advantage."

51. Instead of investigating the facts behind the legally deficient Cross-Complaint in the Underlying Action, Nautilus filed a Complaint in the United States District Court for the District of Nevada against the Insureds for declaratory relief regarding the duty to defend and indemnify the Insureds in the Underlying Action (hereinafter Nautilus Complaint") on February 24, 2015.

52. The Nautilus Complaint never alleged that Nautilus sought reimbursement for attorney's fees that Nautilus paid for the defense of the Insureds in the Underlying Action.

53. On January 15, 2016, Nautilus filed a Partial Motion for Summary Judgment seeking a declaratory judgment that it has no duty to defend the Insureds in the Underlying Action.

54. In Nautilus's Partial Motion for Summary Judgment, Nautilus did not seek a judgment regarding the Insureds reimbursing Nautilus for the defense costs Nautilus paid in the

Underlying Action.

55. On September 27, 2016, the United States District Court for the District of Nevada decided that Nautilus did not have the duty to defend the Insureds in the Underlying Action at the time Nautilus' Complaint was filed.

56. The District Court Judge ruled that Nautilus's Complaint only sought a declaration concerning whether a defense was owed *at the time the Complaint was filed* not whether it ever owed a defense or whether it could potentially owe a defense in the future.

57. On October 25, 2016, Nautilus filed a Motion for Further Relief in the United States District Court for the District of Nevada in order to request that it be reimbursed for the defense costs it paid in the Underlying Action.

58. On October 25, 2016, the Insureds filed a Motion for Reconsideration in regard to the Order Granting Nautilus's Partial Motion for Summary Judgment.

59. Nautilus sent a letter to the Insureds dated November 7, 2016 that it "will continue to provide a defense to its Insureds in the Underlying Action until there is a decision on the Insureds' motion for reconsideration and appeal, if any."

60. The Insureds sent a letter to Nautilus dated November 9, 2016 that it continued to accept and expected Nautilus to provide a defense to them in the Underlying Action until the United States District Court for the District of Nevada and, if necessary, the United States Ninth Circuit Court of Appeals decided Nautilus's duty to defend its Insureds in the Underlying Action.

61. The Insureds relied on Nautilus's representations that it would continue to defend the Insureds through the appeal, if necessary.

62. On May 18, 2017, the United States District Court for the District of Nevada denied both the Insureds' Motion for Reconsideration and Nautilus's Motion for Further Relief.

63. The Insureds sent a letter to Nautilus dated May 19, 2017 that informed Nautilus that they were going to appeal the United States District Court for the District of Nevada's Order Denying the Motion for Reconsideration and thus expected Nautilus to defend them in the Underlying Action as represented in Nautilus's letter dated November 7, 2016 through the appeal

9

to the United States Court of Appeals for the Ninth Circuit.

64. On June 16, 2017, Nautilus filed a Notice to Appeal the United States District Court of Appeals for the Ninth Circuit appealing the United States District Court for the District of Nevada's Order denying its Motion for Further Relief.

65. On June 19, 2017, the Insureds filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit appealing the United States District Court for the District of Nevada's Order denying their Motion for Reconsideration.

66. As represented in Nautilus's letter dated November 7, 2016, Nautilus continued to provide a defense for the Insureds in the Underlying Action for a period of time.

67. While Nautilus controlled the defense and settlement of the Insureds in the Underlying Action, Nautilus failed to keep the interests of the Insureds at least as equal to its own.

68. At the time that Nautilus and the Insureds filed their Notices of Appeal, trial in the Underlying Action was scheduled to begin on August 14, 2017.

69. At the time that Nautilus accepted the Insureds' tender of defense in the Underlying Action, Nautilus had the duty to adequately inform an insured of the strategy and facts of the progress of litigation in the Underlying Action. See *Allstate v. Miller*, 212 P.3d 318, 325 (Nev. 2009).

