TRACY A. DIFILLIPPO, ESQ.
Nevada Bar No. 7676
MICHELLE D. ALARIE, ESQ.
Nevada Bar No. 11894
ARMSTRONG TEASDALE LLP
7160 Rafael Rivera Way, Suite 320
Las Vegas, Nevada 89113
Telephone:  702.678.5070
Facsimile:  702.878.9995
tdifillippo@atllp.com
malarie@atllp.com

WILLIAM S. KRONENBERG, ESQ. (LR IA 11-2 admitted)
California Bar No. 133730
KRONENBERG LAW PC
1 Kaiser Plaza, Suite 1675
Oakland, California 94612
Telephone:  510.254.6761
wkronenberg@krolaw.com

*Attorneys for Defendant/Counter-claimant Nautilus Insurance Company*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT "SONNY" WOOD, an individual; ACCESS MEDICAL, LLC, a Delaware limited liability company, | Case No.:  2:17-cv-02393-MMD-VCF |
| Plaintiffs, | **AMENDED JOINT PRETRIAL ORDER** |
| vs. | |
| NAUTILUS INSURANCE GROUP, a Delaware limited liability company, et al., | |
| Defendant. | |

COMES NOW, Plaintiffs ROBERT "SONNY" WOOD, II ("Wood") and ACCESS

MEDICAL, LLC ("Access"; collectively, "Insureds" or "Plaintiffs"), by and through their counsel,

THE SCHNITZER LAW FIRM, and Defendant/Counter-claimant NAUTILUS INSURANCE

COMPANY ("Nautilus"), by and through its counsel, ARMSTRONG TEASDALE LLP and

KRONENBERG LAW PC (*pro hac vice*), to hereby provide the parties' Amended Joint Pre-Trial

Order in this matter pursuant to Local Rules 16-3 and 16-4 and this Court's Minute Order dated

March 10, 2023 (ECF No. 361).  **Supplemental material is noted in bold.**

By signing this document, neither party is agreeing with any statement or position set forth by the other party in the respective separate statements. The parties only intend to be bound by their own statements and any clearly delineated agreements.

After pretrial proceedings in this case,

**IT IS ORDERED:**

I.      **STATEMENT OF THE NATURE OF THE ACTION**

A.  **Plaintiffs' Claims**

1.  *Plaintiffs' Statement:*

This case involves Nautilus Insurance's handling of a claim for its insureds, the Plaintiffs in this case.  After initially defending the action, Nautilus pulled coverage shortly before trial. This Court correctly determined that Nautilus had a duty to defend and breached a duty to defend its insureds in the underlying litigation.

As a result of the breach, Plaintiffs seek damages including, but not limited to, the resultant verdict and the unpaid defense fees incurred. Plaintiffs also seek recovery due to Nautilus'(1) breach of the duty to pay reasonable costs for independent counsel even after it acknowledged Plaintiffs were entitled to independent counsel; and (2) breach of the duty of good faith and fair dealing for: Nautilus' (a) failure to investigate the underlying allegations; (b) answering a legally deficient claim; (c) failure to apply ordinary meaning to its undefined Policy terms to the detriment of its Insureds; (d) Improper application of California law to disclaim its duty to defend; (e) misrepresentation of facts to the insured, contrary to NRS 686A.310(1)(a); (f) misrepresentation of provisions of the policy relating to coverage, contrary to NRS 686A.310(1)(a); (g) failure to timely respond to communications with Plaintiffs, contrary to NRS 686A.310(1)(b); (h) failure to comply with NRS 686A.310(1)(c); (i) improper attempts to delegate its duty to investigate; (j) intentionally ignoring a mediation report that triggered the duty to defend; (k) failure to affirm or deny coverage within a reasonable time, contrary to NRS 686A.310(1)(d); (l) failure to settle the claim when presented with multiple reasonable opportunities to do so within policy limits; (m) forcing its insured to litigate to recovery benefits due, contrary to NRS 686A.310(1)(f); (n) admitted failure to give equal consideration to the interests of its insureds.

2. *Nautilus's Statement:*

This action arises out of the Insureds' request for defense and indemnity from Nautilus for the underlying cross-complaint filed by Ted Switzer (the "*Switzer* Action"). In a decision confirmed by the Ninth Circuit Court of Appeals, it has been judicially determined that there was no coverage under the Nautilus policy (the "Policy") for the *Switzer* Action. *See generally, Nautilus Insurance Company v. Access Medical, LLC, et al.*, Case No. 2:15-cv-00321-JAD-BNW (the "Coverage Action"). The Nevada Supreme Court also ruled that Nautilus can obtain reimbursement from the Insureds for the fees and costs it expended in defending the Insureds in the *Switzer* Action. *See Nautilus Insurance Company v. Access Medical, LLC, et al.,* 137 Nev. Adv. Op. No. 10 (2021).[1]

After Plaintiffs filed this action, this Court explicitly defined the limited scope of this case, on numerous occasions, and made it abundantly clear that the Insureds are not permitted to re-litigate matters that were and/or could have been addressed in the Coverage Action. Specifically, the Court recently stated as follows: "The limited focus of this litigation is *whether the newly discovered evidence which came to light after the district court granted summary judgment in the Coverage Action* would have triggered a duty to defend and, if so, whether Defendant acted in bad faith *by denying the re-tenders.*" ECF No. 315 at 12:4-8 (emphasis added).[2]

---

[1] **On April 21, 2022, Nautilus filed motions for summary judgment in the Coverage Action seeking reimbursement against the Plaintiffs and Flournoy Management, LLC for defense costs Nautilus incurred on behalf of its insured in the *Switzer* Action. (Coverage Action, ECF Nos. 178, 181.) On November 10, 2022, Judge Dorsey ruled that Nautilus was entitled to reimbursement of defense costs through the date Nautilus filed its declaratory relief complaint on February 24, 2015. (Coverage Action, ECF No. 194.) On January 6, 2023, Nautilus filed a renewed motion for reimbursement for defense costs incurred through February 24, 2015, and for pre-judgment interest. (Coverage Action, ECF No. 202.) On March 28, 2023, Judge Dorsey granted Nautilus' renewed motion for reimbursement in its entirety and entered Judgment in favor of Nautilus and against Plaintiffs, jointly and severally, in the amount of $25,788.66 ($14,637.50 in defense costs; $11,151.16 in pre-judgment interest) and against Flournoy Management, LLC in the amount of $209,799.72 ($119,081.12 in defense costs; $90,718.60 in pre-judgment interest). (Coverage Action, ECF No. 206.)**

[2] Nautilus respectfully reserves the right, upon good cause shown, to add additional exhibits and/or witnesses to those listed below should the Court determine that the scope of this action is greater than the limited scope recently reiterated in ECF No. 315.

Plaintiffs' "Second Amended Complaint" (the "SAC") asserted the following causes of action: (1) breach of contract; (2) promissory estoppel; (3) tortious breach of the covenant of good faith and fair dealing; and (4) unfair claims practices.  ECF No. 73.  Nautilus maintains that Plaintiffs should take nothing by the SAC.  *Id*.

Pursuant to the Court's order on the parties' cross-motions for summary judgment, dated March 22, 2022, Nautilus's motion for summary judgment was granted as to the promissory estoppel claim, while Plaintiffs' motion for partial summary judgment was granted as to the breach of contract claim (the "MSJ Order").[3]  ECF No. 315.

Nautilus did not commit "bad faith" because its denials of coverage were not knowingly or recklessly "unreasonable."  This argument is supported for two reasons: (1) "The Court agrees with [Nautilus] it is arguably reasonable that [Nautilus] relied upon the district court's summary judgment order to withdraw their defense after receiving the First Re-Tender" (ECF No. 315 at 32:8-10); and (2) "[Nautilus's] subjective understanding of the Policy's coverage matters for bad faith, and here a jury could find that Defendant's interpretation of the Policy . . . was a reasonable error" (*Id*. at 33:11-13).  Similarly, under Nevada law, when an insurer has not acted unreasonably or unfairly in the handling of the claim, the requirement to support a claim for unfair claims practices has not been met.  *See Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050 (D. Nev. 2017).

Lastly, Nautilus is not liable for the judgment levied against the Insureds in the underlying *Switzer* Action.  In order to be held responsible for the judgment in the *Switzer* Action, the Insureds are "tasked with showing that the breach *caused* the excess judgment and '[are] obligated to take all reasonable means to protect [themselves] and mitigate [their] damages."  *Century Sur. Co. v. Andrew*, 134 Nev. 819, 826 (2018) (emphasis added).  The Insureds have not – and cannot – adduce any evidence to support an argument that Nautilus's alleged breach of contract *caused* the judgment ordered in the *Switzer* Action – this is because, in reality, the entirety of the judgment is attributable to the Insured's grossly fraudulent conduct, as determined by the jury in the *Switzer* Action.

---

[3] Although the Court ruled that Plaintiffs have demonstrated liability on their breach of contract claim, the Court also determined that "the issue of damage caused by that breach remains for trial."  ECF No. 315 at 40.

**B. Nautilus's Counter-claims**

    *1. Nautilus's Statement:*

On July 1, 2019, Nautilus filed cross claims against Plaintiffs and Flournoy Management, LLC asserting unjust enrichment, equitable estoppel, and equitable subrogation that seek reimbursement for defense costs including attorneys' fees and disbursements that Nautilus incurred and actually paid on behalf of its insureds in the *Switzer* Action.  (ECF No. 167, at pp. 17- 27.)  In *Nautilus Insurance Company v. Access Medical, LLC, et al.*, 137 Nev. 96, 482 P.3d 683 (2021), the Nevada Supreme Court held that the theory of unjust enrichment permits an insurer to recover reimbursement of defense costs paid on behalf of its insured under a reservation of rights where 1) a court determines that an insurer never owed a duty to defend, 2) the insurer expressly reserved its rights to seek reimbursement in writing after a defense was tendered, and 3) the policyholder accepted the defense from the insured.  *Id.* at. 101-02, 482 P.3d at 688-89.

Taking into account the Judgment in the Coverage Action and this Court's March 22, 2022, Order on summary judgment that found that Nautilus's duty to defend was triggered upon the first re-tender on July 28, 2017 (*see* ECF No. 315), Nautilus is entitled to reimbursement of defense costs incurred on behalf of its insured from February 25, 2015, to July 27, 2017 in the following amounts:  (1) $876,744.95 against Access Medical and Robert Wood, jointly and severally, and (2) $151,845.93 against Flournoy Management, LLC.[4] Nautilus is also entitled to prejudgment interest on each award calculated at the legal rate in place when judgment is entered and accruing from the date of service of the Summons and Crossclaim.

    *2. Plaintiffs' Statement:*

Nautilus is not entitled to reimbursement in this matter for several reasons: (1) there was not a determination that there was "never a duty to defend." The exact opposite happened in

---

[4] Nautilus intends to take default against Flournoy Management, LLC, and move for entry of default judgment thereby eliminating the need to adjudicate the reimbursement claims against Flournoy Management, LLC at trial.

**this case as the Court determined a duty to defend did exist; (2) Wood and Access sent a letter indicating it would not reimburse Nautilus for defense costs. Importantly, this letter was not in evidence in the first case because it was sent after the relevant period in *Nautilus I*; (3) the amount of fees sought are unreasonable for several reasons including the fact that Nautilus unilaterally switched to more expensive defense counsel without consulting its insured. This switch also caused unnecessary and duplicative work done by the new attorneys getting up to speed on the case; and (4) the Nevada Supreme Court's decision does not apply to independent counsel fees as those are not defense costs but, rather, are required due to conflicts of interest.**

## II.   JURISDICTION

This is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.  This court has diversity jurisdiction under 28 U.S.C. §1332.

## III.   STIPULATED FACTS

The following facts are admitted by the parties and require no proof:

1.     Nautilus issued Policy No. BN952426 to named insured "Access Medical," effective January 15, 2011, to January 15, 2012. .

2.     On December 27, 2011, Ted Switzer ("Switzer") filed a complaint against the Insureds in the *Switzer* Action (the "Switzer Original Complaint").

3.     The Switzer Original Complaint alleged that Switzer was "concerned about the management of Flournoy [the company created between Switzer and Wood] and desires to obtain information necessary to the process of evaluating whether or not Flournoy has been managed and operated in a manner consistent with [Switzer's] rights as a member of Flournoy."

4.     On June 3, 2013, Switzer filed a cross-complaint in the *Switzer* Action (the "Switzer Cross-Complaint").

5.     The Insureds tendered the Switzer Cross-Complaint to Nautilus, and in the course of investigating that tender, Nautilus discovered a July 25, 2011, email sent by Jacquie Weide, Operations Manager for Access, to Deborah Fanning of Santa Barbara Cottage Hospital (the "Weide Email").

6.      In the email string, Ms. Weide advised Ms. Fanning that Access was interested in obtaining a contract with Cottage Hospital to provide spinal implants.

7.      When Ms. Fanning asked for more information, Ms. Weide responded, in relevant part, as follows:

> I believe Dr. Early and Dr. Kahmann were using Alphatec's implants *but their Distributor in the California area is now banned from selling Alphatec implants.* We are in Las Vegas and have been using their products here for 2 years.  Alphatec recently contacted us and asked that we take over the California region as well.

(emphasis added).

8.      On July 28, 2017, the Insureds' counsel sent a "re-tender of defense" letter to Nautilus's counsel contending that the deposition testimony of Jacqueline Weide, Theodore Switzer, and Dixie Switzer[5] triggered the duty to defend (the "First Re-Tender").

9.      On August 24, 2017, the Insureds' counsel emailed Nautilus's counsel arguing that questions asked during voir dire at the trial in the *Switzer* Action triggered a duty to defend (the "Second Re-Tender").

10.     The trial transcript contained several lines of questions that Switzer's counsel asked of potential jurors, including "has anybody ever said anything about you that was false?" and "anybody else have an experience like that where somebody said something about them that wasn't true?"