70. By the time that Nautilus and its Insureds filed their Notices of Appeal, Nautilus, who controlled the reigns of defense in the Underlying Action, changed the defense firms that were defending Plaintiffs in the Underlying Action on at least two separate occasions. Thus, at least three separate defense firms defended Plaintiffs in the Underlying Action.

71. When Plaintiffs questioned Nautilus on its decision to change defense counsel in the Underlying Action on at least two occasions, Nautilus failed to inform and provide an explanation to Plaintiffs of these changes to defense.

72. The change of defense counsel in the Underlying Action was without consent of the Plaintiffs, to the Plaintiffs' detriment, and prevented defense counsel in the Underlying Action from properly defending Plaintiffs.

73. The improper defense of the Insureds due to the actions of Nautilus included, but were not limited to, ensuring that Mr. Switzer's deficiently pleaded allegations in the Cross-Complaint were either flushed out or stricken at the time of trial in the Underlying Action.

74. At the time of trial, Mr. Switzer's counsel attempted to submit a jury instruction to the jury to decide whether the Insureds committed defamation due to the e-mail that was written by Jacqueline Weide.

75. Unexpectedly, Linda Hsu of Selman Breitman, LLP, acting as an agent of Nautilus under actual and apparent authority, sent a letter dated July 6, 2017 that stated Nautilus was abruptly withdrawing the defense in the Underlying Action on August 1, 2017.

76. On July 18, 2017, the Insureds sent a letter to Linda Hsu informing her that the Insureds relied on her representations in the letter dated November 7, 2016, which provided that Nautilus would continue to provide a defense for the Insureds in the Underlying Action through any appeal.

77. In the letter to Ms. Hsu dated July 18, 2017, the Insureds also asked Nautilus to reconsider its position based on the fact that the Insureds relied on Nautilus's previous representations and that trial in the Underlying Action was scheduled to begin in less than a month.

78. The letter dated July 18, 2017 to Ms. Hsu also stated that Nautilus was committing bad faith by making its Insureds pay for a portion of the fees for independent counsel while Nautilus determined if there was coverage under the Policy.

79. On or about June 28, 2017, the Insureds received the deposition transcripts from Jacqueline Weide, Ted Switzer, and Dixie Switzer that were taken in the Underlying Action.

80. The depositions described in Paragraph 75 of this Complaint ended on May 5, 2017 for Ted Switzer; May 12, 2017 for Jacqueline Weide; and May 5, 2017 for Dixie Switzer.

81. When Ted Switzer was deposed in the Underlying Action, he indicated that he might have been terminated from selling Alphatec products.

82. However, the E-mail sent by Ms. Weide on behalf of the Insureds informed a third party that Mr. Switzer was in fact banned from selling Alphatec products.

83. Mr. Switzer's statement described in Paragraph 81 of this Complaint and the E-mail regarding whether Mr. Switzer was banned from selling Alphatec contradicted each other.

84. Dixie Switzer stated during her deposition in the Underlying Action that contrary to Mr. Wood's representations, Mr. Switzer never informed a third party that he wanted to terminate their business relationship.

85. Based on the new evidence, the Insureds sent a letter to Ms. Hsu dated July 28, 2017 that stated despite the Insureds' belief that Nautilus had the duty to defend from the inception of the Underlying Action, the Insureds were re-tendering the defense in the Underlying Action.

86. Although the Insureds requested multiple times the status of Nautilus providing a defense for its Insureds in the Underlying Action based off the new information, Nautilus did not provide a formal response to the Insureds until August 10, 2017, which was less than two business days before trial began in the Underlying Action.

87. Based on the new evidence described in Paragraphs 78 to 83 of this Complaint, the Insureds filed an Application for an Order Directing or Indicating to the United States Court of Appeals for the Ninth Circuit that the District Court will Grant or Entertain Access and Mr. Wood's Motion for Relief Pursuant to Rule 60(b)(2) on August 8, 2017 at the United States District Court for the District of Nevada (hereinafter the "Application I").