11.     On August 31, 2017, Nautilus sent a letter to the Insureds denying coverage for the Second Re-Tender.

12.     On September 19, 2017, the Insureds' counsel again re-tendered the defense to Nautilus based on the trial testimony of Dixie Switzer, which the Insureds argued provided indication that the Weide Email was false (the "Third Re-Tender").

13.     On October 10, 2017, and October 26, 2017, Nautilus sent letters to the Insureds denying coverage for the below-defined Fourth Re-Tender.

14.     On September 12, 2019, the "Final Statement of Decision and Judgment on Special Verdict – Modified After Appeal" was entered against the Insureds in the *Switzer* Action.

---

[5] The letter referred to the deposition testimony of Mr. Wood, but it was later clarified that counsel meant to refer to the testimony of Dixie Switzer.

**15.     The hourly billing rates of Wolfe & Wyman LLC and Gordon Rees Scully Mansukhani, LLP, who were defense counsel for Plaintiffs in the *Switzer* Action, were reasonable and within market rates for the legal work performed.**

**IV.     CONTESTED ISSUES OF FACT**

The following facts, though not admitted, will not be contested at trial by evidence to the contrary. The following are the issue of fact to be tried and determined at trial.

**A.  Plaintiffs' Issues Of Fact:**

The following allegations in the Complaint were admitted by Nautilus in its answer[6]:

13.     On or about January 15, 2011, Nautilus provided a Policy to its Insureds, policy number of BN952426 (hereinafter the "Policy"). The effective dates of coverage for the 2011 Policy were January 15, 2011, to January 15, 2012.

19.     Section II(c) of the 2011 Policy, titled "WHO IS AN INSURED" sets forth, inter alia, the following:

> **SECTION II- WHO IS AN INSURED**
> ...
> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

20.     Based upon Section II(c) of the Policy, Access and Mr. Wood are insureds in accordance to the Policy.

21.     Based upon Coverage B in the Policy, the Policy provided that Nautilus would provide a defense and indemnification for Plaintiffs from claims against Plaintiffs involving "Personal and Advertising Injury."

22.     The Policy defined "Personal and Advertising Injury" as an injury arising out of an "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]"

25.     In the Cross-Complaint described in Paragraph 24, Mr. Switzer asserted the tort intentional interference with prospective business, specifically titled "Interference with Prospective Economic

1   Advantage," against the Insureds on multiple occasions.

2   26.     The *Switzer* Action alleged against, inter alia, that Wood, on behalf of Flournoy and Access:
3               Intentionally and without justification or privilege... acted to disrupt the relationship
                between Mr. Switzer and Alta Bates Hospital by his wrongful acts as alleged herein...
4               The wrongful acts of Mr. Wood did in fact result in a disruption of the relationship...
                Alta Bates Hospital ceased using Mr. Switzer... but, instead used Mr. Wood and
5               business entities associated with Mr. Wood...

6   27.     The identical allegations as described in Paragraph 26 of this Second Amended Complaint

    were made at least two more times in the Cross-Complaint.

7   29.     As held by the California Supreme Court in *Della Penna v. Toyota Motor Sales, U.S.A.*, 902

8   P.2d 740, 751 (Cal. 1995), one of the elements to the tort titled intentional interference with

9   prospective business advantage is that the tortfeasor committed intentional acts that disrupted the

10  prospective business relationship.

11  30.     As held by the California Supreme Court in *Della Penna v. Toyota Motor Sales, U.S.A.*, 902

12  P.2d 740, 751 (Cal. 1995), in order to sufficiently allege that the tortfeasor committed intentional acts

13  that disrupted the prospective business relationship, the claimant must allege that the tortfeasor

14  engaged in an independent act that was wrongful by some legal measure other than the fact of

15  interference itself.

16  36.     Based upon the *Switzer* Action, the Insureds tendered defense to Nautilus on or about

17  November 14, 2013.

18  38.     Once the Insureds tendered the defense of the *Switzer* Action to Nautilus as described in

19  Paragraph 36, Nautilus had the duty to thoroughly investigate the allegations behind the Cross-

20  Complaint in the *Switzer* Action in order to ascertain whether it had the duty to defend the Insureds

21  in the *Switzer* Action.

22  42.     Nautilus's analysis of thoroughly investigating the facts behind the Cross-Complaint in the

23  Switzer Action included Nautilus considering extrinsic evidence in its analysis as to whether it had

24  the duty to defend the Insureds in the *Switzer* Action.

25  46.     This e-mail described in Paragraph 37 of this Complaint, which was sent by Jacqueline

26  Weide, a representative of Access, to one of Mr. Switzer's former customers, informed the former

27  customer that the "Distributor in the California area is now banned from selling Alphatec products"

28  (hereinafter the "E-mail").

50.     After more than four months of Plaintiffs receiving no response from Nautilus regarding Plaintiffs' tender of defense although Plaintiffs requested a response multiple times, Nautilus agreed to defend the Insureds in the *Switzer* Action.

56.     The Supreme Court of Nevada has held that when there is conflict of interest between the insurer and the insured, the insurer is required to allow insureds to select their own counsel and to pay the reasonable costs for the independent counsel's representation. *State Farm Mut. Auto. Ins. Co. v. Hansen*, 357 P.3d 338 (Nev. 2015).

57.     In accordance to *State Farm Mut. Auto. Ins. Co. v. Hansen*, Nautilus was required to allow Plaintiffs to select their own independent counsel due to the fact there was an actual conflict of interest between Nautilus and its Insureds in regard to Nautilus's duty to defend and indemnify in the Switzer Action at the time Nautilus agreed to defend the Insureds.

58.     Although Nautilus was required to pay for the reasonable rate of Insureds' independent counsel, Nautilus refused to pay the full hourly rate that the Insureds' independent counsel billed throughout the time independent counsel represented the Insureds.

60.     Independent counsel continued to represent the Insureds throughout the *Switzer* Action, from which a verdict was not reached until November of 2017.

69.     Instead of investigating the facts behind the legally deficient Cross-Complaint in the *Switzer* Action, Nautilus filed a Complaint (hereinafter "Nautilus Complaint") in the United States District Court for the District of Nevada against the Insureds for declaratory relief regarding the duty to defend and indemnify the Insureds in the *Switzer* Action on February 24, 2015 (hereinafter the "Declaratory Action").

71.     On January 15, 2016, Nautilus filed a Partial Motion for Summary Judgment seeking a declaratory judgment that it has no duty to defend the Insureds in the *Switzer* Action.

73.     On September 27, 2016, the United States District Court for the District of Nevada decided that Nautilus did not have the duty to defend the Insureds in the *Switzer* Action at the time Nautilus's Complaint was filed.

75.     On October 25, 2016, Nautilus filed a Motion for Further Relief in the United States District Court for the District of Nevada in order to request that it be reimbursed for the defense costs it paid

in the *Switzer* Action.

76.     On October 25, 2016, the Insureds filed a Motion for Reconsideration in regards to the Order Granting Nautilus's Partial Motion for Summary Judgment.

77.     Nautilus sent a letter to the Insureds dated November 7, 2016, that it would "continue to provide a defense to its Insureds in the [*Switzer*] Action until there is a decision on the Insureds' motion for reconsideration and appeal, if any."

78.     The Insureds sent a letter to Nautilus dated November 9, 2016, that it continued to accept and expected Nautilus to provide a defense to them in the *Switzer* Action until the United States District Court for the District of Nevada and, if necessary, the United States Ninth Circuit Court of Appeals decided Nautilus's duty to defend its Insureds in the *Switzer* Action.

85.     The Insureds sent a letter to Nautilus dated May 19, 2017, that informed Nautilus that they were going to appeal the United States District Court for the District of Nevada's Order Denying the Motion for Reconsideration and thus expected Nautilus to defend them in the *Switzer* Action as represented in Nautilus's letter dated November 7, 2016, through the appeal to the United States Court of Appeals for the Ninth Circuit.

86.     On June 16, 2017, Nautilus filed a Notice to Appeal the United States District Court of Appeals for the Ninth Circuit appealing the United States District Court for the District of Nevada's Order denying its Motion for Further Relief.

87.     On June 19, 2017, the Insureds filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit appealing the United States District Court for the District of Nevada's Order denying their Motion for Reconsideration.

88.     As represented in Nautilus's letter dated November 7, 2016, Nautilus continued to provide a defense for the Insureds in the *Switzer* Action for a period of time.

100.     Unexpectedly, Linda Hsu of Selman Breitman, LLP, acting as an agent of Nautilus under actual and apparent authority, sent a letter dated July 6, 2017, that stated Nautilus was abruptly withdrawing the defense in the *Switzer* Action on August 1, 2017.

101.     On July 18, 2017, the Insureds sent a letter to Linda Hsu informing her that the Insureds relied on her representations in the letter dated November 7, 2016, which provided that Nautilus would

continue to provide a defense for the Insureds in the *Switzer* Action through any appeal.

103. The letter dated July 18, 2017, to Ms. Hsu also stated that Nautilus was committing bad faith by making its Insureds pay for a portion of the fees for independent counsel while Nautilus determined if there was coverage under the Policy.

112. Based on the new evidence, the Insureds sent a letter to Ms. Hsu dated July 28, 2017, that stated despite the Insureds' belief that Nautilus had the duty to defend from the inception of the *Switzer* Action, the Insureds were re-tendering the defense in the *Switzer* Action.

115. Based on the new evidence described in Paragraphs 104 to 111 of this Complaint, the Insureds filed an Application for an Order Directing or Indicating to the United States Court of Appeals for the Ninth Circuit that the District Court will Grant or Entertain Access and Mr. Wood's Motion for Relief Pursuant to Rule 60(b)(2) on August 8, 2017, at the United States District Court for the District of Nevada (hereinafter the "Application I").

116. Although Rule 60(b)(2) of the Federal Rules of Civil Procedure allows district courts to provide relief from judgment on the basis of newly discovered evidence, the United States District Court for the District of Nevada denied Application I on the basis that the deposition transcripts described in Paragraphs 105 to 114 of this Complaint were not relevant to the relief that Nautilus requested in the federal court action.

117. Specifically, the United States District Court for the District of Nevada refused to formally consider the new evidence because Nautilus's Complaint for declaratory relief "did not seek a declaration about whether it might owe a duty to defend in the future-such as if it were presented with new evidence that triggers coverage under its policy...*So even if the defendants are right that there is newly discovered evidence warranting relief under Rule 60, newly-discovered evidence is not relevant to the relief that Nautilus requested in this case.*"

121. As a result of the new information regarding the attempts of Mr. Switzer's counsel to have the jury decide whether the Insureds committed defamation based on the E-mail, the Insureds filed a second Application for an Order Directing or Indicating to the United States Court of Appeals for the Ninth Circuit that the District Court will Grant or Entertain Access and Mr. Wood's Motion for Relief Pursuant to Rule 60(b)(2) on November 3, 2017 at the United States District Court for the District of

Nevada (hereinafter the "Application II").

122.    On December 29, 2017, The United States District Court for the District of Nevada denied the Insureds' Application II on the basis that the Court could not consider the new evidence because the new evidence was "not relevant to the relief that Nautilus requested in [that] case" and the Insureds were required to show that Nautilus knew of this evidence before it filed the declaratory relief action.

127.    The verdict in the *Switzer* Action was appealed and is currently on appeal as of the date this Complaint was filed.

128.    As of the date this Complaint was filed, the orders concerning the Insureds' Motion for Reconsideration, Nautilus's Motion for Further Relief, Application I, and Application II in the Declaratory Action are currently on appeal in the United States Appellate Court for the Ninth Circuit.

132.    The Insureds and Nautilus were bound by a contractual relationship in accordance to the terms in the Policy.

133.    Nevada law applies as to the interpretation of the Policy.

134.    In accordance to the Policy, Nautilus was required to defend the Insureds for any claims that were potentially covered under the Policy.

135.    The duty to defend includes settlement duties as set forth in *Allstate v. Miller*, 212 P.2d 318, 323 (Nev. 2009).

138.    At all relevant times, Nautilus was paid all premiums due under the Policy.

146.    Linda Hsu, Esq., acting under apparent and/or express authority for Nautilus, informed the Insureds on or around November 7, 2016, that Nautilus would "continue to provide a defense to its Insureds in the [*Switzer*] Action until there is a decision on the Insureds' motion for reconsideration and appeal, if any."

159.    Defendant owed Plaintiffs a duty of good faith and fair dealing with respect to all transactions and relationships arising under or in connection with the Policy and representations made in its letter dated November 7, 2016.

161.    Nautilus owed the Insureds a duty of good faith and fair dealing when Nautilus agreed to accept the Insureds' tender of defense in accordance to the Policy.

162.    In the alternative, Nautilus owed the Insureds a duty of good faith and fair dealing when Nautilus agreed to accept the Insureds' tender of defense, regardless if the Insureds' claim in the *Switzer* Action was ultimately covered under the Policy.

163.    Nautilus owed the Insureds a duty of good faith and fair dealing the entire time Nautilus controlled the reigns of defense in the *Switzer* Action.

167.    Included in its duty of good faith and fair dealing, Nautilus had the duty to properly defend the Insureds in the *Switzer* Action once Nautilus agreed to accept the Insureds' tender of defense.

170.    Due to the fact that there was an actual conflict of interest between Nautilus and the Insureds, Nautilus had the duty to pay a reasonable rate for the Insureds' independent counsel as it related to the *Switzer* Action.

182.    Defendant violated NRS 686A.310, subsection (a), when, amongst other malfeasances described in the above paragraphs, it misrepresented to the Insureds that Nautilus would "continue to provide a defense to its Insureds in the *Switzer* Action until there is a decision on the Insureds' motion for reconsideration and appeal, if any[,]" but refused to follow through with its representations.