88. Although Rule 60(b)(2) of the Federal Rules of Civil Procedure allows district courts to provide relief from judgment on the basis of new evidence, the United States District Court for the District of Nevada denied Application I on the basis that the deposition transcripts described in Paragraphs 64 to 69 of this Complaint were not relevant to the relief that Nautilus requested in the federal court action.

89. Specifically, the United States District Court for the District of Nevada refused to formally consider the new evidence because Nautilus's Complaint for declaratory relief "did not seek a declaration about whether it might owe a duty to defend in the future-such as if it were presented with new evidence that triggers coverage under its policy…**So even if the defendants are right that there is newly discovered evidence warranting relief under Rule 60, newly-**

12

**discovered evidence is not relevant to the relief that Nautilus requested in this case."**

90. During trial in the Underlying Action, counsel for Mr. Switzer attempted to submit a jury instruction for defamation based on the e-mail sent by Ms. Weide.

91. Based on the new information regarding the attempts of Mr. Switzer's counsel to submit a jury instruction for defamation based on the e-mail at issue to the jury in the Underlying Action, the potential for liability for a potentially covered claim under the Policy was always present.

92. If Nautilus properly investigated the facts behind the deficient Cross-Complaint or had the defense counsel it retained in the Underlying Action to file the requisite motions to ascertain the same, it would have determined that one of the "wrongful acts" that Mr. Switzer deficiently pleaded against the Insureds in his Cross-Complaint possibly included slander, libel, and/or business disparagement.

93. As a result of the new information regarding the attempts of Mr. Switzer's counsel to have the jury decide whether the Insureds committed defamation based on the E-mail, the Insureds filed a second Application for an Order Directing or Indicating to the United States Court of Appeals for the Ninth Circuit that the District Court will Grant or Entertain Access and Mr. Wood's Motion for Relief Pursuant to Rule 60(b)(2) on November 3, 2017 at the United States District Court for the District of Nevada (hereinafter the "Application II").

94. On December 29, 2017, The United States District Court for the District of Nevada denied the Insureds' Application II on the basis that the Court could not consider the new evidence because the new evidence was "not relevant to the relief that Nautilus requested in [that] case" and the Insureds were required to show that Nautilus knew of this evidence before it filed the declaratory relief action.

95. The United States District Court for the District of Nevada also found that the new evidence "does not show that Nautilus had knowledge of the facts before it filed this case that would support a possible claim for slander, libel, or disparagement."

96. However, Nautilus had the duty to investigate the facts behind the legally deficient Cross-Complaint and failed to properly do so before it decided to file a declaratory

13

action against its Insureds.

97. If Nautilus had properly investigated the facts behind the legally deficient Cross-Complaint, Nautilus would have found that Mr. Switzer asserted claims against the Insureds in the Underlying Action that were potentially covered under the Policy.

## FIRST CLAIM FOR RELIEF
### (Promissory Estoppel)

98. Plaintiffs incorporate both generally and specifically each and every allegation in the preceding paragraphs to this Complaint as though fully set forth therein.

99. Linda Hsu, Esq., acting under apparent and/or express authority for Nautilus, informed the Insureds on or around November 7, 2016 that Nautilus "will continue to provide a defense to its Insureds in the Underlying Action until there is a decision on the Insureds' motion for reconsideration and appeal, if any."

100. Based on Ms. Hsu's representations regarding Nautilus continuing to provide a defense, the Insureds believed Nautilus's representations.

101. Due to the representations made by Nautilus, the Insureds did not believe that Nautilus would abruptly withdraw the Insureds' defense in the Underlying Action when trial in the Underlying Action was less than a month away.

102. The Insureds relied on Nautilus's representations to their detriment and suffered damages as a result of Nautilus's statement that it would continue to provide a defense to the Insureds in the Underlying Action until a decision on appeal.

103. In doing the acts described in this Complaint, Defendant acted intentionally, with a conscious disregard of the known rights of Plaintiffs, and did so in a fraudulent and oppressive manner, all of which warrants the imposition of punitive damages in an amount sufficient to punish and deter Defendant from engaging in similar conduct in the future.