183.    Defendant also violated NRS 686A.310, subsection (a), by misrepresenting to the Insureds pertinent facts or insurance policy provisions relating to the Policy, which included, but was not limited to Nautilus disclaiming its duty to defend its Insureds in the *Switzer* Action when the allegations against the Insureds included claims potentially covered under the Policy.

**184.    Plaintiff objected to reimbursement of defense costs in its November 9, 2016, letter.**

**185.    There was not a determination that there was "never a duty to defend." The exact opposite happened in this case as the Court determined a duty to defend did exist**

**186.    The amount of fees sought are unreasonable for several reasons including the fact that Nautilus unilaterally switched to more expensive defense counsel without consulting its insured. This switch also caused  unnecessary and duplicative work done by the new attorneys getting up to speed on the case.**

**187.    Independent counsel costs are not "defense" costs as discussed by the Nevada Supreme Court in the *Nautilus* case nor were they considered .**

**B. Nautilus's Issues of Fact**[7]**:**

The Policy included Coverage B, Personal and Advertising Injury Liability, which included

the following pertinent provision and definitions:

**SECTION I – COVERAGES**

…

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply[.]

…

**SECTION V – DEFINITIONS**

…

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

> …

> **d.** Oral or written publication, in any manner, of material that **slanders or libels a person or organization or disparages a person's** or organization's goods, products or services[.] (emphasis added).

2. Paragraph 43 of the Switzer Cross-Complaint alleged:

. . . Mr. Wood took in income . . . that should have been delivered to Flournoy, but deposited less . . . of that money . . . into Flournoy's bank account; Mr. Wood deposited into Flournoy's bank account . . . income provided by business entities associated with Mr. Switzer, but distributed less . . . from Flournoy's bank account to Mr. Switzer . . . while at the same time paying [money] . . . to Mr. Wood's business, Access, from Flournoy's bank account despite the fact that [Switzer] had paid, or had become obligated to pay, expenses properly reimbursable by Flournoy . . .; Mr. Wood received income that should have been delivered to Flournoy . . . in the form of hospitals' payments of invoices, but deposited none of that money into Flournoy's bank account; Mr. Wood received income that should have been delivered to Flournoy . . . in the form of checks from . . . business entities associated with Mr. Switzer, but deposited none of that money into Flournoy's bank account; Mr. Wood took away from Mr. Switzer and kept for himself the lucrative business relationships and income

---

[7] In "Plaintiffs' Issues Of Fact" section, Plaintiffs claim, prior to listing their issues of fact, that "[t]he following allegations in the Complaint were admitted by Nautilus in its answer[.]"  However, Nautilus categorically denies and disagrees with this statement as all of the following "facts" were not admitted by Nautilus in its Amended Answer to the Second Amended Complaint.  In fact, Nautilus explicitly denied some of these "facts" and/or advised that the allegations state a legal conclusion to which no response was required.

> Mr. Switzer had developed and enjoyed with hospitals previously serviced by . . . the business entities associated with Mr. Switzer[.]

3.     The only causes of action in the Switzer Cross-Complaint that the Insureds contended were covered under the Policy are claims 13 through 15, entitled "Interference with Prospective Economic Advantage."

4.     The allegations in those causes of action were identical except that they referred to different hospitals in which Switzer "enjoyed a long-standing and mutually beneficial relationship."

5.     Switzer alleged: (1) Wood "acted to disrupt the relationship between Mr. Switzer and [hospital] by his wrongful acts as alleged herein [i.e. the allegations in ¶ 43 cited above]"; and (2) those wrongful acts (i.e. the taking away by Wood of the business relationships and income Switzer had developed and enjoyed with hospitals) "[have] resulted in injury to the personal and business reputation of Mr. Switzer . . ."

6.     Although Nautilus did not believe that the statement in the Weide Email rose to the level of slander, libel, or disparagement sufficient to trigger coverage under the Policy, Nautilus agreed to provide the Insureds with a defense against the Switzer Cross-Complaint, subject to a full and complete reservation of rights.

7.     On February 24, 2015, Nautilus filed the Coverage Action.

8.     On January 15, 2016, Nautilus filed a Motion for Partial Summary Judgment in the Coverage Action.

9.     On September 27, 2016, the Court granted Nautilus's motion, finding that:

> [A] disparagement claim "requires a plaintiff to show a false or misleading statement that (1) specifically refers to the plaintiff's product or business and (2) clearly derogates that product or business. Each requirement must be satisfied by express mention or by clear implication." Libel and slander are both forms of defamation, and each requires proof of a false and unprivileged communication that injures the plaintiff's reputation.
>
> Switzer's cross-complaint—even when read in conjunction with the [Weide Email] - - does not give rise to a potential claim for slander, libel, or disparagement (or include allegations of those offenses), and therefore does not trigger Nautilus's duty to defend under the 'personal and advertising injury' provision of the policy. . . .
>
> Even assuming that the [Weide email] mentions Switzer by clear implication (he is not expressly named) defendants do not argue—let alone offer any facts to show— that the e-mail contains a false statement, i.e., that Switzer was not, at that time, banned from distributing Alphatec spinal implants as the e-mail states.  Additionally, nowhere in Switzer's cross-complaint does he allege that defendants made any false

statement about him in an effort to tortuously interfere with his business relationships, and the cross-complaint does not mention or incorporate the [Weide Email].

10.    The Court stated specifically, "Switzer does not base his interference with prospective economic advantage claims on allegations of defamation."

11.    The Insureds subsequently filed a motion for reconsideration, which was denied, and the ruling was appealed to the Ninth Circuit on June 19, 2017.

12.    On November 7, 2016, Nautilus sent a letter to the Insureds stating: (1) ". . . Nautilus will continue to provide a defense to its Insureds in the [*Switzer*] Action until there is a decision on the Insureds' motion for reconsideration and appeal, if any.  Nautilus will continue to provide for the Insureds' defense *under a complete reservation of rights. . . "*; and (2) "Please note that nothing in this letter abrogates, curtails, extinguishes, limits or lessens, or in any other capacity restricts *the reservation of rights asserted to date by Nautilus*, including but not limited to, the rights reserved by Nautilus in its May 19, 2014, October 2, 2014, October 14, 2014 and April 5, 2016 reservations of rights letters.  Nautilus reserves all rights under the policy" (emphasis added).

13.    After the Insureds' motion for reconsideration was denied by the district court, Nautilus informed the Insureds, on July 6, 2017, that it would be executing its reserved right to withdraw from the Insureds' defense in the *Switzer* Action, effective August 1, 2017.

14.    On July 2, 2019, the Ninth Circuit later affirmed the granting of summary judgment to Nautilus.

15.    In its order, the Ninth Circuit held as follows: "[T]he district court properly entered a declaratory judgment in favor of Nautilus because the underlying proceedings did not trigger Nautilus's duty to defend . . . Because the allegations in the underlying action stem from an injury that occurred in California, California law governs the rights and liabilities of the parties as it pertains to Nautilus's duty to defend [citation]. . . Even if [the Weide Email] could be understood to reference Switzer, it does not contain a false statement that explicitly disparaged him [citations] . . . and therefore it did not trigger a duty to defend [citation.]"

16.    The deposition transcripts related to the First Re-Tender confirmed as follows:

        a.  Switzer testified that he was in fact terminated by Alphatec;

17

b. Attached to Switzer's deposition transcript was an April 28, 2011 email, which pre-dated the Weide Email sent on July 25, 2011, which stated that "[Switzer's] distribution relationship with [Alphatec] will terminate effective as of your receipt of this letter";

c. Dixie Switzer testified that after an unflattering Wall Street Journal article was published about her husband, Alphatec terminated its contract with Switzer;

d. Jacquie Weide testified that she understood from the Alphatec representative that Alphatac had cancelled Switzer's contract and would "no longer work with Mr. Switzer."

17. In the meantime, during the pendency of the appeal in the Coverage Action, the Insureds moved for relief from the summary judgment order based on this deposition testimony submitted with the First Re-Tender.

18. On August 11, 2017, the Court denied the Insureds' motion for relief and Judge Dorsey held as follows:

> [T]his new evidence probably does not trigger Nautilus's coverage. Although the plaintiff in the underlying case suggests that the defendants exaggerated in an email about whether he was banned from selling products, it remains unclear that the statements in the email are false and meet the other elements of slander or disparagement under the applicable state law (e.g., there is no evidence that the communications were unprivileged). Not to mention that nowhere in the plaintiff's complaint in the state case is it alleged that the defendants made any false statement; indeed, this email is not even mentioned. Even if I were able to get to the merits here, I would continue to hold that Nautilus has no coverage obligation.

19. On August 10, 2017, Nautilus sent a letter to the Insureds denying coverage for the First Re-Tender.

20. Ms. Switzer's testimony included the question, "But in fact, Alphatec had terminated Omega's contract; correct?"; however, Ms. Switzer did not directly answer the question, and instead responded, "But we could still sell the product."

21. On September 26, 2017, Nautilus sent a letter to the Insureds denying coverage for the Third Re-Tender.

22. On September 27, 2017, the Insureds' counsel again re-tendered the defense based on trial

testimony of Jacquie Weide and Ted Switzer and on October 2, 2017, the Insureds' counsel provided trial transcripts of discussions before the Court about jury instructions (the "Fourth Re-Tender").

23.    The "new evidence" submitted with the Fourth Re-Tender showed as follows:

a.  Ms. Weide's trial testimony acknowledged that "the distributor that [she] was referring to [in the Weide Email] . . . was Ted Switzer";

b.  Switzer testified, similar to his wife, that they could sell existing Alphatec product;

c.  Switzer did not deny at trial that he was banned from selling Alphatec products, nor did he testify that he was disparaged or harmed by the Weide Email;

d.  At trial, Switzer's counsel proposed a jury instruction on false representation, and when the court asked what evidence there was of false representation, counsel for Switzer said, "And then also the - - the representations that were made by Ms. Weide in all those e-mails that I was reading off";

e.  Switzer's counsel did not request a jury instruction for defamation, disparagement, libel, or slander – instead, the requested jury instruction was listed under Switzer's fraud cause of action, not economic interference; and

f.  The instructions actually given to the jury concerned Switzer's claims for concealment and false representation for statements made by Wood or his agents *to Switzer*, not to third parties regarding the reputation of Switzer.  For instance:

i.  The jury instruction for "concealment" for the benefit of Flournoy read, "Flournoy must prove . . . [that] Mr. Wood intentionally failed to disclose certain facts *to Flournoy* and Flournoy's non-managing member Mr. Switzer"; and

ii.  The jury instruction for "intentional misrepresentation" reads, "Mr. Switzer claims that Mr. Wood made a false representation that harmed him. To establish this claim, Mr. Switzer must prove . . . [t]hat Mr. Wood intended *that Mr. Switzer* rely on the representation."

24.    The Court reiterated and confirmed the limited scope of this case in the MSJ Order, stating: "The limited focus of this litigation is *whether the newly discovered evidence which came to light*

*after the district court granted summary judgment in the Coverage Action* would have triggered a duty to defend and, if so, whether Defendant acted in bad faith *by denying the re-tenders*."  ECF No. 315 at 12:4-8 (emphasis added).

**25.      This Court has already determined that Nautilus's duty to defend was triggered on July 28, 2017, when Plaintiffs submitted the first re-tender with new information.  ECF No. 315. Accordingly, prior to July 28, 2017, Nautilus had no duty to defend Plaintiffs in the *Switzer* Action.  *See* Id. at 38:17-19.  ("Prior to learning the Weide Email was false, [Nautilus] had no duty to defend and, consequently, no duty to attempt to settle the *Switzer* Action.").**

**26.      The Ninth Circuit applied the Nevada Supreme Court's reimbursement test articulated in *Nautilus Ins. Co. v. Access Medical, LLC*, 137 Nev. 96, 102. 482 P.3d 683, 689 (2021) to these specific facts and concluded that Nautilus expressly reserved its right to seek reimbursement in writing after the defense was tendered and the policyholder accepted the defense from the insurer.[8]  *See* Ninth Circuit's Memorandum filed August 9, 2021, ECF No. 149, at p. 3, *Nautilus Ins. Co. v. Access Medical, LLC*, Case No. 2-15-cv-00321-JAD-BNW.**

**27.      Nautilus assigned the law firm of Wolfe & Wyman LLP as defense counsel for Plaintiffs in the *Switzer* Action.  Wolfe & Wyman billed at the rate of $170 per hour.  Nautilus paid Wolfe & Wyman LLP approximately $89,924.54 from February 25, 2015 until they were replaced as defense counsel for work in the *Switzer* Action.  Plaintiffs did not reject Nautilus's assignment of Wolfe & Wyman LLC as defense counsel and Nautilus's payment of defense costs billed by Wolfe & Wyman.**

**28.      In or about April 2016, Nautilus replaced Wolfe & Wyman LLP with the law firm of Gordon Rees Scully Mansukhani LLP ("Gordon Rees") as defense counsel for Plaintiffs. Gordon Rees billed at rates slightly higher than Wolfe & Wyman LLP, or approximately $265 per hour.  Nautilus paid Gordon Rees approximately $425,546.77 for work in the *Switzer* Action through July 27, 2017.   Plaintiffs did not reject Nautilus's assignment of Gordon Rees and Nautilus's payment of Gordon Rees' fees and costs.**

---

**8 Although the Ninth Circuit's decision was in the Coverage Action, the Ninth Circuit evaluated the very same reservation of rights letters and Plaintiffs actions in accepting defense in the *Switzer* Action.  As such, law of the case principles apply.**

**29.**   Gordon Rees continued on as Plaintiffs' defense counsel through trial.

**30.**    Nautilus advised Plaintiffs that Nautilus had identified a potential conflict of interest with respect to its reserved rights; therefore, Nautilus offered Plaintiffs the option of selecting independent counsel at Nautilus's expense.