104. Plaintiffs have been required to retain an attorney in order to bring this action against Defendant and hence are entitled to reasonable attorney's fees and costs of suit as damages.

///

///

## SECOND CLAIM FOR RELIEF
### (Tortious Breach of the Covenant of Good Faith and Fair Dealing)

105. Plaintiffs incorporate both generally and specifically each and every allegation in the preceding paragraphs to this Complaint as though fully set forth therein.

106. Defendant owed Plaintiffs a duty of good faith and fair dealing with respect to all transactions and relationships arising under or in connection with the Policy and representations made in its letter dated November 7, 2016.

107. In handling Plaintiffs' tender of defense, Defendant and its representatives elevated its own interests above those of Plaintiffs and subordinated Plaintiffs' interests to those of Defendant by engaging in unprofessional, wrongful, abusive, fraudulent, unreasonable, and tortious conduct with respect to Plaintiffs and their tender of defense.

108. Defendant breached the implied covenant of good faith and fair dealing by, among other things:

- Not attempting in good faith to effectuate a prompt, fair and equitable settlement of claims asserted against Plaintiffs once it controlled defense and settlement in the Underlying Action;
- Plaintiffs are also informed and believe and thereon allege that Nautilus breached its duty of good faith and fair dealing owed to Plaintiffs by other acts or omissions of which Plaintiffs are presently unaware. Plaintiffs will seek leave of the Court to amend this Complaint at such times as it discovers the other acts or omissions of Defendant constituting such breach and to name such additional Defendants as may be identified during discovery.

109. As a direct result of Defendant's misrepresentations to its Insureds based on the November 7, 2016 letter and breach of regulations promulgated by the Nevada Division of Insurance for the protection of policyholders as described above, Defendant waived or is

estopped from asserting any right to contest Plaintiffs' tender of defense and indemnification of claims asserted against Plaintiffs.

110. As a direct and proximate result of the wrongful and tortious conduct of Defendant and its representatives, Plaintiffs suffered legally compensable damages in excess of $15,000.00. Insureds' damages include, but are not limited to, Mr. Switzer receiving a judgment against the Insureds in the Underlying Action at the hands of Nautilus's actions of controlling the defense, investigation, and settlement opportunities of the Insureds in the Underlying Action for a period of time.

111. As a direct and proximate result of the conduct of Defendant and its representatives, Plaintiffs needed to engage the services of legal counsel and thereby incurred, and will continue to incur costs and attorneys' fees in an amount to be determined according to proof.

112. The conduct of Defendant described above was part of a long-established pattern and practice designed to force claimants to accept less than they would otherwise be entitled to receive and to unfairly minimize the financial exposure and risk of Defendant. Plaintiffs are informed and believe that prior to Plaintiffs' tender, Defendant instituted various internal programs, which were designed to increase profitability by unfairly minimizing the amounts paid to its Insureds or on behalf of its Insureds, lowering combined loss ratio, and turning the claims department into a company profit center. Plaintiffs are further informed and believes and therefore alleges that Defendant instituted various corporate programs and policies, which rewarded claims department personnel (directly and indirectly) with pay raises and promotions if they found ways to minimize of eliminate legitimate payment of benefits and defense owed to their Insureds. By linking the career success and income of claims department personnel to the results achieved in adjusting individual claims, Defendant actively and knowingly encouraged its claim department personnel to engage in fraud, unfair conduct, and abuse of legitimate claimants.

16

113. Plaintiffs are further informed and believe that Defendant adopted a policy to provide false representations to its insureds in order to gain the insureds' reliance to the insureds' detriment.

114. The acts and omissions of Defendant and its representatives described above were part of the established corporate practices and procedures of Defendant and were directed, approved, or ratified by the management of Defendant.