**31.**   Plaintiffs selected the law firm of Wild, Carter & Tipton to be their independent counsel. Nautilus paid Wild, Carter & Tipton the rate of $170 per hour.  Nautilus paid Wild, Carter & Tipton approximately $129,261.91 for work in the *Switzer* Action through July 27, 2017 . Plaintiffs did not object to Wild, Carter & Tipton as independent counsel and Plaintiffs did not object to Nautilus's payment of independent counsel's invoices.

**32.**   Wild, Carter & Tipton continued on as Plaintiffs' counsel through trial.

**33.**   Between February 25, 2015 and July 27, 2017, Nautilus paid the following third-party vendor costs directly for the defense of Plaintiffs in the *Switzer* Action:

> **a.**   Hemming Morse LLP, Forensic Accountant, $197,024.22
>
> **b.**   Dowling Aaron Incorporated, Discovery Facilitator, $2,960.00
>
> **c.**   JAMS, Inc., Mediation, $1,500
>
> **d.**   LA Best Color Imaging, Printing Services, $2,869.63
>
> **e.**   Berkley Court Reporters Inc., Court Reporter, $21,980.89
>
> **f.**   Aptus Court Reporting, Court Reporter, $1,294.84
>
> **g.**   Wood & Randall, Expert Services, $1,120.20
>
> **h.**   Sean D. Early MD, Expert Services, $2,250.00
>
> **i.**   OFY Travel & Tours Inc., Travel Services, $1,011.95

**34.**   In or about June 2014, Nautilus assigned the law firm Hall Hieatt & Connely LLP ("Hall Hieatt") as defense counsel for Flournoy Management, LLC in the *Switzer* Action.  Hall Hieatt billed at a rate of $160 per hour or less.  Nautilus paid Hall Hieatt approximately $127,224.07 for work performed in the *Switzer* Action between February 25, 2015 – July 27, 2017.  Flournoy Management, LLC did not object to Nautilus's assignment of Hall Hieatt as defense counsel and Nautilus's payment of Hall Hieatt's invoices.

**35.** **Flournoy Management, LLC selected the Law Office of Amy R. Lovegren-Tipton to be its independent counsel.  Nautilus paid the Law Office of Amy R. Lovegren-Tipton approximately $19,804.00 for work in the *Switzer* Action.  Flournoy did not reject Nautilus's payment of independent counsel's fees and costs.**

**36.** **Between February 25, 2015 and July 27, 2017, Nautilus paid the following third-party vendor directly for costs incurred for the defense of Flournoy Management, LLC in the *Switzer* Action:**

      **a.** **Berkley Court Reporters Inc., Court Reporter, $4,817.86**

**V.**   **ISSUES OF LAW**

The following are the issues of law to be tried and determined at trial.

**A. Plaintiffs' Issues Of Law:**

Plaintiff incorporates the legal arguments and factual issues set forth in its operative complaint and opposing summary judgment briefings, [274: 1-15 and 281;1-16]. Plaintiff anticipates the following items will be of particular importance during the trial:

1. "A primary insurer's right and duty to defend… carries with it the duty to communicate to the insured any reasonable settlement offer that could affect the insured's interest." Allstate Ins. Co. v. Miller, 125 Nev. 300, 309, 212 P.3d 318, 325 (2009).

2. In Nevada, "a primary insurer's exercise of its right and duty to defend includes settlement duties and an insurer must give equal consideration to the insured's interest."  Allstate v. Miller, 212 P.2d 318, 323 (Nev. 2009).  Particularly important to this case, the *Allstate* Court held:

> The duty to defend contains two potentially conflicting rights: the insurer's right to control settlement discussions and its right to control litigation against the insured. 14 Couch on Insurance 3d §§ 200:1, 203:1 (2005). Each of these contractual rights creates additional duties for the insurer. <u>The right to control settlement discussions creates the duty of good faith and fair dealing during negotiations</u>. See Couch, supra, § 203:1 (stating that the insurer's right to control settlement negotiations may create a conflict of interest between the insurer and the insured, and therefore, the insurer must act in good faith and give the insured's interests equal consideration with its own).

*Id.* at 324-325. (citations added).

The *Allstate* court went on two cite two cases with approval that set forth factors in determining whether an insurer's settlement actions were reasonable: 1) the insurer must give the interests of the insured at least as much consideration as it gives to its own interests," and (2) the insurer must act as "a prudent insurer without policy limits. *Id.* at 326 citing *Archdale v. American International Specialty Lines,* 154 Cal.App.4th 449, 64 Cal.Rptr.3d 632 (2007).

The Allstate Court also approved of the following additional factors:

> (1) the probability of the insured's liability; (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) the rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer; and (6) the nondisclosure of relevant factors by the insured or insurer.

Id. at 327 citing *Fertitta v. Allstate Ins. Co.,* 439 So.2d 531, 533. (La.Ct.App.1983).

3. "[A]n insurer's 'good faith,' though erroneous, belief in noncoverage affords no defense to liability flowing from the insurer's refusal to accept a reasonable settlement offer." *Johansen v. California State Auto. Assn. Inter-Ins. Bureau,* 15 Cal. 3d 9, 16 (1975).

In *Johansen*, the Court found held:

> whenever it is likely that the judgment against the insured will exceed policy limits 'so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim.

Id. at 16.

Further, and directly on point to the instant matter, the Court held:

> Moreover, in deciding whether or not to compromise the claim, the insurer must conduct itself as though it alone were liable for the entire amount of the judgment. Thus, the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, and ultimate judgment is likely to exceed the amount of the settlement offer. Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one.

Id. at 16 (citations omitted)(emphasis added).

4. "The right to recover consequential damages sustained as a result of an insurer's breach of the duty to defend [which includes the duty to settle] does not require proof of bad faith… [E]ven in the absence of bad faith, the insurer may be liable for a judgment that exceeds the policy limits if the judgment is consequential to the insurer's breach." Century Sur. Co. v. Andrew, 134 Nev. 819, 826, 432 P.3d 180, 186 (2018)

5. When there's a duty to defend, the insurer must defend its insureds in a reasonable manner. *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 311-12, 212 P.3d 318, 326 (2009).

6. Nevada law "requires insurers to fulfill their duty to defend by allowing insureds to select their own counsel and paying the reasonable costs for the independent counsel's representation." *State Farm Mut. Auto. Ins. Co. v. Hansen*, 131 Nev. Adv. Op. 74, 357 P.3d 338, 341 (2015).

7. **Whether the duties required when the duty to defend exists (such as settlement duties) also applies when an insurer exercises its *right* to defend. Allstate Ins. Co. v. Miller, 125 Nev. 300, 309, 212 P.3d 318, 325 (2009).**

8. When determining bad faith, the fact finder may consider conduct including: (1) the reasonableness of the insurer's investigation of the claim; (2) the reasonableness of an insurer's evaluation of the claim; and (3) the reasonableness of the insurer's communication with the insured. *American Excess Ins. Co. v. MGM Grand Hotels, Inc.,* 102 Nev. 601, 604, 729 P.2d 1352 (1986); *Ainsworth,* 104 Nev. at 592; *Powers,* 114 Nev. 690.

9. The insurer must conduct a prompt and thorough investigation into the facts of the underlying action that extends beyond the complaint to ascertain whether it had a duty to defend the insureds. *Century*, at 183; *see Frontier Ins. Co*., 99 P.3d at 1158.

10. **"The protections of NRS 686A.310 are broader than the tort of bad faith and extend to the processing of the claim." *Williams v. Am. Fam. Mut. Ins. Co*., 2012 WL 1574825, at \*4 (D. Nev. May 2, 2012) (citing *Hart v. Prudential Prop. & Cas. Ins. Co*., 848 F. Supp. 900, 903 (D. Nev. 1994)).*Id.***

11. **Whether an insurer can delay creating the duty to defend by failing to conduct a thorough and complete investigation of a claim.**

12. **Whether Nautilus is not entitled to reimbursement when there was not a determination**

that there was **"never a duty to defend."** The exact opposite happened in this case as the Court determined a duty to defend did exist.

13. **Whether Nautilus is entitled to reimbursement after November 9, 2016, when Wood and Access sent a letter indicating it was rejecting the defense under the condition that Nautilus would be reimbursed for defense costs. Importantly, this letter was not in evidence in the first case because this was after the relevant time period considered in _Nautilus I_.**

14. **Whether the Nevada Supreme Court's decision applies to independent counsel fees as those are not defense costs but, rather, are required due to conflicts of interest.**

B.  **Defendants' Issues Of Law:**[9]

1.  _Whether There Was A Breach Of Duty To Pay Reasonable Costs For Independent Counsel:_

    _Nautilus paid the Insureds' independent counsel a reasonable rate consistent with Nevada law._

"[W]hen an insurer provides counsel to defend its insured, a conflict of interest may arise because the outcome of litigation may also decide the outcome of a coverage determination—a determination that may pit the insured's interest against the insurer's." _State Farm Mut. Auto. Ins. Co. v. Hansen_, 357 P.3d 338, 340 (Nev. 2015). "Where the clients' interests conflict, the rules of professional conduct prevent the same lawyer from representing both clients." _Id._ at 341. In such a situation, "Nevada law requires the insurer to satisfy its contractual duty to provide representation by permitting the insured to select independent counsel and by paying the reasonable costs of such counsel." _Id._

In articulating this rule, the Nevada Supreme Court adopted the rule established by _San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc._, 162 Cal.App.3d 358 (4th Dist. 1984),

---

[9] **Nautilus objects to Plaintiffs' adding Issues of Law 7, 10, and 11 to this Amended Joint Pretrial Order on the grounds that any amendment is limited to addressing Nautilus's reimbursement counterclaims, not to raise new arguments and issues of law on Plaintiffs' claims that were not originally included in the Joint Pretrial Order.**

construing the so-called "*Cumis* rule" as requiring "insurers to fulfill their duty to defend by allowing insureds to select their own counsel and paying the reasonable costs for the independent counsel's representation." *Hansen*, 357 P.3d at 341.  Post-*Cumis*, California codified its standard in Civil Code § 2860(c).  Section 2860(c) does not cap attorneys' fees, but rather limits the insurer's obligation "to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended."

    2.  *If There Was A Duty To Defend, Whether Nautilus Has A Duty To Pay The Judgment In The Switzer Action:*

Even though this Court's determined that Nautilus breached the contract, Nautilus is not liable for the judgment in the *Switzer* Action because the breach of contract did not cause the excess judgment.  Rather, the judgment ordered in the *Switzer* Action is directly attributable to the Insureds' own fraudulent conduct and was in no way related to Nautilus's determination regarding the duty to defend or Nautilus's failure to pay defense costs post August 1, 2017.

"[A]n insurer's liability where it breaches its contractual duty to defend is not capped at the policy limits plus the insured's defense costs, and instead, an insurer may be liable for any consequential damages caused by its breach.  *Andrew, supra*, 134 Nev. at 820.  "The determination of the insurer's liability depends on the unique facts of each case and is one that is left to the jury's determination."  *Id.* at 825 (citation omitted).  "The right to recover consequential damages sustained as a result of an insurer's breach of the duty to defend does not require proof of bad faith."  *Id.* at 826.

However, the Nevada Supreme Court has made clear "that an entire judgment is [not] automatically a consequence of an insurer's breach of its duty to defend; rather, *the insured is tasked with showing that the breach caused the excess judgment* and "is obligated to take all reasonable means to protect himself and mitigate his damages."  *Id.* (emphasis added).

    3.  *If There Was A Duty To Defend, Whether There Was A Genuine Dispute Regarding Coverage:*

*Even if the Court's determination stands that Nautilus breached the contract, Nautilus did not act in "bad faith" because there was a genuine dispute regarding coverage and Nautilus did not knowingly and/or recklessly act unreasonable in its consideration of the re-tenders.*

"Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only 'in rare and exceptional cases' when there is a special relationship between the victim and tortfeasor." *Ins. Co. of the West v. Gibson Title Co., Inc.*, 137 P.3d 698, 702 (Nev. 2006); *see also Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009) (explaining that Nevada law, not the insurance policy, imposes obligations on insurers under the implied covenant of good faith and fair dealing). The relationship between an insurer and its insureds is one such special relationship. *Ins. Co. of the West*, 137 P.3d at 702.

"A violation of the covenant gives rise to a bad-faith tort claim." *Allstate*, 212 P.3d at 324. "To prevail on such a claim, a plaintiff must allege that (1) an insurer-insured relationship exists; (2) the insurer breached its duty by refusing to defend or indemnify its insureds for a loss covered by the policy; (3) the denial is without proper cause, meaning the insurer has an 'actual or implied awareness of the absence of a reasonable basis for denying the benefits of the policy.'" *Ariz. Civil Constructors, Inc. v. Colony Ins. Co.*, 481 F.Supp.3d 1141, 1151 (D. Nev. 2020) (quoting *Am. Excess Ins. Co. v. MGM*, 729 P.2d 1352, 1354-55 (Nev. 1986)). In other words, "[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guar. Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). "It is not enough to show that, in hindsight, an insurer acted unreasonably; *the plaintiff must show that the insurer knew or recklessly disregarded that it was acting unreasonably.*" *Fernandez v. State Farm Mut. Auto. Ins. Co.*, 338 F.Supp.3d 1193, 1200 (D. Nev. 2018) (emphasis added).

5.  *Whether Nautilus Violated Any Of The Regulatory Duties Of An Insurer In Nevada:*

*Regardless of whether Nautilus breached the contract, Nautilus did not commit unfair claims practices in violation of NRS § 686A.310 because Nautilus acted reasonably and fairly in its consideration of the Insureds' re-tenders.*

Under Nevada law, when an insurer has not acted unreasonably or unfairly in the handling of the claim, the requirement to support a claim for unfair claims practices has not been met. *See Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d. 1050 (D. Nev. 2017).