115. In doing the acts described in this Complaint, Defendant acted intentionally, with a conscious disregard of the known rights of Plaintiffs, and did so in a fraudulent and oppressive manner, all of which warrants the imposition of punitive damages in an amount sufficient to punish and deter Defendant from engaging in similar conduct in the future.

**THIRD CLAIM FOR RELIEF**
**(Unfair Claim Practices)**

116. Plaintiffs incorporate both generally and specifically each and every allegation in the preceding paragraphs to this Complaint as though fully set forth therein.

117. As an entity engaged in the business of insurance in Nevada, Nautilus is, and at all relevant times was, an entity regulated by Nevada law as set forth within Nev. Rev. Stat. §686A.

118. Even if it was found that Nautilus did not have the duty to defend its Insureds in accordance to the Policy, Nautilus had the duty to treat its Insureds fairly at the time that the Insureds tendered defense to Nautilus and at the time that Nautilus accepted the tender of defense. See *Turk v. TIG Ins. Co.*, 616 F. Supp. 2d 1044, 1052 (D. Nev. 2009).

119. Defendant violated NRS 686A.310, subsection (a), when it misrepresented to the Insureds that Nautilus "will continue to provide a defense to its Insureds in the Underlying Action until there is a decision on the Insureds' motion for reconsideration and appeal, if any[,]" but failed to follow through with its representations.

120. Defendant violated NRS 686A.310, subsection (c), when it failed to adopt and implement reasonable standards for the prompt investigation and processing of claims-especially in light of the fact that Nautilus failed to properly investigate the facts behind the deficient Cross-Complaint before filing the declaratory relief action.

17

121. Defendant violated NRS 686A.310, subsection (f), for compelling the Insureds to litigate to recover benefits due under the representations made by Nautilus, which include, but are not limited to, the letter sent by Ms. Hsu;

122. The acts and omissions of Defendant and its representatives described above were part of the established corporate practices and procedures of Defendant and were directed, approved, or ratified by the management of Defendant.

123. In doing the acts described in this Complaint, Defendant acted intentionally, with a conscious disregard of the known rights of Plaintiff, and did so in a fraudulent and oppressive manner, all of which warrants the imposition of punitive damages in an amount sufficient to punish and deter Defendant from engaging in similar conduct in the future.

124. As a result of Defendants actions and unfair claim handling as described throughout this Complaint and in this cause of action, the Insureds suffered damages, which include but are not limited to Mr. Switzer receiving a judgment in the Underlying Action against the Insureds at the hands of Nautilus's actions of improperly controlling the defense, investigation, and settlement opportunities of the Insureds in the Underlying Action for a period of time.

125. Plaintiffs have been required to retain an attorney in order to bring this action against Defendant and hence are entitled to reasonable attorney's fees and costs of suit as damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for damages and other judicial relief as follows:

1. For special damages in an amount exceeding $15,000;
2. For general damages in an amount exceeding $15,000;
3. For an award of punitive or exemplary damages in an amount sufficient to punish Defendant and deter it from engaging in similar conduct in the future;
4. For attorneys' fees and costs of suit;
5. For prejudgment and post-judgment interest; and

6. For such other and further relief as this Court may deem just and proper under the circumstances.

DATED this __5th__ day of January, 2018.

                KRAVITZ, SCHNITZER & JOHNSON, CHTD.

BY: __/s/ L. Renee Green__
MARTIN J. KRAVITZ, ESQ.
Nevada Bar No. 83
L. RENEE GREEN, ESQ.
Nevada Bar No. 12755
8985 So. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123

JORDAN P. SCHNITZER, ESQ.
Nevada Bar No. 10744
THE SCHNITZER LAW FIRM
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148
Telephone: (702) 960-4050
Facsimile: (702) 960-4092
Jordan@TheSchnitzerLawFirm.com

*Attorney for Plaintiffs,*
ROBERT "SONNY" WOOD and
ACCESS MEDICAL, LLC

KRAVITZ, SCHNITZER & JOHNSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
(702) 362-6666