6. ***Whether Nautilus in Entitled to Reimbursement of Defense Costs Nautilus Paid on Behalf of Its Insured in the Switzer Action From February 25, 2015 through July 27, 2017***:

In ***Nautilus Insurance Company v. Access Medical, LLC, et al.***, 137 Nev. 96, 482 P.3d 683 (2021), the Nevada Supreme Court held that unjust enrichment underpins an insurer's right to reimbursement of defense costs paid under a reservation of rights where 1) a court determines that an insurer never owed a duty to defend, 2) the insurer expressly reserved its rights to seek reimbursement in writing after a defense was tendered, and 3) the policyholder accepted the defense from the insured. *Id.* at 101-02, 482 P.3d at 688-89 (rejecting that the insurance policy, a contract, underpins reimbursement because the contract is not implicated where there is no coverage for a claim). The Nevada Supreme Court held that where a court finally determines that an insurer does not owe a defense under its policy, yet the insurer pays for such defense under a reservation of rights when it had no obligation to do so, then equity demands that the policyholder reimburse its insurer. *Id.* at 102, 482 P.3d at 689. Equity was at the forefront of the Nevada Supreme Court's decision based, in part, on the fact that Nevada law "more forcefully encourages insurers to offer to defend doubtful claims," thus "it is only fair to permit those insurers to recover costs they never agreed to bear." *Id.* at 103, 482 P.3d at 690. Furthermore, in the appeal of the Coverage Action, the Ninth Circuit held that whether an insurer's duty to defend is triggered at a later time does not undermine the Nevada Supreme Court's rationale that an insurer may obtain reimbursement of defense costs paid when the policy did not require that the insurer pay in the first instance, which is the case here.

## VI.   **EXHIBITS**

The following is a joint exhibit list proposed by Plaintiffs. By providing this list, neither party is waiving any rights to object to any particular exhibits or to add to this exhibit list as necessary nor is either party waiving any rights to object to such changes. Moreover, Defendant makes a blanket objection to any exhibit that includes evidence which goes beyond the scope of this case as defined by Court.

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| *SWITZER* CALIFORNIA CASE PLEADINGS | | | | |
| 1. | Ted Switzer's original | ACCESS 00001 – | | |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | Complaint against Flournoy dated December 27, 2011 | 00007 | | |
| 2. | Ted Switzer's Cross-Complaint in the *Switzer* Action, filed June 3, 2013 | NIC-000053 – 000111 | Plaintiff believes the unrelated parties and causes of action should be redacted as irrelevant and unduly prejudicial | Plaintiff |
| 3. | Judgment from the *Switzer* Action | ACCESS 00106 – 00136 | | |
| 4. | Notice of Entry of Judgment in the *Switzer* Action | ACCESS 00137 – 00139 | | |
| 5. | Court Minutes regarding Mr. Switzer's Motion to Tax Costs from the *Switzer* Action | ACCESS 00140 – 00146 | | |
| 6. | Order from the California Appellate Court re: *Switzer* Action | ACCESS 00182 – 00207 | Relevance; foundation; as well as any other reason set forth within the Federal Rules of Evidence ("FRE") | Defendant |
| 7. | Writ of Execution to Wood due to the Judgment in the Switzer Action | ACCESS 00208 – 00212 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 8. | Clerk's Certificate of Mailing, Law and Motion Minute Order, and Tentative Ruling | ACCESS 00213 – 00219 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 9. | Final Statement of Decision and Judgment | ACCESS 00890-00912 | | |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | on Special Verdict – Modified After Appeal from *Ted Switzer v. Flournoy Management, LLC, et. al* | | | |
| 10. | Verdict from *Switzer* Action | ACCESS 01144-01177 | | |
| 11. | Notice of Appeal from *Switzer* Action | ACCESS 01178-01184 | | |
| | | | | |
| **DEPOSITIONS AND TRANSCRIPTS FROM *SWITZER* CALIFORNIA CASE** | | | | |
| 12. | Excerpt of Trial Testimony of Mr. Carrigan | ACCESS 00095 – 00096 | | |
| 13. | Mr. Switzer's attorney probing jurors in the *Switzer* Action regarding possible defamatory claims | ACCESS 00179-00181 | | |
| 14. | Excerpt of the Theodore Switzer Deposition Testimony Related to the First Re-Tender | ECF No. 269-15 | | |
| 15. | Deposition Transcript in Switzer v. Flournoy of Theodore Switzer Part 1 | SWITZER THEODORE SWITZER DEPO 000001-000266 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 16. | Deposition Transcript in *Switzer v. Flournoy* of Theodore Switzer Part 2 | SWITZER THEODORE SWITZER DEPO 000001-000185 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 17. | Deposition Transcript in *Switzer v. Flournoy* of Dixie Switzer Part 1 | SWITZER DIXIE SWITZER DEPO 000001-000342 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| 18. | Deposition Transcript in Switzer v. Flournoy of Dixie Switzer Part 2 | SWITZER DIXIE SWITZER DEPO 000001-000122 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 19. | Deposition Transcript in Switzer v. Flournoy of Jacqueline Weide Part 1 | SWITZER WEIDE PART 1 000001-000252 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 20. | Deposition Transcript in *Switzer v. Flournoy* of Jacqueline Weide Part 2 | SWITZER WEIDE PART 2 000001-000177 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 21. | Deposition Transcript in Switzer v. Flournoy of Jacqueline Weide Part 3 | SWITZER WEIDE PART 3 000001-000130 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 22. | Deposition Transcript in Switzer v. Flournoy of Robert Clark Wood II Part 1 | SWITZER WOOD DEPO PART 1 000001-000188 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 23. | Deposition Transcript in Switzer v. Flournoy of Robert Clark Wood II Part 2 | SWITZER WOOD DEPO PART 2 000001-000099 | Relevance; foundation; overbroad; as well as any other reason set forth within the | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | FRE | |
| 24. | Deposition Transcript in Switzer v. Flournoy of Robert Clark Wood II Part 3 | SWITZER WOOD DEPO PART 3 000001-000161 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 25. | Deposition Transcript in Switzer v. Flournoy of Robert Clark Wood II Part 4 | SWITZER WOOD DEPO PART 4 000001-000110 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 26. | Excerpt of Trial Testimony of Dixie Switzer | ACCESS 00093 - 00094 | | |
| 27. | Deposition Transcript in Switzer v. Flournoy of Robert Clark Wood II Part 5 | SWITZER WOOD DEPO PART 5 000001-000104 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 28. | Excerpt of the Dixie Switzer Deposition Testimony Related to the First Re-Tender | ECF No. 269-17 | | |
| 29. | Excerpt of Trial Testimony of Jacqueline Weide | ACCESS 00084 – 00090 | | |
| 30. | Excerpt of the Jacqueline Weide Deposition Testimony Related to the First Re-Tender | ECF No. 269-18 | | |
| 31. | Excerpt of the First Day Trial Transcript in the Switzer Action, Including Voir Dire, dated August 23, 2017, Relating to the Second Re-Tender | Nautilus-AccessRe-Tender2-00005 - 00119 | | |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| 32. | Excerpt of Dixie Switzer's Trial Testimony in the Switzer Action Relating to the Third Re-Tender | ACCESS 00093 - 00094 | | |
| 33. | Excerpt of Jacqueline Weide's Trial Testimony in the *Switzer* Action Relating to the Fourth Re-Tender | ACCESS 00084 – 00090 | | |
| 34. | Excerpt of Ted Switzer's Trial Testimony in the *Switzer* Action Relating to the Fourth Re-Tender | ACCESS 00091 – 00092 | | |
| 35. | Excerpt of the Trial Transcript in the *Switzer* Action Regarding Jury Instructions, Relating to the Fourth Re-Tender | ACCESS 00095 – 00096 | | |
| | | | | |
| **NAUTILUS POLICY** | | | | |
| 36. | Nautilus Insurance Policy | ACCESS 00010 – 00060 | | |
| **WEIDE EMAIL** | | | | |
| 37. | Email from Jacquie Weide dated July 25, 2011, to Deborah Fanning advising Cottage Hospital Access was interested in providing spinal implants to this facility | ACCESS 00008 – 00009 | | |
| **CORRESPONDENCE IN CHRONOLOGICAL ORDER** | | | | |
| 38. | Letter dated April 28, 2011, Related to the First Re-Tender | ECF No. 269-16 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 39. | Nautilus's letter to the Insureds dated January 8, 2014 | ACCESS 00061 – 00063 | Relevance; foundation; impermissible hearsay; as | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | well as any other reason set forth within the FRE | |
| 40. | Email Correspondence re: Switzer v. Flournoy & Sonny Wood dated January 8, 2014-February 20, 2014 | ACCESS 01035-01059 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 41. | Letter from Kravitz, Schnitzer & Johnson, Chtd. to Selman Breitman, LLP dated January 14, 2014 | ACCESS 01007 – 01010 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 42. | Email dated January 23, 2014 | ACCESS 00065 – 00066 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 43. | Correspondence from Flournoy's counsel dated February 7, 2014 | ACCESS 00067 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 44. | Nautilus's correspondence dated February 10, 2014 | ACCESS 00068 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---------|-------------|-------|------------|-----------------|
| | | | FRE | |
| 45. | Correspondence from Flournoys' counsel dated February 18, 2014 | ACCESS 00069 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 46. | Electronic correspondence from Nautilus dated February 20, 2014 | ACCESS 00070 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 47. | Correspondence from Access Medical, LLC dated February 20, 2014 | ACCESS 00071 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 48. | Correspondence from Nautilus dated February 21, 2014 | ACCESS 00072 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 49. | Correspondence from Access Medical, LLC dated February 24, 2014 | ACCESS 00073 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 50. | Correspondence from | ACCESS 00074 | Relevance; | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | Access Medical dated February 25, 2014 | | foundation; impermissible hearsay; as well as any other reason set forth within the FRE | |
| 51. | Letter from Nautilus dated March 5, 2014 | ACCESS 00075 – 00083 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 52. | Letter from Selman Breitman, LLP to Jordan P. Schnitzer dated March 5, 2014 | ACCESS 01026 - 01034 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 53. | Letter from Kravitz, Schnitzer & Johnson, Chtd. to Selman Breitman, LLP dated March 17, 2014 | ACCESS 00999 - 01003 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 54. | Email Correspondence re: Switzer v. Flournoy & Sonny Wood dated March 25, 2014-May 27, 2014 | ACCESS 01060 – 01140 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 55. | Email correspondence dated March 25, 2014 wherein Nautilus accepted defense | ACCESS 00064 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | within the FRE | |
| 56. | Nautilus's reservation of rights letter to the Insureds, dated May 14, 2014 | NIC-000213 – 000226 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 57. | Nautilus's reservation of rights letter to the Insureds, dated October 2, 2014 | NIC-000228 – 000241 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 58. | Letter from Nautilus Insurance Group to Access Medical, LLC dated October 2, 2014 | ACCESS 01011 - 01025 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 59. | Nautilus's reservation of rights letter to Flournoy Management, Inc., dated October 17, 2014 | NIC-000243 - 000255 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 60. | Correspondence from Nautilus Insurance re cumis counsel rates dated October 17, 2014 | ACCESS 01222-01235 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 61. | Nautilus's letter to the Insureds' counsel, dated January 16, 2015 | ACCESS 01195-01196 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| 62. | Nautilus's letter to Insureds' counsel dated January 19, 2015 | ACCESS 01197 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 63. | Insureds' counsel letter to Nautilus dated June 26, 2015 | ACCESS 01198-01199 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 64. | Correspondence between Gordon Rees Scully Mansukhani, LLP ("Gordon & Rees") and Nautilus from September 2016 | ACCESS 00147 - 00167 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 65. | Letter from Nautilus dated November 7, 2016 sent to the Insureds | ACCESS 01245-01246 | Duplicative | Defendant |
| 66. | Nautilus's letter to the Insureds' counsel, dated November 7, 2016 | ECF No. 269-12 / ACCESS 00097 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 67. | Correspondence between Gordon & Rees and Nautilus from April 6, 2017 | ACCESS 00168 - 00171 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 68. | Correspondence to Nautilus on May 9, 2017 | ACCESS 00103 – 00105 | Relevance; foundation; overbroad; as well as any | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | other reason set forth within the FRE | |
| 69. | Letter from Kravitz, Schnitzer & Johnson, Chtd. to Selman Breitman, LLP dated May 19, 2017 | ACCESS 01004 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 70. | Nautilus's letter to the Insureds' counsel, dated July 6, 2017 | ECF NO. 269-13 / ACCESS 00098 - 00099 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 71. | Letter from Kravitz, Schnitzer & Johnson, Chtd. to Selman Breitman, LLP dated July 18, 2017 | ACCESS 01005 - 01006 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 72. | Nautilus's letter to Insureds' counsel, dated July 26, 2017 | ACCESS 01200-01203 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 73. | Insureds' counsel letter to Nautilus dated July 28, 2017 | ACCESS 01204-01206 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 74. | The Insureds' First Re-Tender Correspondence to Nautilus, dated July | Nautilus-AccessRe-Tender1-00002 - 00004 | Relevance; foundation; overbroad; as | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
|  | 28, 2017 |  | well as any other reason set forth within the FRE |  |
| 75. | Email correspondence between Jordan P. Schnitzer and Nautilus Insurance from July 31, 2017, through August 9, 2017, re Demand for Re-Tender and Defense | ACCESS 01236-01243 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 76. | Nautilus's letter to Insureds' counsel, dated August 10, 2017 | ACCESS 01207-01212 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 77. | Nautilus's Letter to the Insureds, dated August 10, 2017, Denying Coverage for the First Re-Tender | ECF No. 269-19 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 78. | Insureds' counsel letter to Nautilus dated August 23, 2017 | Access 01213-01214 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 79. | The Insureds' Second Re-Tender Correspondence to Nautilus, dated August 24, 2017 | Nautilus-AccessRe-Tender2-00121 – 00123 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 80. | Nautilus's letter to Insureds counsel dated | ACCESS 01215-01217 | Relevance; foundation; | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | August 31, 2017 | | overbroad; as well as any other reason set forth within the FRE | |
| 81. | Nautilus's Letter to the Insureds, dated August 31, 2017, Denying Coverage for the Second Re-Tender | Nautilus-AccessRe-Tender2-00138 – 00140 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 82. | The Insureds' Third Re-Tender Correspondence to Nautilus, dated September 19, 2017 | Nautilus-AccessRe-Tender3-00010 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 83. | Nautilus's Letter to the Insureds, dated September 26, 2017, Denying Coverage for the Third Re-Tender | Nautilus-AccessRe-Tender3-00004 – 00006 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 84. | The Insureds' Fourth Re-Tender Correspondence to Nautilus, dated September 27, 2017 | Nautilus-AccessRe-Tender4-00002 – 00003 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 85. | Correspondence to Nautilus on September 27, 2017 | ACCESS 00102 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 86. | The Insureds' | Nautilus-AccessRe- | Relevance; | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | Supplemental Re-Tender Correspondence, dated October 2, 2017, Related to the Fourth Re-Tender | Tender4-00014 - 00016 | foundation; overbroad; as well as any other reason set forth within the FRE | |
| 87. | Email correspondence from Jordan P. Schnitzer on October 2, 2017 re Demand for Re-Tender and Defense | ACCESS 01244 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 88. | Nautilus's Letter to the Insureds, dated October 10, 2017, Denying Coverage for the Fourth Re-Tender | Nautilus-AccessRe-Tender4-00024 – 00027 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 89. | Nautilus's letter to Insureds counsel dated October 26, 2017 | ACCESS 01218-01219 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 90. | Nautilus's Supplemental Letter to the Insureds, dated October 26, 2017, Further Denying Coverage for the Fourth Re-Tender | Nautilus-AccessRe-Tender4-00029 – 00030 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 91. | Correspondence from L. Renee Green re November 7, 2016 Letter dated November 9, 2016 | ACCESS 01220-01221 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| 92. | Letter from Selman Breitman, LLP to Kravitz, Schnitzer & Johnson, Chtd. re Supplement to Production 07.19.19 | ACCESS 00220 – 00232 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 93. | Nautilus's letter to Insureds counsel dated January 2, 2020. re: Depositions of Dan Curran and April Williams | ACCESS 01186-01189 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 94. | Correspondence from Gregory Altounian regarding global settlement demand dated January 9, 2020 | ACCESS 01141 - 01143 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 95. | Letter from Selman Breitman to Jordan Schnitzer Settlement Communication dated February 12, 2020. | ACCESS 01185 | | |
| 96. | CONFIDENTIAL Letter from Nautilus dated February 12, 2020, re settlement communication | ACCESS 01247 | Privileged; Confidential Settlement Communication; as well as any other reason set forth within the FRE | Defendant |
| 97. | Letter from Jordan P. Schnitzer on March 20, 2020. re response to February 12, 2020, letter from Nautilus re settlement communication | ACCESS 01248-01250 | Privileged; Confidential Settlement Communication; as well as any other reason set forth within the FRE | Defendant |
| 98. | Letter from Selman | ACCESS 00233 – | Privileged; | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
|  | Breitman, LLC to Jordan P. Schnitzer on April 1, 2020, re: walk away offer | 00236 | Confidential Settlement Communication; as well as any other reason set forth within the FRE |  |
| 99. | Insureds counsel letter to Dan Curran dated June 11, 2020, re: Deposition | ACCESS 01190 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 100. | Insureds counsel letter to Nautilus dated July 28, 2020, re: 30(b)(6) Deposition Nautilus Insurance Group | ACCESS 01191 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 101. | Nautilus's letter to Insureds counsel dated August 17, 2020, re: 30(b)(6) Deposition Nautilus Insurance Group | ACCESS 01192-01194 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 102. | Correspondence from Linda K. Hsu re communication/docume nt ation between Selman Breitman and Nautilus dated February 2, 2021 | ACCESS 1252-1256 | Relevance; as well as any other reason set forth within the FRE | Defendant |
| **ATTORNEY INVOICES AND RETAINER AGREEMENTS** | | | | |
| 103. | Invoices for attorney's fees | ACCESS   00237   – 00842 | Relevance; foundation; overbroad; impermissible hearsay;   as well   as   any other   reason set   forth within   the FRE | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| 104. | Unsigned Attorneys' Fee Agreement | ACCESS 00843 - 00846 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 105. | Fees Hemming Morse, LLP billed for its services to the Insureds | ACCESS 00172 - 00178 | Relevance; foundation; impermissible hearsay; as well as any other reason set forth within the FRE | Defendant |
| 106. | Billing records of attorneys representing Plaintiffs in the *Switzer* Action | BILLING RECORDS 000001 – 000383 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| **NAUTILUS PROCEDURES AND GUIDELINES** | | | | |
| 107. | Nautilus Insurance Group Attorney Guidelines | ACCESS 00847 - 00855 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 108. | (Protected) previously disclosed in Nautilus Request for Production Responses | ACCESS WORK FLOW 1-145 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 109. | (Protected) previously disclosed in Nautilus Request for Production Responses | ACCESS WORK FLOW 146-208 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| **EXPERTS** | | | | |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| 110. | Stephen L. Strzelec Initial Expert Report dated January 7, 2021 | EXPERT STRZELEC 000001-000070 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 111. | Stephen L. Strzelec CV, Testimony List, and Fee Schedule | STRZELEC 000001-000012 | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 112. | Stephen L. Strzelec Expert File Redactions to emails were made pursuant to FRCP 26b4C | STRZELEC FILE 000001-004415 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Plaintiff/Defendant |
| 113. | David B. Ezra Expert Report Dated January 8, 2021 | | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 114. | David B. Ezra CV, Testimony List, and Fee Schedule | | Relevance; foundation; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 115. | David B. Ezra Case File | NIC-DE 000001-001198 | Relevance; foundation; overbroad; as well as any other reason | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | set forth within the FRE | |
| 116. | 30(b)(6) of Nautilus Insurance Company's Deposition Transcript on December 21, 2020 | | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 117. | Exhibit 1 | Notes from Deponent ACCESS 1251 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 118. | Exhibit 2 | Notice of Deposition | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 119. | Exhibit 3 | Documents that were reviewed for the Deposition by 30(b)(6) of Nautilus Insurance Company | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 120. | Exhibit 4 | Nautilus Policy NIC 1-51 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | set forth within the FRE | |
| 121. | Exhibit 5 | Correspondence re cumis Counsel rates dated October 14, 2014 ACCESS 1222-1235 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 122. | Exhibit 6 | Letter from Nautilus dated July 6, 2017 pulling coverage ACCESS 98-99 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 123. | Exhibit 7 | Letter to Nautilus dated July 28, 2017 Nautilus-AccessRE-Tender 1 2-4 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 124. | Exhibit 8 | Pre-Mediation Evaluation from Gordon & Rees dated September 23, 2016 ACCESS 150-167 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 125. | Exhibit 9 | Email from Jacquie Weide dated July 25, 2011 to Deborah Fanning | Relevance; foundation; impermissible hearsay; | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | ACCESS 8-9 | overbroad; as well as any other reason set forth within the FRE | |
| 126. | Exhibit 10 | Letter from Nautilus's Counsel dated November 7, 2016, re coverage counsel ACCESS 1245-1246 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 127. | Exhibit 11 | Claim Notes Nautilus-AccessRE-Tender4 31-33 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 128. | Exhibit 12 | Letter to Nautilus re Re-tender defense Switzer Action dates July 28, 2017 ACCESS 1204-1206 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 129. | Exhibit 13 | Excerpts of Jacqueline Weide's Deposition Volume 1, March 15, 2017 Nautilus-AccessRE-Tender1 14-19 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 130. | Exhibit 14 | Excerpts of Theodore | Relevance; | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | Switzer's Deposition Nautilus-AccessRe-Tender 1 12-13 | foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | |
| 131. | Exhibit 15 | Email from John Phillips on August 4, 2017 Nautilus-AccessRe-Tender1 21 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 132. | Exhibit 16 | Email to Nautilus on August 24, 2017 Nautilus-AccessRe-Tender2 121 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 133. | Exhibit 17 | Email to Nautilus dates September 19, 2007 Nautilus-AccessRe-Tender3 10 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 134. | Exhibit 18 | Excerpt of Trial testimony of Dixie Switzer ACCESS 93-94 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---------|-------------|-------|------------|-----------------|
| | | | within the FRE | |
| 135. | Exhibit 19 | Correspondence to Nautilus on September 27, 2017 ACCESS 102 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 136. | Exhibit 20 | Excerpt of Trial Testimony of Theodore Switzer ACCESS 91-92 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 137. | Exhibit 21 | Letter from Gregory Altounian dated January 9, 2020 ACCESS 1141-1143 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 138. | Exhibit 22 | Letter from Nautilus re walk away offer on April 1, 2020 ACCESS 233-236 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Defendant |
| 139. | Deposition Transcript of Robert "Sonny" Wood, II, taken December 23, 2020, and related exhibits | | | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| 140. | David B. Ezra's Deposition transcript held on May 11, 2021including exhibits | | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 141. | Exhibit 1 | Initial Expert Report | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 142. | Exhibit 2 | David B. Ezra's CV | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 143. | Exhibit 3 | Berger Kahn website article Insurance Bad Faith | | Plaintiff |
| 144. | Exhibit 4 | Berger Kahn website article Insurance Coverage | | Plaintiff |
| 145. | Exhibit 5 | Article Mastering the Blue Ridge Settlement Reservation of Rights, Part 1 | | Plaintiff |
| 146. | Exhibit 6 | Article Mastering the Blue Ridge Settlement Reservation of Rights, Part 2 | | Plaintiff |
| 147. | Exhibit 7 | David B. Ezra Subpoena to Testify at Deposition | Relevance; foundation; impermissible | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | hearsay; overbroad; as well as any other reason set forth within the FRE | |
| 148. | Exhibit 8 | David B. Ezra File NIC_DE 1-1198 | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 149. | Exhibit 9 | Affidavit of Service of Notice of Deposition and Subpoena Duces Tecum | Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE | Plaintiff |
| 150. | Exhibit 10 | Any Bills that were sent out by David B. Ezra in this case. | | |
| 151. | Stephen L. Strzelec Deposition transcript held on October 4, 2021 | | | Plaintiff |
| 152. | Exhibits from Stephen L. Strzelec's Deposition held on October 4, 2021 | | | Plaintiff |
| MOTION-RELATED EXHIBITS | | | | |
| 153. | Access Medical LLC and Robert "Sonny" Wood, II's Index of Exhibits in Support of Their Reply to Nautilus Insurance Company's Opposition to the Insureds' Countermotion for Case | ECF 200 ACCESS 00913 - 00998 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | Terminating Sanction (2nd Request) Regarding Dan Curran from *Robert "Sonny" Wood, an individual; Access Medical, LLC v. Nautilus Insurance Company* | | | |
| 154. | Exhibit 1 | ECF 200-1 Affidavit of Robert D. Trzynka, Esq.in support of Plaintiffs Memorandum in Opposition to Motion to Present the Issue of Punitive Damages to the Jury ("Memorandum") in the Lillibridge v. Nautilus Ins. Co. matter, Case No. 4:2010ev04105 filed at the United States District Court for the District of South Dakota, Southern Division ("Lillibridge matter") | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 155. | Exhibit 2 | ECF 200-2 Exh. C to Plaintiffs Memorandum in the Lillibridge matter consisting of excerpts from Nautilus's Best Practices Training manual | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 156. | Exhibit 3 | ECF 200-3 Affidavit of Michael D. Bornitz, Esq. in support of Plaintiffs Motion to Compel Documents ("Motion to Compel") filed in the Lillibridge matter | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 157. | Exhibit 4 | ECF 200-4 Exhibit N to Plaintiffs Motion to Compel in | Relevance; foundation; as well as any | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
|  |  | the Lillibridge matter consisting of excerpts from Nautilus's Best Practices Training manual | other reason set forth within the FRE |  |
| 158. | Exhibit 5 | ECF 200-5 Exhibit HH to Plaintiffs Motion to Compel in the Lillibridge matter consisting of employee goals for one of Nautilus's employees | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 159. | Exhibit 6 | ECF 200-6 Exhibit II to Plaintiffs Motion to Compel in the Lillibridge matter consisting of excerpts from Nautilus's Best Practices Training manual | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 160. | Exhibit 7 | ECF No. 200-7 Exhibit JJ to Nautilus QA Training Documents in the Lillibridge matter consisting of excerpts from Nautilus's Best Practices Training manual | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 161. | Access Medical LLC and Robert "Sonny" Wood, II's Index of Exhibits in Support of Plaintiffs' Motion for Partial Summary Judgment on Second Amended Complaint from *Robert "Sonny" Wood, an individual; Access Medical, LLC v. Nautilus Insurance Company* | ECF No. 301-2 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 162. | Exhibit 1 | ECF No. 281-3 Deposition Transcript of Nautilus's 30b6 Deponent. | Relevance; foundation; as well as any other reason set forth | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | within the FRE | |
| 163. | Exhibit 2 | ECF No. 281-4 Expert Report of Steve Strzelec | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 164. | Exhibit 3 | ECF No. 281-5 Declaration of Linda Wendell Hsu | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 165. | Exhibit 4 | ECF No. 281-6 Billing records for Gordon Rees | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 166. | Exhibit 5 | ECF No. 281-7 Invoice from independent counsel for the Insureds, Access Bates No. 00716-719 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 167. | Exhibit 6 | ECF No. 281-8 July 18, 2017 Letter | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 168. | Exhibit 7 | ECF No. 281-9 Deposition Transcript of Robert "Sonny" Wood, II. | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 169. | Exhibit 8 | ECF No. 281-10 July 26, 2017 Letter | Relevance; foundation; as well as any | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | | other reason set forth within the FRE | |
| 170. | Exhibit 9 | ECF No. 281-11 Mediation Report | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 171. | Exhibit 10 | ECF No. 281-12 Nautilus' claim note dated February 23, 2017 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 172. | Exhibit 11 | ECF No. 281-13 Nautilus' claim note dated May 9, 2017 | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 173. | Exhibit 12 | ECF No. 281-14 Nautilus' First Post-Dated Claim Note Bates Nos., Nautilus-Access Re-Tender4 00031-33. | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 174. | Exhibit 13 | ECF No. 281-15 August 4, 2017 Email | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 175. | Exhibit 14 | ECF No. 281-16 February 12, 2020 Letter | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| 176. | Exhibit 15 | Expert Report of David | Relevance; | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | | B. Ezra, Esq. | foundation; as well as any other reason set forth within the FRE | |
| 177. | Exhibit 16 | Deposition Transcript of Expert David B. Ezra, Esq. | Relevance; foundation; as well as any other reason set forth within the FRE | Defendant |
| **PLEADINGS FROM THE "COVERAGE ACTION"** | | | | |
| 178. | Nautilus's Complaint in the Coverage Action, filed on February 24, 2015 | ECF No. 269-8 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 179. | Nautilus's Motion for Partial Summary Judgment in the Coverage Action (the "MPSJ"), filed on January 15, 2016 | ECF No. 269-9 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 180. | Court Order in the Coverage Action Granting the MPSJ and Closing Case, dated September 27, 2016 | ECF No. 269-10 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 181. | Court Order in the Coverage Action Denying the Insureds' Motion for Reconsideration, dated May 18, 2017 | ECF No. 269-11 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 182. | Order from the Ninth Circuit Affirming the Court's Order in the Coverage Action Granting the MPSJ, | ECF No. 269-33 | Relevance; foundation; as well as any other reason set forth | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | filed July 2, 2019 | | within the FRE | |
| 183. | Court Order in the Coverage Action Denying the Insureds' Motion for Relief from Judgment, dated August 11, 2017 | ECF No. 269-20 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 184. | The Court's Order dated December 26, 2017 | ECF No. 36 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 185. | The MSJ Order | ECF No. 315 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| **RESPONSES TO WRITTEN DISCOVERY** | | | | |
| 186. | Nautilus Insurance Company's Responses to Access Medical, LLC and Robert Clark Wood, II's First Request For Admissions from *Nautilus Insurance Company v. Access Medical, LLC; Robert Clark Wood, II; Flournoy Management, LLC* | ACCESS 00856 – 00869 | Relevance; foundation; impermissible use of discovery responses from a separate action; as well as any other reason set forth within the FRE | Defendant |
| 187. | Nautilus Insurance Company's Responses to Access Medical, LLC and Robert Clark Wood, II's First Request for Production of Documents from *Nautilus Insurance Company v. Access Medical, LLC; Robert* | ACCESS 00870 - 00873 | Relevance; foundation; impermissible use of discovery responses from a separate action; as well as any other | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | *Clark Wood, II; Flournoy Management, LLC* | | reason set forth within the FRE | |
| 188. | Nautilus Insurance Company's Responses to Access Medical, LLC and Robert Clark Wood, II's First Set of Interrogatories From *Nautilus Insurance Company v. Access Medical, LLC; Robert Clark Wood, II; Flournoy Management, LLC* | ACCESS 00874 - 00889 | Relevance; foundation; impermissible use of discovery responses from a separate action; as well as any other reason set forth within the FRE | Defendant |
| 189. | Access's Responses to Nautilus's Requests for Admission, Set No. One, served on April 23, 2018 | ECF No. 269-35 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 190. | (Protected) previously disclosed in Nautilus Request for Production Responses | PRIVILEGE LOGS 1-8 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 191. | Nautilus Amended Privilege Log for Supplemental Response to Request for Production Documents | PRIVILEGE LOGS 9-18 | | |
| **NAUTILUS REQUEST FOR PRODUCTION RESPONSE DOCUMENTS** | | | | |
| 192. | Nautilus's Supplemental Responsive Discovery Document Production Related to the First Re-Tender | Nautilus-AccessRe-Tender 1 00001-00051 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 193. | Nautilus Insurance Company Request for Production Response | Nautilus-AccessRe-Tender 2 00005-00140 | Relevance; foundation; as well as any | Plaintiff |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | Documents | | other reason set forth within the FRE | |
| 194. | Nautilus Insurance Company Request for Production Response Documents | Nautilus-AccessRe-Tender 3 00001-00010 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 195. | Nautilus Insurance Company Request for Production Response Documents | Nautilus-AccessRe-Tender 4 00020-00033 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 196. | Nautilus's Responsive Discovery Document Production | NIC-000001 – 001186 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| 197. | Nautilus's Supplemental Responsive Discovery Document Production | Nautilus-AccessWorkFlow-00001 – 00145 | Relevance; foundation; as well as any other reason set forth within the FRE | Plaintiff |
| WITHHELD DOCUMENTS | | | | |
| 198. | Unredacted Tender Emails | **Unredacted Tender Emails 1-42** | Nautilus's production of these documents is subject to a court order related to a Writ of Mandamus that Nautilus is in the process of filing. | Defendant |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---------|-------------|-------|------------|-----------------|
| | | NAUTILUS'S REIMBURSEMENT COUNTERCLAIMS[10] | | |
| 199. | Wolfe & Wyman Invoices | NAUTILUS  CC00001-00123 | | |
| 200. | Gordon Rees Invoices (time billed through July 2016) | NAUTILUS  CC00124-00148 | | |
| 201. | Gordon Rees – Invoices Billed Summary | NAUTILUS  CC00149-00150 | | |
| 202. | Wild, Carter & Tipton Invoices | NAUTILUS  CC00151-00234 | | |
| 203. | Hall Hieatt & Connely Invoices (redacted) | NAUTILUS  CC00235-00372 | | |
| 204. | Amy R. Lovegren-Tipton Invoices (redacted) | NAUTILUS  CC00373-00393 | | |
| 205. | Hemming Morse Invoices | NAUTILUS  CC00394-00412 | | |
| 206. | JAMS Invoice | NAUTILUS  CC00413 | | |
| 207. | Dowling Aaron Invoices | NAUTILUS  CC00414 | | |
| 208. | Nautilus Check Log, Claim No. 10067276, Access Medical/Robert Wood (redacted) | NAUTILUS_CC00415-00423 | | |
| 209. | Order Granting Motion for Reimbursement (ECF No. 206), *Nautilus Ins. Co. v. Access Medical, LLC, et al.*, Case No. 2:15-cv-00321-JAD-BNW | NAUTILUS  CC00424-00427 | | |
| 210. | Judgment in a Civil Case (ECF No. 207), *Nautilus Ins. Co. v. Access Medical, LLC, et al.*, Case No. 2:15-cv-00321-JAD-BNW | NAUTILUS  CC00428 | | |
| 211. | Transcript of Deposition of Benjamin R. Falloon | NAUTILUS  CC00429-00461 | | |

---

[10] Nautilus reserves the right to supplement this exhibit list as additional documentation related to the defense costs Nautilus paid are located and produced.

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| | in capacity as FRCP 30(b)(6) representative for Nautilus (Vol. I) dated July 13, 2022, *Nautilus Ins. Co. v. Access Medical, LLC, et al.*, Case No. 2:15-cv-00321-JAD-BNW and any exhibits | | | |
| 212. | Copies of checks | NAUTILUS_CC00462-00497 | | |
| 213. | Claim Notes re defense counsel transfer | NAUTILUS CC00499-00500 | | |
| 214. | Gordon Rees Invoices (August 2016 – July 2017) | NAUTILUS CC00501-00651 | | |
| 215. | Email from Kellie Barwick (Nautilus) re Wolfe & Wyman – Inactive Effective Immediately, dated 3/18/2016 (redacted) | NAUTILUS CC00652-00653 | | |
| 216. | Nautilus Check Log, Claim No. 10073577., Flournoy Management, LLC | NAUTILUS CC00654-00660 | | |
| 217. | LA Best Color Imaging Invoices (Claim 10067276) | NAUTILUS CC00661-00664 | | |
| 218. | Aptus Court Reporting Invoice (Claim 10067276) | NAUTILUS_CC00665 | | |
| 219. | Sean D Early MD Invoice (Claim 10067276) | NAUTILUS CC00666 | | |
| 220. | IFY Travel and Tours Inc Invoice (Claim 10067276) | NAUTILUS CC00667 | | |
| 221. | Hemming Morse Invoices – set 2 | NAUTILUS CC00668-00674 | | |
| 222. | Barkley Court Reporters Invoices (Claim 10073577) | NAUTILUS CC00675-00678 | | |
| 223. | Law Office of Amy Lovegren-Tipton Invoices – set 2 (redacted) | NAUTILUS CC00679-00712 | | |

| EXHIBIT | DESCRIPTION | BATES | OBJECTIONS | PARTY OBJECTING |
|---|---|---|---|---|
| 224. | Hall Hieatt & Connely Invoices – set 2 (redacted) | NAULITUS CC0071 3-00800 | | |
| 225. | Wood and Randall Invoices (Claim 10067276) | NAUTILUS CC0080 1-00802 | | |
| 226. | Barkley Court Reporters Invoices (Claim 10067276) | NAUTILUS CC0080 3-00809 | | |

(a) <u>Electronic Evidence:</u> At this time, the parties do not intend to present electronic evidence for purposes of jury deliberations.

(b) <u>Depositions:</u>

(1) *Plaintiff Will Offer The Following Depositions:*

a. See depositions identified as exhibits, above.

(2) *Defendant Will Offer The Following Depositions:*

a. Deposition Transcript of Robert "Sonny" Wood, II, taken December 23, 2020

b. Deposition Transcript of Stephen L. Strzelec, taken October 4, 2021

c. **Deposition Transcript of Benjamin R. Falloon in capacity as FRCP 30(b)(6) representative for Nautilus (Vol. I) dated July 13, 2022,** *Nautilus Ins. Co. v. Access Medical, LLC, et al.*, **Case No. 2:15-cv-00321-JAD-BNW**

(c) <u>Objections To Depositions:</u>

(1) *Defendant Objects To Plaintiffs' Depositions As Follows:*

a. Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE

(2) *Plaintiffs Objects To Defendant's Depositions As Follows:*

a. Relevance; foundation; impermissible hearsay; overbroad; as well as any other reason set forth within the FRE

VII. <u>**WITNESSES**</u>

The following witnesses may be called by the parties at trial, although the parties reserve the right to object to the calling of any of the below witnesses, reserve the right to call additional witnesses as necessary and reserve the right object to the addition of any witness:

1. Robert "Sonny" Wood, II

c/o The Schnitzer law Firm
9205 West Russell Road, Suite 240
Las Vegas, NV 89148
(702) 960-4050

Mr. Wood is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the First Amended Complaint.

Mr. Woods is expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues which include, but are not limited to the purchase of the commercial general liability policy at issue and the Insureds' tender of defense to Nautilus as it relates to the Cross-Complaint Theodore Switzer filed against the Insureds on or around June of 2013. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

2.  Linda Wendell Hsu, Esq.
    **c/o Armstrong Teasdale LLP**
    **7160 Rafael Rivera Way, Suite 320**
    **Las Vegas, NV 89113**
    **(702) 678-5070**

Ms. Hsu is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the First Amended Complaint.

Ms. Hsu is expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues which include, but are not limited to the Insureds' tender of defense to Nautilus as it relates to the Cross-Complaint Theodore Switzer filed against the Insureds on or around June of 2013 (hereinafter the "*Switzer* Action") and the investigation and claim handling that Nautilus undertook that relates to the Insureds' claim. Ms. Hsu should have knowledge of Nautilus's decision to withdraw the Insureds' defense in the *Switzer* Action on the eve of trial although representing otherwise. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Cross-claims for reimbursement.**

3.  Theodore Switzer
    c/o Gregory L. Altounian, Esq.
    295 Cromwell Ave., #104

Fresno CA 93711
(559) 435-6200

Mr. Switzer is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the First Amended Complaint.

Mr. Switzer is expected to testify regarding his knowledge of the facts and circumstances surrounding the Insureds' Second Amended Complaint, including his allegations against the Insureds in the *Switzer* Action.

    4.    Michael "James" Carrigan, Esq.
             c/o Gregory L. Altounian, Esq.
             295 Cromwell Ave., #104
             Fresno CA 93711
             (559) 435-6200

Mr. Carrigan is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the First Amended Complaint.

Mr. Carrigan is expected to testify regarding his knowledge of the facts and circumstances surrounding the Insureds' Second Amended Complaint, including his client's allegations against the Insureds in the *Switzer* Action.

    5.    Dixie Switzer
             c/o Gregory L. Altounian, Esq.
             295 Cromwell Ave., #104
             Fresno CA 93711
             (559) 435-6200

Ms. Switzer is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the First Amended Complaint.

Ms. Switzer is expected to testify regarding her knowledge of the facts and circumstances surrounding the Insureds' Second Amended Complaint, including Mr. Switzer's allegations against the Insureds in the *Switzer* Action.

    6.    Jacqueline Weide
             c/o The Schnitzer Law Firm
             9205 W. Russell Road, Suite 240
             Las Vegas, NV 89148
             (702) 960-4050

Ms. Weide is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the First Amended Complaint.

Ms. Weide is expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues which include, but are not limited to the Insureds' tender of defense to Nautilus as it relates to the Cross-Complaint Theodore Switzer filed against the Insureds on or around June of 2013 and the e-mail that was at issue in the action from which Nautilus sought declaratory relief from the Insureds.

7.    Deborah Fanning, RN
      Santa Barbara Cottage Hospital
      400 W. Pueblo St.
      Santa Barbara, CA 93105
      (805) 569-7482

Ms. Fanning is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the First Amended Complaint.

Ms. Fanning is expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, including the e-mail that was at issue in the action from which Nautilus sought declaratory relief from the Insureds.

8.    PMK at Nautilus Ins. Co.
      **c/o Armstrong Teasdale LLP**
      **7160 Rafael Rivera Way, Suite 320**
      **Las Vegas, NV 89113**
      **(702) 678-5070**

This PMK is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint.

This person is expected to testify regarding his or her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

9.    Richard Conrad

Mr. Conrad is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      10.    Susan Drebltko
               **c/o Armstrong Teasdale LLP**
               **7160 Rafael Rivera Way, Suite 320**
               **Las Vegas, NV 89113**
               **(702) 678-5070**

Ms. Drebltko is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      11.    Chuck Scheiner

Mr. Scheiner is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      12.    Kellie Barwick

Ms. Barwick is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      13.    John Briggs
                **c/o Armstrong Teasdale LLP**
                **7160 Rafael Rivera Way, Suite 320**
                **Las Vegas, NV 89113**
                **(702) 678-5070**

Mr. Briggs is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Cross-claims for reimbursement.**

      14.    Tom Kuzma
                **c/o Armstrong Teasdale LLP**
                **7160 Rafael Rivera Way, Suite 320**
                **Las Vegas, NV 89113**
                **(702) 678-5070**

Mr. Kuzma is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for**

reimbursement.

15.   Brenda Phillips
**14311 W Pinnacle Vista Road**
**Surprise, AZ 85387**
**623-682-3289**

Ms. Phillips is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

16.   Dan Curran

Mr. Curran is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

17.   Kim Levensky
**c/o Armstrong Teasdale LLP**
**7160 Rafael Rivera Way, Suite 320**
**Las Vegas, NV 89113**
**(702) 678-5070**

Ms. Levensky is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to her knowledge of the facts and**

**circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

 18. Weiss B. Hamid
   c/o Buchalter
   1000 Wilshire Blvd., Suite 1500
   Los Angeles, CA 90017-1730
   (213) 891-0700

Mr. Hamid is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. In addition, Mr. Hamid is expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle any claims against the Insureds in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

 19. Calvin E. Davis, Esq.
   c/o Gordon Rees Scully Mansukhani, LLP
   1111 Broadway, Suite 1700
   Oakland, CA 94607
   T: (510) 463-8600

Mr. Davis is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. In addition, Mr. Davis is expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

 20. Eleanor M. Welke
   c/o Lozano Smith

515 S. Figueroa St., Suite 750
Los Angeles, CA 90071
T: (213) 929-1066

Ms. Welke is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. Ms. Welke is also expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

21.    Allison Andrews
c/o Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607
T: (510) 463-8600

Ms. Andrews is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. Ms. Andrews is also expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

22.    David L. Jones
c/o Gordon Rees Scully Mansukhani, LLP
1111 Broadway, Suite 1700
Oakland, CA 94607
T: (510) 463-8600

Mr. Jones is expected to testify regarding his knowledge of the facts and circumstances

surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action.  Mr. Jones is also expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action.  **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

23.     Candace S. Nam, Esq.
        c/o Gordon Rees Scully Mansukhani, LLP
        1111 Broadway, Suite 1700
        Oakland, CA 94607
        T: (510) 463-8600

Ms. Nam is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action.  Ms. Nam is also expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action.  **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

24.     John W. Phillips, Esq.
        c/o Wild, Carter & Tipton, P.C.
        246 West Shaw Ave.
        Fresno, CA 93704
        T: (559) 224-2131

Mr. Phillips is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action.  Mr. Phillips is also expected to testify in regards to any information related to the

defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action.  **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      25.    Thomas A. Markeson, Esq.
              c/o Wild, Carter & Tipton, P.C.
              246 West Shaw Ave.
              Fresno, CA 93704
              T: (559) 224-2131

Mr. Markeson is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action.  Mr. Markeson is also expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action.  **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      26.    David A. Yengoyan, Esq.
              c/o Wild, Carter & Tipton, P.C.
              246 West Shaw Ave.
              Fresno, CA 93704
              T: (559) 224-2131

Mr. Yengoyan is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action.  Mr. Yengoyan is also expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action.  **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's**

**Crossclaims for reimbursement.**

27.     Ruth Newton
        c/o Wild, Carter & Tipton, P.C.
        246 West Shaw Ave.
        Fresno, CA 93704
        T: (559) 224-2131

Ms. Newton is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. Ms. Newton is also expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

28.     Susan Thompson
        Hemming Morse, LLP
        101 Montgomery St.
        Suite 1400
        San Francisco, CA 94104
        T (415) 836-4000
        F (415) 777-2062

Ms. Thompson is expected to testify regarding her knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. Ms. Thompson is also expected to testify in regards to any information related to the defense of the Insureds in the *Switzer* Action and any attempts that were taken to settle the claims against the Insureds in the *Switzer* Action. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

29.     Kenneth D. Richard

Mr. Richard is expected to testify regarding his knowledge of the facts and circumstances surrounding the allegations contained in the Second Amended Complaint, and any other relevant issues, including but not limited to Nautilus's investigation and handling of the Insureds' claim, including the Insureds' tenders of defense, to Nautilus as it relates to the Cross-Complaint in the *Switzer* Action. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

    30.    Jordan P. Schnitzer, Esq.
            c/o The Schnitzer Law Firm
            9205 W. Russell Road, Suite 240
            Las Vegas, NV 89148
            (702) 960-4050

Mr. Schnitzer, Esq is expected to testify as fact witness regarding Nautilus Insurance Company's conduct during the time period at issue in this litigation. **This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

    31.    L. Renee Green, Esq.
            c/o Kravitz, Schnitzer & Johnson, Chtd.
            8985 S. Eastern Ave., Ste. 200
            Las Vegas, NV 89123
            (702) 362-6666

Ms. Green, Esq is expected to testify as fact witness regarding Nautilus Insurance Company's conduct during the time period at issue in this litigation. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

    32.    Jennifer N. Wahlgren, Esq.
            **c/o Armstrong Teasdale LLP**
            **7160 Rafael Rivera Way, Suite 320**
            **Las Vegas, NV 89113**
            **(702) 678-5070**

Ms. Wahlgren, Esq. is expected to testify as fact witness regarding Nautilus Insurance Company's conduct during the time period at issue in this litigation. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations**

contained to Nautilus's Crossclaims for reimbursement.

      33.    James Harper, Esq.
               c/o Harper Selim
               1707 Village Center Circle Suite 140
               Las Vegas, NV 89134
               (702) 948-9240

Mr. Harper, Esq is expected to testify as fact witness regarding Nautilus Insurance Company's conduct during the time period at issue in this litigation. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      34.    Joel Lasky
               **c/o Armstrong Teasdale LLP**
               **7160 Rafael Rivera Way, Suite 320**
               **Las Vegas, NV 89113**
               **(702) 678-5070**

Mr. Lasky is expected to testify as an employee of Nautilus Insurance he has knowledge about the allegations in the complaint and the defenses of defendant. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      35.    **Nautilus Insurance Company**
               **c/o Armstrong Teasdale LLP**
               **7160 Rafael Rivera Way, Suite 320**
               **Las Vegas, NV 89113**
               **(702) 678-5070**

The representative for Nautilus Insurance Company is expected to testify about the allegations in the complaint and the defenses of defendant. **This witness is also expected to testify as to knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

      36.    Michael Kilgis

Mr. Kilgis is expected to testify as an employee of Nautilus Insurance he has knowledge about the allegations in the complaint and the defenses of defendant. **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

37.    Ben Falloon

Mr. Falloon is expected to testify as an employee of Nautilus Insurance he has knowledge about the allegations in the complaint and the defenses of defendant.  **This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

36.    Stephen L. Strzelec, CPCU, CLU

Strzelec Consulting Services
20719 NE 8th Street
Sammamish, WA 98074
(206) 427-4322

Stephen L. Strzelec, CPCU, CLU, is Plaintiffs retained expert and will provide expert opinions and testimony as to his opinion and comparison to the industry standard of care regarding claims handling, good faith and fair dealing and all insurer duties, specifically, that Defendant fell below the standard of care.

37.    David B. Ezra, Esq.
Berger Kahn
1 Spectrum Pointe Dr., Suite 340
Lake Forest, CA 92630
(949) 614-0100

 Mr. Erza is Defendant's retained expert and will provide expert opinions and testimony as to his opinion and comparison to the industry standard of care regarding claims handling, good faith and fair dealing and all insurer duties, specifically, that Defendant met and exceeded the standard of care.

**38.    Eric T. Lamhofer, Esq**
**c/o Wolfe & Wyman LLP**
**2212 Dupont Drive**
**Irvine, CA  92612**
**(949) 475-9200**

**Mr. Lamhofer is expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.**

**39.    Jay A. Hieatt, Esq**
**c/o Hall Hiett Connely & Bowen LLP**
**444 Higuera Street, Third Floor**

**San Luis Obispo, CA 93401**
**(805) 544-3830**

Mr. Hieatt is expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.

      40.    **Amy R. Lovegren-Tipton, Esq**
                  **c/o Law Office of Amy R. Lovegren-Tipton**
                  **225 W. Shaw Avenue, Suite 105**
                  **Fresno, CA 92612**
                  **(559) 421-9073**

Ms. Lovegren-Tipton expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.

      41.    **Robert Fisher**
                  **c/o Armstrong Teasdale LLP**
                  **7160 Rafael Rivera Way, Suite 320**
                  **Las Vegas, Nevada 89113**
                  **(702) 678-5070**

Mr. Fisher is an employee of Nautilus Insurance and is expected to testify as to his knowledge about the allegations in the complaint and the defenses of defendant.  This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.

      42.    **John W. Phillips, Esq.**
                  **Fennemore Dowling Aaron**
                  **8080 Palm Avenue, Third Floor**
                  **Fresno, CA 93711**
                  **(559) 432-4500**

Mr. Phillips is expected to testify as to his knowledge about the allegations in the complaint and the defenses of defendant.  This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.

      43.    **David L. Jones, Esq.**
                  **Gordon Rees Scully Mansukhani, LLP**
                  **1111 Broadway, Suite 1700**
                  **Oakland, CA 94607**
                  **(510) 463-8600**

Mr. Jones is expected to testify as to his knowledge about the allegations in the complaint

and the defenses of defendant.  This witness is also expected to testify as to his knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.

44.     **Linda Wendell Hsu, Esq.**
**c/o Armstrong Teasdale LLP**
**7160 Rafael Rivera Way, Suite 320**
**Las Vegas, Nevada 89113**
**(702) 678-5070**

Ms. Hsu is expected to testify as to her knowledge about the allegations in the complaint and the defenses of defendant.  This witness is also expected to testify as to her knowledge of the facts and circumstances surrounding the allegations contained to Nautilus's Crossclaims for reimbursement.

## VIII.   MOTIONS IN LIMINE

At this time, the parties have not filed any Motions in Limine.  The parties reserve the right to file Motions in Limine as permitted under the Federal Rules of Civil Procedure and Local Rules of this Court.

## IX.   TRIAL DATE

A bench trial for this matter is presently scheduled for Monday, May 15, 2023, at 9:00 AM.  (ECF No. 362.)

## X.   TRIAL ESTIMATE

Pursuant to the Joint Status Report Regarding Trial Presentations (ECF No. 369), the parties believe that they will be able to complete the presentation of evidence within ten (10) business days.  At the April 4, 2023, Pretrial Conference, this Court permitted Plaintiffs and Defendants 20 hours each for presentation of their cases-in-chief, defenses, and rebuttals.  ECF No. 371. The Court will consider allowing additional time if the parties are presenting their cases in an efficient manner.  Id.  Evidentiary arguments will not be counted against either party. Id.  There will be no closing or opening statements.  Id. Depositions will not be read into the record, but the deposition designations will be submitted for the Court's review post-trial in conjunction with the parties Proposed Findings of Fact and Conclusions of Law.  Id.

## XI.   SCHEDULING

Judge Miranda M. Du's Order Regarding Bench Trial In Civil Cases dated March 13, 2023 (ECF No. 362), and Minutes of Proceeding for Pretrial Conference held on April 4, 2023, (ECF No. 371) set the following dates:

1) The case is set for a bench trial on Monday, May 15, 2023, at 9:00 AM.  This is a firm trial date.

2) The Calendar call scheduled for Monday, April 24, 2023 at 1:00 PM is VACATED

3) Each party's trial brief shall be submitted by no later than one week before trial.

4) Proposed findings of fact and conclusions of law shall be filed no later than one week before trial.

The foregoing is approved by the parties to the action as signed by their counsel of record, below.

ARMSTRONG TEASDALE LLP

By:___/s/ Tracy A. DiFillippo_____
   TRACY A. DIFILLIPPO, ESQ.
   Nevada Bar No. 7676
   MICHELLE D. ALARIE, ESQ.
   Nevada Bar No. 11894
   7160 Rafael Rivera Way, Suite 320
   Las Vegas, Nevada 89113

   WILLIAM S. KRONENBERG, ESQ.
   (LR IA 11-2 admitted)
   California Bar No. 133730
   KRONENBERG LAW PC
   1 Kaiser Plaza, Suite 1675
   Oakland, California 94612

*Attorneys for Defendant/Counter-claimant*
*Nautilus Insurance Company*

THE SCHNITZER LAW FIRM

By:___Jordan P. Schnitzer_____
   JORDAN P. SCHNITZER, NV Bar #10744
   9205 W. Russell Road, Suite 240
   Las Vegas, NV  89148

*Attorneys for Defendants Access Medical LLC*
*& Robert "Sonny" Wood, II*

IT IS SO ORDERD.

_____
HON. MIRANDA M. DU
United States District Court Judge
DATED:  April 17, 2023

## **CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of ARMSTRONG TEASDALE LLP, and that the foregoing document was served through the CM/ECF to all parties on the service list.

Date: April 14, 2023                  */s/ Christie Rehfeld*

                       An employee of Armstrong Teasdale LLP