TRACY A. DIFILLIPPO, ESQ.
Nevada Bar No. 7676
MICHELLE D. ALARIE, ESQ.
Nevada Bar No. 11894
ARMSTRONG TEASDALE LLP
7160 Rafael Rivera Way, Suite 320
Las Vegas, Nevada 89113
Telephone:  702.678.5070
Facsimile:  702.878.9995
tdifillippo@atllp.com
malarie@atllp.com

WILLIAM S. KRONENBERG, ESQ. (LR IA 11-2 admitted)
California Bar No. 133730
KRONENBERG LAW PC
1 Kaiser Plaza, Suite 1675
Oakland, California 94612
Telephone:  510.254.6761
wkronenberg@krolaw.com

*Attorneys for Defendant/Counter-claimant Nautilus Insurance Company*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT "SONNY" WOOD, an individual; ACCESS MEDICAL, LLC, a Delaware limited liability company, | Case No.:  2:17-cv-02393-MMD-VCF |
| Plaintiffs, | **DEFENDANT/COUNTER-CLAIMANT NAUTILUS INSURANCE COMPANY'S TRIAL BRIEF** |
| vs. | |
| NAUTILUS INSURANCE GROUP, a Delaware limited liability company, et al., | |
| Defendant. | |
| NAUTILUS INSURANCE COMPANY, | |
| Counter-claimant, | |
| vs. | |
| ROBERT "SONNY" WOOD; ACCESS MEDICAL, LLC; FLOURNOY MANAGEMENT, LLC AND ROES 1-10, inclusive, | |
| Counter-defendants. | |

Pursuant to Judge Miranda M. Du's Order Regarding Bench Trial in Civil Cases dated March 13, 2023 (ECF No. 362), Defendant/Counter-claimant Nautilus Insurance Company ("Nautilus") submits its Trial Brief in the above-referenced action.

This action arises out of the Plaintiffs' request for defense and indemnity under an insurance policy issued by Nautilus for a cross-complaint filed by Ted Switzer ("Switzer Action").  In a prior action between the parties, affirmed by the Ninth Circuit, it was judicially determined that there was no coverage for Plaintiffs for the Switzer Action.  The Nevada Supreme Court also ruled that Nautilus can obtain reimbursement from Plaintiffs for defense costs Nautilus expended defending them in the Switzer Action.  "The limited focus of this litigation is whether the newly discovered evidence which came to light after the district court granted summary judgment in the Coverage Action would have triggered a duty to defend and, if so, whether Defendant acted in bad faith by denying the re-tenders." ECF No. 315 at 12:4-8.

On Plaintiffs' breach of contract claim, this Court determined that Nautilus's duty to defend was triggered on July 28, 2017, when Plaintiffs' retendered defense based on new evidence presented in the Switzer Action.  The issues remaining for trial include whether Plaintiffs suffered any damages when Nautilus withdrew defense in the Switzer Action, whether Nautilus acted in bad faith or violated any provisions of NRS 686A.310, and whether Nautilus is entitled to reimbursement.

First, Nautilus is not liable for the judgment levied against Plaintiffs because there is no showing that the breach caused the excess judgment.    In fact, Plaintiffs had the same defense throughout trial that they would have had had Nautilus continued to defend, namely Gordon Rees and Wild, Carter & Tipton.  Moreover, the entirety of the judgment is attributable to Plaintiffs' grossly fraudulent conduct.

Second, Nautilus did not commit bad faith because its coverage denials, although in error,  were not knowingly or recklessly "unreasonable."   This Court already said, "[t]he Court agrees with [Nautilus] it is arguably reasonable that [Nautilus] relied upon the district court's summary judgment order to withdraw their defense after receiving the First Re-Tender." (ECF No. 315 at 32:8-10.)  This Court also recognized that Nautilus's "subjective understanding of the Policy's coverage matters for bad faith, and here a jury could find that Defendant's interpretation of the Policy . . . was a reasonable error." (*Id*. at 33:11-13.)

Last, Nautilus is entitled to judgment against Plaintiffs for $876,744.95 on its counterclaim for unjust enrichment, which represents the defense costs Nautilus paid from February 25, 2015, to July 27, 2017, on behalf of Plaintiffs in the Switzer Action when Nautilus had no duty to defend.

I.     **PLAINTIFFS' ARE NOT ENTITLED TO ANYBREACH OF CONTRACT DAMAGES.**

    A.     **The Judgment in the Switzer Action is Not a Consequence of Nautilus's Failure to Defend Plaintiffs After the First Re-Tender.**

Although this Court determined that Nautilus breached the contractual duty to defend, Nautilus is not liable for the judgment in the Switzer Action because the breach of contract did not cause the judgment. Rather, the judgment ordered in the Switzer Action is directly attributable to Plaintiffs' own fraudulent conduct.

"[A]n insurer's liability where it breaches its contractual duty to defend is not capped at the policy limits plus the insured's defense costs, and instead, an insurer may be liable for any consequential damages caused by its breach." *Century Surety Co. v. Andrew*, 134 Nev. 819, 820, 432 P.3d 180, 182 (2018). "The determination of the insurer's liability depends on the unique facts of each case and is one that is left to the jury's determination." *Id.* at 825, 432 P.3d at 186; *see also Khan v. Landmark Am. Ins. Co.*, 326 Ga.App. 539, 757 S.E.2d 151, 155 (2014) ("[W]hether the full amount of the judgment was recoverable was a jury question that depended upon what damages were found to flow from the breach of the contractual duty to defend.")The Nevada Supreme Court made it clear however "that an entire judgment is [not] automatically a consequence of an insurer's breach of its duty to defend; rather, *the insured is tasked with showing that the breach caused the excess judgment* and is obligated to take all reasonable means to protect himself and mitigate his damages." *Id.* (*emphasis added*) (internal quotations omitted).

Here, even after Nautilus withdrew defense on August 1, 2017, and stopped paying defense counsel's and independent counsel's fees, Plaintiffs' defense counsel, Gordon Rees, continued on as defense counsel throughout the trial. Even more, Wild, Carter & Tipton also continued on as Plaintiffs' counsel throughout the trial. This is clearly not like the situation in *Andrew* where a default judgment was taken against the insured as a result of the insurer not providing the insured a defense. Instead, this case is similar to *Hamlin Inc. v. Hartford Accident and Indemnity Company*, 86 F.3d 93 (7th Cir.

1996), which was analyzed in *Andrew*.   In *Hamlin*, "the court considered whether the insured has as good of a defense as it would have had had the insurer provided counsel."  *Andrew*, 134 Nev. at 825, 432 P.3d at 185.   There, the insured was seeking to have its insurance company pay the $2.6 million settlement.  *Hamlin,* 86 F.3d at 94.   The *Hamlin* court noted:

> This insurer did not pay the entire bill for Hamlin's defense.  But neither is Hamlin some hapless individual who could not afford a good defense unless his insurer or insurers picked up the full tab. . . .  Had the insurance companies that are the present defendant helped pay [the law firm's bills] Hamlin would have benefited to the extent that the insurer which did accept the tender of defense did not cover those bills in their entirety.  But it would not have been better off to the tune of 2.6 million.  That would imply that if only the defendants has contributed to the cost of defense DICKEY-john would have been sent packing without a cent, though as far as we can tell its claims against Hamlin were entirely valid.

*Id.* at 95.  That court correctly determined that "[t]o award Hamlin $2.6 million would thus be to give it a windfall, and windfall damages are punitive in nature." *Id*.

Like *Hamlin*, Plaintiffs retained the same defense counsel for trial that Nautilus was paying before it withdrew defense, namely Gordon Rees.  Plaintiffs therefore received as good of a defense as they would have had had Nautilus continued to defend through trial, namely representation by Gordon Rees.  If Nautilus had continued paying the defense, Plaintiffs would have benefited only by Nautilus paying for Gordon Rees, but nothing more.  Indeed, like *Hamlin*, the trial outcome would have been the same because Switzer's crossclaims against Plaintiffs were, as the jury found, "entirely valid."  Requiring Nautilus to pay the entire judgment in the Switzer Action is a windfall for Plaintiffs, and punitive against Nautilus.[1]

### B.    Nautilus is not Liable for the Treble Damages Portion of the Judgment in the Switzer Action.

Nautilus is not liable for penalty damages awarded against Plaintiffs in the Switzer Action.  After appeal, the trial court's judgment was modified to provide for penalty damages pursuant to California Penal Code section 496(c), which provides that where defendant has committed the offense

---

[1] And in fact, the Weide Email, which is the false statement triggering the defense obligation, does not appear to be what led to the jury awarding damages, but Plaintiffs' false representations made *to Switzer* and theft of Switzer's property.

of knowingly receiving stolen property, plaintiff can recover "three times the amount of actual damages." "Treble damages are punitive in nature[.]" *Imperial Merch. Servs., Inc. v. Hunt*, 47 Cal.4th 381, 394 (2009).

The Nevada Supreme Court has held that indemnification of punitive damages is against public policy.  In *Siggelkow v. Phoenix Insurance Company*, 109 Nev. 42, 846 P.2d 303 (1993), the Court started from the proposition that punitive damages are "to punish and deter oppressive, fraudulent or malicious conduct."  *Id.* at 44, 846 P.2d at 304.  Thus, in order to effect these purposes, it is the wrongdoer – not the insurer – who must pay for such damages: "[I]t is incumbent upon the party whose conduct was so outrageous as to merit punishment by means of punitive damages to bear the burden of paying the award.  Only then will the goal of punishment and deterrence be effectuated."  *Id.* at 45, 846 P.2d at 304 (quoting *New Hampshire Ins. Co. v. Gruhn*, 99 Nev. 771, 773-74 (1983)).

Although *Siggelkow* was in the context of an uninsured motorist claim , the general reasoning and proposition of *Siggelkow* has broader application.  For example, *Gruhn*– on which *Siggelkow* relies – was in the context of a surety bond.  The Court held that punitive damages were not covered, finding that the goal of punishment and deterrence "would be thwarted if the tortfeasor is able to skirt the award by passing the liability on to a surety."  *Id.* at 773-74.

In addition, *Lombardi v. Maryland Casualty Company*, 894 F.Supp. 369, 372 (D. Nev. 1995) involved coverage under a commercial general liability policy. The court relied on both *Siggelkow* and *Gruhn*, stating: "These cases stand for the proposition that the wrongdoer must pay a punitive damage award, *not the insurer*.  The Nevada Supreme Court clearly prohibits, on grounds of public policy, indemnification for punitive damages."  *Id.* at 372 (*emphasis added*).  The court held that  the insurer had no duty to indemnify the insured for any punitive damages awarded against the insured.  *Id.*

The Nevada Legislature later created limited exception to this general Nevada public policy is not relevant here.  That statute provides:  "An insurer may insure against legal liability for exemplary or punitive damages that do not arise from a wrongful act of the insured committed with the intent to cause injury to another."  NRS § 681A.095.  Here, the jury found that Plaintiffs' actions were committed with the intent to cause injury to Switzer and Flournoy, answering "Yes" to the following questions on the verdict form related to California Penal Code § 496 : "Did Mr. Wood know the

4

property was obtained by theft at the time he received, withheld, concealed, aided in concealing or withholding the property from Mr. Switzer [and Flournoy]?" and "Did Access Medical know the property was obtained by theft at the time it received, withheld, concealed, aided in concealing or withholding the property from Mr. Switzer [and Flournoy]?"  The general public policy rule articulated by the Nevada Supreme Court applies here, and Nautilus cannot be held liable for the punitive damages awarded against Plaintiffs.

In jurisdictions where indemnification for punitive damages is prohibited by public policy, punitive damages also are not recoverable as an item of damage against an insurer for any breach of the insurer's duties under the policy.  For example, in *PPG Industries, Inc. v. Transamerica Insurance Company*, 20 Cal.4th 310 (1999), the California Supreme Court[2] considered this issue in the context of the insurer's bad faith failure to settle a case which resulted in "a judgment against the insured that included an award of punitive damages based on the insured's egregious misconduct."  *Id.* at 313.  In *PPG*, the insured sued the insurer to recover the punitive damages that had been awarded against the insured.  *Id.*    The California Supreme Court held: "Although the insurance company's alleged negligent failure to settle the third-party lawsuit was a cause in fact of the punitive damages awarded against the insured, it was not a proximate cause of those damages. We therefore conclude that the insured in this case cannot shift to the insurance company its responsibility for the punitive damages." *Id.*  That court found that there were "at least three policy considerations" militating against allowing the insured to shift its punitive damages to the insurer: (1) the policy against allowing liability for intentional wrongdoing to be reduced by the negligence of another; (2) the concept that punitive damages are to punish the defendant and deter future misconduct by making an example of the defendant, and allowing punitive damages to be shifted to the insurer would defeat these purposes; and (3) the fact that public policy prohibits indemnification for punitive damages.  *Id.* at 316-318.  The court concluded: "Here, the punitive damages in the third party lawsuit were awarded not against the insurance company of its unreasonable failure to settle that lawsuit, but against the insured for the insured's own morally reprehensible behavior . . . ."  *Id.* at 318-319.

---

2 When there is no Nevada law, Nevada courts will often look to California for guidance .  *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Hansen*, 131 Nev. 743, 750, 357 P.3d 338, 342 (2015).

Other courts that have considered the issue have likewise held that punitive damages are not recoverable against the insurer in similar circumstances. *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 516 (Colo. 1996) ("We hold that in an action by an insured against his insurer for bad faith failure to settle, the insured may not collect as compensatory damages the punitive damages awarded against him in the underlying lawsuit."); *Soto v. State Farm Ins. Co.*, 83 N.Y.2d 718, 725 (1994) ("[W]e hold that the punitive damages awarded against an insured in a civil suit are not a proper element of the compensatory damages recoverable in a suit against an insurer for a bad-faith refusal to settle."); *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 492 (3d Cir. 2015) ("We predict that the Pennsylvania Supreme Court would conclude that, in an action by an insured against his insurer for bad faith, the insured may not collect as compensatory damages the punitive damages awarded against it in the underlying lawsuit."); *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1506 (10th Cir. 1994) (applying Oklahoma law, court held that the jury could not consider the insured's punitive damage in considering any award against the insurer on the bad faith claim, as "Oklahoma law prohibits shifting such a punitive liability to an insurance company.").[3]

Plaintiffs cannot foist their liability for penalty damages under the California Penal Code section 496(c) on Nautilus because it is contrary to Nevada public policy prohibiting an insurer's liability in such circumstances and contrary to the overwhelming body of law on the issue.

### C. Plaintiffs' Defense Fees and Independent Counsel Fees As Damages are Not Proper Evidence Because the Invoices Are Completely Redacted.

Plaintiffs produced completely redacted invoices as evidence of the defense counsel and independent counsel attorneys' fees  they incurred as damages, presumably on the basis of attorney-client privilege.  However, once Plaintiffs filed this lawsuit and sought those attorneys' fees as damages, Plaintiffs waived the attorney-client privilege and cannot now rely on redacted invoices to support their damages.

"'[T]he burden of providing that the attorney-client privilege applies rests . . .  with the party asserting it.'" *Dulcich, Inc. v. USI In. Services Nat'l., Inc*., Case No. 3:18-cv-01089-YY, 2019 WL 1500701, at *2 (D. Oregon Apr. 5, 2019) (quoting *Weil v. Inv. v. Indicators, Research & Mgmt., Inc.*,

647 F.2d 18, 25 (9th Cir. 1981)).  This privilege, however, is not absolute.  *Id*.  The Ninth Circuit set forth a three-pronged test to determine if the attorney-client privilege is waived.  *Id*.

> First, the court considers whether the party asserting the "privilege as the result of some affirmative act, such as filing suit." Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue."  Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense."

*Id*. (quoting *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).

In *Jaynes Corp. v. American Safety Indemnity Company*, Case No. 2:10-cv-00764- MMD, 2014 WL 1154180 at *5 (D. Nev. March 20, 2014), the court noted that completely redacting invoices makes it impossible for the "reader to determine the nature of the services rendered."  And even more, whether the invoices even relate to defense of the underlying action.  *Id*.

Here, Plaintiffs waived the attorney-client privilege with respect to the invoices for defense fees and independent counsel fees because they are seeking them as damages  By doing so, Plaintiffs put the privileged information at issue.  Allowing Plaintiffs to use these redacted invoices to support their damages prejudices Nautilus because neither Nautilus nor this Court can determine what work was done and whether it relates to the Switzer Action.

### D.   Plaintiffs' Claim for Attorneys' Fees and Costs Incurred in the Instant Action as Special Damages is Not Permissible Under Nevada Law.

Under *Pardee Homes of Nevada v. Wolfram*, 135 Nev. 173, 444 P.3d 423 (2019), the Nevada Supreme Court clarified the types of claims in which attorneys' fees as damages are permissible. Therein, the district court awarded attorneys' fees as special damages in a two-party breach-of-contract action based on *Sandy Valley Associates v. Sky Ranch Estates Owners Association*, 117 Nev. 948, 960, 35 P.3d 964, 971 (2001) and its progeny, which appeared to expand upon the three exceptions to the American Rule on attorneys' fees to permit attorneys' fees as special damages when the fees "are incurred as a 'natural and proximate consequence' of another party's wrongful conduct."  *Pardee*, 135 Nev. at 175, 444 P.3d at 425 (quoting *Sandy Valley*, 117 Nev. at 957, 35 P.3d at 969).  The Nevada Supreme Court soundly rejected this argument.  *Sandy Valley* "does not support an award of attorney fees as special damages where a plaintiff merely seeks to recover fees incurred for prosecuting a breach-

of-contract action against a breaching defendant." *Id*. at 177, 444 P.3d at 426.  The Nevada Supreme Court reiterated the only three exceptions in which attorneys' fees as special damages are permissible:

> First, cases when a plaintiff becomes involved in a third-party legal dispute as a result of a breach of contract or tortious conduct by the defendant.  Second, cases in which a party incurred the fees in recovering real or personal property acquired through the wrongful conduct of the defendant or in clarifying or removing a cloud upon the title to property.  Third, injunctive or declaratory relief actions compelled by the opposing party's bad faith conduct.  These narrow exceptions in which attorney fees as special damages may be warranted are well established in Nevada's jurisprudence.

*Id*. at 177 n. 3, 444 P.3d at 426 n.3 (internal quotations and citations omitted).

Here, Plaintiffs' two-party breach-of-contract-action does not meet any of the exceptions outlined in *Pardee*.  Similarly, Plaintiffs' bad faith claim is not one of the three exceptions in which attorneys' fees as special damages are permissible.  As such, the attorneys' fees that Plaintiffs incurred in the instant action are not special damages under Nevada law  and may not be awarded as damages in this action.

### E.   Plaintiffs Cannot Recover Defense Fees Unrelated to the Switzer Action.

Plaintiffs seek damages consisting of their attorneys' fees and costs incurred as a result of Nautilus's failure to defend Plaintiffs in the Switzer Action.  Plaintiffs, however, disclosed multiple invoices from their independent counsel, Wild, Carter & Tipton, which do not appear to relate to defense of the Switzer Action.  Although Plaintiffs unnecessarily redacted the entire billing narrative, which has foreclosed Nautilus's ability to determine whether they actually relate to the *Switzer* Action, the invoices do identify the *matter* to which they relate.  Most of the Wild, Carter, and Tipton invoices bear the title "Switzer v. Flournoy," and arguably related to the *Switzer* Action, but several invoices bear the title "Access Medical v. Alphatec Spine, Inc." and "General Business Matters."  On their face, these invoices appear unrelated to defense of Plaintiffs in the Switzer Action, and therefore, not recoverable.

### F.   Plaintiffs Cannot Recover Defense Fees Prior to July 28, 2017, Retender.

Plaintiffs seek damages consisting of their defense fees and costs incurred as a result of Nautilus's failure to defend Plaintiffs in the Switzer Action.  This Court ruled that Nautilus's duty to defend was triggered on July 28, 2017, when Plaintiffs submitted the first retender of the Switzer Action to Nautilus based on new information.  (ECF No. 315 at 23-24).  Plaintiffs however appear to

seek defense costs consisting of attorneys' fees and vendor costs incurred prior to July 28, 2017, which is before Nautilus had a duty to defend Plaintiffs. Accordingly, Plaintiffs may not recover as damages attorneys' fees and other defense costs they incurred prior to July 28, 2017.

### G.   Plaintiffs Cannot Recover Defense Fees Incurred Prior to Switzer's Cross-Complaint.

Plaintiffs seek damages consisting of their defense fees and costs incurred as a result of Nautilus's failure to defend Plaintiffs in the Switzer Action. On December 27, 2011, Ted Switzer filed a Complaint for Enforcement of Limited Liability Company Member Information and Inspection Rights against Flournoy Management, LLC and Robert Wood in California state court. (ECF No. 73, at ¶ 18). Therein, Switzer sought access to Flournoy's books and records through an accounting action. Switzer thereafter filed a Cross-Complaint against Plaintiffs on June 3, 2013, which is known as the Switzer Action. (Id. at ¶ 24). In the Cross-Complaint, Switzer asserted the tort titled "Interference with Prospective Economic Advantage" against Plaintiffs. (Id. at ¶ 25). Plaintiffs tendered the Switzer Action to Nautilus on November 14, 2013. (Id. at ¶ 36).

Plaintiffs' argue that once Plaintiffs tendered the defense to Nautilus, Nautilus had a duty to investigate whether Nautilus had a duty to defend. (Id. at ¶ 38). Because Plaintiffs framed the issue in the instant action as whether Nautilus properly handled the tender of defense and complied with its duty to defend in the Switzer Action, the only relevant damages are after Plaintiffs tendered the Switzer Action to Nautilus, which was on November 14, 2013.[4] Plaintiffs however disclosed invoices from Heming Morse LLC dated December 2012, January 2013, and February 2013. Plaintiffs also disclosed invoices from McCormick Barstow dated March 2013, April 2013, May 2013, and November 2013.[5] Because these defense fees and costs were incurred prior to the date of the initial tender, and some even

---

[4] Notably, Nautilus did in fact initially pay Plaintiffs' attorneys' fees and costs incurred after the tender of the defense but before Nautilus agreed to defend under a reservation of rights. Plaintiffs completely redacted the billing entries; therefore, Nautilus cannot evaluate whether any of these fees are included on these invoices. Ultimately however Judge Jennifer Dorsey ruled that Nautilus had no duty to defend Plaintiffs through February 24, 2015, and granted Nautilus's reimbursement request. Thus, any defense costs incurred by Plaintiffs for defense in the Switzer Action prior to February 24, 2015, are not recoverable as law of the case.

[5] The November 2013 invoice should be limited to the date of the tender, November 14, 2013.

prior to Ted Switzer filing the Cross-Complaint, Plaintiffs may not recover them as damages.  Further and notably, it has already been judicially determined that Nautilus had no duty to defend the insured prior to February 24, 2015.

### H.    Plaintiffs Cannot Recover Defense Fees That are Not Gordon Rees.

Plaintiffs are seeking as damages in the instant action defense fees for their independent counsel, Wild, Carter & Tipton, in the amount of amount of $151,909.51 (total billed to Plaintiffs including before Nautilus withdrew its defense).  The underlying cost documentation Plaintiffs produced includes invoices from Wild, Carter & Tipton for work completed December 2015, through November 2018.  Approximately $90,000 of the total billed to Plaintiffs appears to be for work completed before August 1, 2017, and represents the difference between the hourly rate Wild, Carter & Tipton charged Plaintiffs and the $170 per hour reasonable rate Nautilus already paid.  As discussed for fully below Nautilus paid a reasonable market rate for independent counsel and should not be required to pay anything more.  Further, because this Court found no duty to defend until July 28, 2017, Plaintiffs are not entitled to reimbursement; but rather, Nautilus is entitled to recover from Plaintiffs the sums it paid to Wild, Carter & Tipton before its duty to defend was triggered.

The remaining $59,198.69 billed by Wild, Carter & Tipton appears to be for work performed after August 1, 2017. These amounts should not be recoverable as damages.  Wild, Carter & Tipton's role in the Switzer Action was independent counsel for Plaintiffs.  The obligation to provide independent counsel derives from *State Farm Mutual Auto Insurance Company v. Hansen*, 357 P.3d 338 (2015).  The Nevada Supreme Court recognized that the insurer and the insured are dual clients of insurer-appointed counsel and where the clients' interests conflict, as they potentially did here due to Nautilus's reservation of rights, the rules of professional conduct prevent the same lawyer from representing both clients.  *Id.* at 341-42.  An insurer fulfills its duty to defend by allowing insureds to select their own counsel and paying the reasonable costs.  *Id.*

On July 6, 2017, prior to any re-tenders, Nautilus informed Plaintiffs that it would be withdrawing defense based on Judge Dorsey's ruling in the Coverage Action that Nautilus had no duty to defend, and her subsequent order re-affirming the no coverage decision.  On August 1, 2017, Nautilus withdrew defense.  At that time, Nautilus ceased paying defense costs for Gordon Rees (and

Wild, Carter & Tipton), and correspondingly, the tripartite relationship between Plaintiffs, Nautilus, and Gordon Rees ceased. Gordon Rees however continued on as defense counsel for Plaintiffs in the Switzer Action, but now, without any potential conflict of interest by serving two clients—Plaintiffs and Nautilus. The need for "independent counsel" vanished. Nevertheless, Plaintiffs continued to have both Gordon Rees and Wild Carter & Tipton at counsel table representing them after August 1, 2017, including attending trial. This was excessive, redundant, or otherwise unnecessary to provide a defense to Plaintiffs in the Switzer Action. *See Reflex Media, Inc. v. Richard Easton Limited*, Case No. 2:20-cv-00051-GMN-EJY, 2022 WL 3045188, *1-2 (D. Nev. Aug. 2, 2022) (the district court generally exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary); *Brunzell v. Golden Gate Nat. Bank*, 455 P.2d 31, 33 (Nev. 1969).

Plaintiffs also appear to request as damages, attorneys' fees and costs billed by The Schnitzer Law Firm in the amount of $26,915.00. The underlying cost documentation is invoices from The Schnitzer Law Firm for work completed July 9, 2017, through November 9, 2018, with the project designation "Nautilus." The billing narratives are entirely redacted so it is unknown what specific tasks The Schnitzer Law Firm performed during this timeframe. However, The Schnitzer Law Firm's invoices are not damages arising from Nautilus's withdrawal of defense for the very same reasons that the Wild, Carter & Tipton's attorneys' fees are not recoverable damages. These attorneys' fees should be separately disallowed because during the timeframe at issue, The Schnitzer Law Firm was Plaintiffs' coverage counsel, not defense counsel in the Switzer Action.

## II.   NAUTILUS IS NOT LIABLE ON PLAINTIFFS' OTHER CONTRACT CLAIMS

Plaintiffs' Second Amended Complaint identifies several bases for breach of the insurance contract: (1) breach of the duty to defend; (2) breach of the duty to properly defend Plaintiffs against Ted Switzer's cross-complaint in that California state court ("Switzer Action"); (3) breach of the duty to settle; (4) breach of the duty to pay independent counsel a reasonable rate; and (5) breach of the duty to properly investigate the claims in the Switzer Action. (ECF No. 73.) Only the fourth basis was identified by Plaintiffs in the Amended Joint Pretrial Order (ECF No. 388), thus Nautilus addresses this claim directly and the other "breaches" below as part of Plaintiffs' other claims.

**A.      Nautilus Paid Independent Counsel a Reasonable Rate.[6]**

Breach of contract requires that Plaintiffs establish a contract, Plaintiffs performance or excuse for nonperformance, Nautilus's breach, and resulting damages.  *Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 818 (9th Cir. 2014).  Both California and Nevada law acknowledges a tripartite relationship between the insured, the insurer, and appointed defense counsel.  *Hansen*, 131 Nev. 743, 747, 357 P.3d 338, 340-41 (2015) (citing *Nev. Yellow Cab Corp. v. Eighth Jud. Dist. Ct.*, 123 Nev. 44, 52, 152 P.3d 737, 742 (2007)); *see also  Unigard Ins. Group v. O'Flaherty & Belgum*, 38 Cal. App. 4th 1229, 1237, 45 Cal. Rptr. 2d 565 ( 1995).  "But when an insurer provides counsel to defend its insured, a conflict of interest may arise because the outcome of litigation may also decide the outcome of a coverage determination-a determination that may pit the insured's interest against the insurer's." *Hansen*, 131 Nev. at 747, 357 P.3d a 340.  "Where the clients' interest conflict, the rules of professional conduct prevent the same lawyer from representing both clients."  *Id*. at 747, 357 P.3d at 341.  In such a situation, "Nevada law requires the insurer to satisfy *its contractual duty to provide representation* by permitting the insured to select independent counsel and by paying the reasonable costs of such counsel."  *Id*. (emphasis added).

The Nevada Supreme Court effectively adopted the rule set forth in *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc*., 162 Cal.App.3d 358, 208 Cal.Rptr. 494 ( 1984) *superseded* by statute as stated in *United Enterprises, Inc. v. Superior Court*, 183 Cal.App.4th 1004, 108 Cal.Rptr.3d 25 (2010).  The so-called "*Cumis* rule" requires "insurers to fulfill their duty to defend by allowing insureds to select their own counsel and paying the reasonable costs for the independent counsel's representation."  *Hansen*, 131 Nev. at 747, 357 P.3d at 341.  Post-*Cumis*, California codified its standard in Civil Code § 2860(c).  Section 2860(c) does not cap attorneys' fees, but rather limits the insurer's obligation "to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended."

---

[6] Plaintiffs are seeking as damages the attorneys' fees and costs of their independent counsel, Wild, Carter & Tipton, but it appears that some of those attorneys' fees and costs were already paid by Nautilus, and, therefore, not proper damages.

Nautilus paid independent counsel, John Phillips, Esq. of Wild, Cater & Tipton, the same rate that Nautilus was paying the panel defense counsel representing Plaintiffs, Wolfe & Wyman.  The rate was $170 per hour.  This is a reasonable rate because it is exactly the rate that Nautilus paid panel defense attorneys retained in the ordinary course of business to defend Nautilus's insureds. Comparing the rates that Nautilus pays its defense counsel in the instant matter is not appropriate because those attorneys are insurance coverage counsel, not insurance defense counsel, which requires a different level of expertise.  As independent counsel, Mr. Phillips was monitoring the defense of Plaintiffs in the Switzer Action, thus it was reasonable that he be paid the same rate as defense counsel.

### III.   NAUTILUS DID NOT ACT IN BAD FAITH.[7]

Nautilus did not act in bad faith because there was a genuine dispute regarding coverage and Nautilus did not knowingly and/or recklessly act unreasonable in its consideration of the re-tenders. Moreover, to the extent this Court determined that Nautilus's interpretation of the policy was in error, it was a reasonable error.

"Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only 'in rare and exceptional cases' when there is a special relationship between the victim and the tortfeasor." *Ins. Co. of the West v. Gibson Title Co., Inc.,* 122 Nev. 455, 461, 134 P.3d 698, 702 (2006); *see also Allstate Ins. Co. v. Miller*, 125 Nev. 300, 308, 212 P.3d 318, 324 (2009) (explaining that Nevada law, not the insurance policy, imposes obligations on insurers under the implied covenant of good faith and fair dealing).  The relationship between an insurer and its insureds is one such special relationship.  *Ins. Co. of the West,* 122 Nev. at 461, 134 P.3d at 702.

---

[7] Plaintiffs' Second Amended Complaint asserts that Nautilus acted in bad faith by not providing an adequate defense and instead filing a declaratory judgment action. (ECF No. 73 at ¶ 124).  Plaintiffs did not raise this argument in the Amended Pretrial Order. (ECF No. 388).  Nevertheless, Plaintiffs are seeking attorneys' fees and costs in defending the Coverage Action, which is not permissible because these are not damages proximately caused by any bad faith and Plaintiffs were not successful in the Coverage Action. "In insurance cases, the measure of damages for breach of the implied covenant of good faith and fair dealing is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." *United Investors Life Ins. Co. v.* Grant, 387 Fed.Appx. 683, 688 (9th Cir. 2010) (quotations and citations omitted).  "Proximate cause is any cause which in natural and continuous sequence, unbroken by any efficient intervening case, produces the injury complained of and without which the result would not have occurred." *Taylor v. Silva*, 96 Nev. 738, 741, 615 P.2d 970, 971 (1980) (quotations omitted).

"A violation of the covenant gives rise to a bad-faith tort claim." *Allstate*, 125 Nev. at 308, 212 P.3d at 324. "To prevail on such a claim, a plaintiff must prove that (1) an insurer-insured relationship exists; (2) the insurer breached its duty by refusing to defend or indemnify its insureds for a loss covered by the policy; (3) the denial is without proper cause, meaning the insurer has an 'actual or implied awareness of the absence of a reasonable basis for denying the benefits of the policy.'" *Ariz. Civil Constructors, Inc. v. Colony Ins. Co.* 481 F. Supp.3d 1141, 1151 (D. Nev. 2020) (quoting *Am. Excess Ins. Co. v. MGM*, 102 Nev. 601, 729 P.2d 1352, 1354-55 (1986)). In other words, "[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guar. Nat'l Ins. Co. v. Potter*, 112 Nev. 199, 206, 912 P.2d 267, 272 (1996). "It is not enough to show that, in hindsight, an insurer acted unreasonably; *the plaintiff must show that the insurer knew or recklessly disregarded that it was acting unreasonably*." *Fernandez v. State Farm Mut. Auto. Ins. Co.*, 338 F.Supp3d 1193, 1200 (D. Nev. 2018) *(emphasis added)*.

A.    **Nautilus' Denial of the Duty to Defend Was Reasonable and Not in Bad Faith.**

It was reasonable for Nautilus to rely upon the district court's summary judgment order in *Nautilus 1* to withdraw defense after receiving the first and second re-tenders. Nautilus had received a final judgment that it owed Plaintiffs no duty to defend, based in large part on the absence of any false statement in the Weide Email. Even though there was a discrepancy between the testimony provided with the re-tender and what Weide told Cottage Hospital in the Weide Email, the reason Nautilus gave for denying the first retender was that the Weide Email "was true." Moreover, even though the district court in Coverage Action did not consider whether the deposition testimony triggered the duty to defend, the district court did cast doubt on the likelihood that the new evidence would trigger the duty to defend.

In addition, although the re-tenders provided Nautilus with "new evidence," each was based on the same arguments previously made in the Coverage Action, which Judge Dorsey concluded there was no coverage for Plaintiffs. Nautilus had a reasonable basis for denying coverage because none of the proffered evidence established that a disparagement claim was being asserted in the Switzer Action. Not only were the pleadings specifically absent a cause of action for libel, slander or disparagement, they were void of the elements required to establish those claims. Furthermore, there is no evidence

14

that Nautilus had any "predisposition" when analyzing any of the re-tenders and the suggestion of such is baseless.  The evidence does demonstrate that Nautilus thoroughly investigated each of the re-tenders.  Nautilus's conduct does not  rise to the level of engaging in "grievous and perfidious conduct."

In denying the re-tenders, Nautilus reasonably applied California law to disclaim its duty to defend.  In the Coverage Action, the court agreed with Plaintiffs and Nautilus that California law applied to the tortious conduct alleged in the Switzer Action.  That court noted that any claims for libel, slander, or disparagement were governed by California law.  As such, in denying the re-tenders, it was certainly reasonable for Nautilus to look to California law discussing the definition of "disparagement" when the parties and the Coverage Action court agreed California law governed the claim in the Switzer Action.

## B.      There Was Never a Reasonable Opportunity to Settle Within Policy Limits.

Nautilus did not commit bad faith in not settling the Switzer Action.  "Generally, '[a]n insurer who has no opportunity to settle within policy limits is not liable for an excess judgment for failing to settle the claim.'"  *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 315, 212 P.3d 318, 328 (2009) (quoting 14 Couch on Insurance 3d § 203:18 (2005)).  The Nevada Supreme Court: "Other courts have held that the absence of a settlement offer within policy limits is not dispositive of the issue of the insurer's good or bad faith, but just one of the factors in determining whether an insurer acted in bad faith by failing to settle."  *Id.* (quotations and citation omitted)).  "Regardless, if there is a question of whether a settlement offer is within policy limits or whether the insured has the ability or willingness to contribute to the offer's excess, then the issues 'should be resolved in favor of the insured, *unless the insurer can show by affirmative evidence that there was no realistic possibility for settlement within [policy] limits and that the insured would not have made any contribution to a settlement above that amount*."  *Id.* (quotations and citation omitted) (*emphasis in original*).

As this Court noted in its summary judgment order, Nautilus did not have a duty to settle until there was a duty to defend and that was not triggered until July 28, 2017.  (ECF No. 315 at 38).  And, the timeframe to settle spanned between August 7, 2017 to August 9, 2017.  *Id.*  The evidence will show that there was no possibility of settlement within policy limits or that Switzer was willing to accept any settlement offer from Plaintiffs because there were non-economic condition required by

Plaintiffs that Switzer was not willing to accept—including without limitation, dismissal of the claim against Plaintiffs' counsel.  Also, the evidence will show that although Plaintiffs were willing to contribute towards settlement, it was money that would be paid over a certain amount of time, to which Switzer did not agree.

## IV.   NAUTILUS DID NOT VIOLATE THE UNFAIR CLAIMS PRACTICES ACT.

Regardless of whether Nautilus breached the insurance contract, Nautilus did not commit unfair claims practices in violation of NRS § 686A.310 because Nautilus acted reasonably and fairly at all times in its handling of the claim.  Under Nevada law, when an insurer has not acted unreasonably or unfairly in the handling of the claim, the requirement to support a claim for unfair claims practices has not been met.  *See Igartua v. Mid-Century Ins. Co.,* 262 F.Supp.3d 1050, 1055 (D. Nev. 2017).

### A.   Nautilus Did Not Mispresent Pertinent Facts or Policy Provisions.

Plaintiffs assert that Nautilus violated NRS § 686A.310(1)(a): "misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage issue."  "This subsection prohibits such malfeasance as an insurer misrepresenting the terms of an insurance policy to its insured, or misrepresenting to its insured facts that are within the insurer's knowledge that could give rise to coverage."  *Zurich American Ins. Co. v. Coeur Rochester, Inc.*, 720 F.Supp.2d 1223, 1236 (D. Nev. 2010).  Plaintiffs claim that Nautilus violated this subsection in the following ways: (1) Nautilus's intent to represent Plaintiffs through the appeal as stated in its November 7, 2016 letter; (2) Nautilus misstated the applicable law with respect to paying Plaintiffs' counsel in the Switzer Action; (3) Nautilus misstated the applicable law governing the terms of the Policy; (4) Nautilus had already determined there was no potential coverage when Nautilus was reviewing the re-tenders; and (5) Nautilus incorrectly stated that there could be no bad faith when there is no duty to defend.

The November 7, 2016, letter did not misrepresent pertinent facts or policy provisions relating to coverage.  The letter specifically informed Plaintiffs that Nautilus did not have a duty to defend pursuant to the Coverage Action ruling.  Nautilus represented that despite this ruling, it would continue to defend under a reservation of rights.  Nautilus's reservation of rights letters continued to notify Plaintiffs that Nautilus reserved its right to withdraw its defense of Plaintiffs in the Switzer Action.  The promise to continue to defend Plaintiffs did not constitute misrepresentation of pertinent facts

relating to coverage.  Rather, it was a statement of Nautilus's intentions despite the Coverage Action ruling.

Nautilus justifiably relied on California law given that the Coverage Action court agreed with the parties that California law applied to the tortious conduct alleged in the Switzer Action.  Nautilus's statements as to the applicable law are not misrepresentations of fact, but its analysis of the applicable law to Plaintiffs' counsel's fees and the interpretation of the Policy.

Nautilus properly investigated the claim and re-tenders and represented facts bearing on coverage appropriately to the Plaintiffs.  In each re-tender, Nautilus provided an analysis of its coverage determination, which is not a misrepresentation of "pertinent facts" relating to the coverage.  *See Zurich Am. Ins. Co.*, 720 F.Supp.2d at 1236 (noting that the denial letter was not misrepresentation of the policy or pertinent facts but an analysis of the policy and facts pertinent to the insured's claims). Plaintiffs have no evidence that Nautilus misrepresented to Plaintiffs facts that were within Nautilus's knowledge that could give rise to coverage.

Finally, Nautilus's statement that there was no bad faith because there was no duty to defend is not a misrepresentation of "pertinent facts" or policy provisions relating to coverage.  Again, this was Nautilus's analysis of whether there was bad faith in determining that there was no duty to defend, relying on the court's determination in the Coverage Action.

### B.    Nautilus Promptly Communicated and Responded to Plaintiffs.

Plaintiffs assert that Nautilus violated NRS § 686A.310(1)(b): "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." Plaintiffs argue that Nautilus violated this subsection when it failed to inform, document, and analyze Plaintiffs' tenders of defense and failed to communicate with Plaintiffs in a timely manner when it withdrew the defense in the Switzer Action.

The evidence will show that Nautilus promptly responded to each of Plaintiffs' tenders.  In each instance, Nautilus informed Plaintiffs that it was investigating the tender and asked for additional information from Plaintiffs to properly analyze the tender, which Plaintiffs delayed in providing. Additionally, Nautilus's reservations of rights letters informed Plaintiffs that Nautilus reserved its right to withdraw from the defense.  Nautilus timely communicated its withdrawal of the defense after the

court in the Coverage Action denied Plaintiffs' motion for reconsideration, and Nautilus assessed that the no-coverage determination would be upheld on appeal, which it ultimately was.

### C.     Nautilus Implemented Reasonable Investigation Standards.

Plaintiffs assert that Nautilus violated NRS § 686A.310(1)(c): "failing to adopt and implement reasonable standards for prompt investigation and processing of claims arising under insurance policies."  Plaintiffs contend that despite heavy litigation over the Policy, there is no documentation that shows that Nautilus made a coverage determination or completed its investigation into the Interference with Prospective Economic Advantage claim alleged in Switzer's Cross-Complaint. Plaintiffs also claim that Nautilus improperly shifted its duty to investigate onto Plaintiffs, waiting for Plaintiffs to provide evidence of coverage while failing to conduct its own investigation.  These contentions do not relate to whether Nautilus has reasonable standards in place for prompt investigation and processing of claims arising under the Policy.

Contrary to Plaintiffs' contentions, Nautilus investigated and evaluated each re-tender independently.  In doing so, Nautilus asked Plaintiffs to provide more information to assist in Nautilus's investigation of each re-tender.  In each re-tender, Nautilus explained its analysis in denying coverage.

Nautilus did not shift its duty to investigate the re-tenders when it invited Plaintiffs to provide any new information that may trigger coverage.  Rather, this invitation shows Nautilus's willingness to investigate any new information that may trigger coverage.

### D.     Nautilus Timely Informed Plaintiffs that it was Defending Under a Reservation of Rights and Properly Withdrew Its Defense.

Plaintiffs assert that Nautilus violated NRS § 686.310(1)(d): "failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured."  Plaintiffs argue that it initially tendered the defense to Nautilus on November 14, 2013, but Nautilus did not communicate its decision to defend under a reservation of rights until May 19, 2014.  Plaintiffs also argue that notifying Plaintiffs on July 6, 2017, that Nautilus was withdrawing the defense on August 1, 2017, was untimely given that trial started August 22, 2017.

The evidence will show that after Plaintiff sent the initial tender on November 14, 2013, Nautilus was investigating coverage and determining whether it had a duty to defend in the Switzer

Action.  Indeed, a few weeks after the tender, Nautilus's counsel informed Plaintiffs' counsel that there were no allegations of personal or advertising injury for slander, libel or disparagement and asking if there was any extrinsic evidence they would like Nautilus to consider.  Plaintiffs' counsel then asked Nautilus to reconsider its denial.  Plaintiffs' counsel provided access to Nautilus's counsel to review numerous documents in evaluating whether there was coverage.  Plaintiffs' counsel inquired as to the status of Nautilus's decision on coverage and Nautilus's counsel promptly responded each time that it was still investigating and evaluating coverage.  Moreover, on March 25, 2014, Nautilus's counsel informed Plaintiffs' counsel that Nautilus would defend under a reservation of rights and asked Plaintiffs' counsel to forward all defense invoices from date of tender to be considered for payment. Nautilus then issued its reservation of rights letter on May 19, 2014.  This evidence shows that Nautilus was investigating the claim and kept Plaintiffs apprised of what Nautilus was doing until it made its decision to defend under a reservation of rights.

Nautilus's letter notifying Plaintiffs that it was withdrawing its defense was timely and proper. Nautilus sent the letter shortly after the court in the Coverage Action denied Plaintiffs' motion for reconsideration thereby upholding the determination that the Policy did not cover the claims asserted in the Switzer Action.  Nautilus had repeatedly informed Plaintiffs that it believed it had no duty to defend under the Policy and that it could withdraw its reserved rights defense.  Indeed, Nautilus made this statement in the November 2016 letter agreeing to provide the reserved rights defense even though the court in the Coverage Action had already determined there was no duty to defend. Nautilus also reiterated this information in all of its reservation of rights letters and in the letter notifying Plaintiffs that it was withdrawing the defense.  Based on the prior notices of the right to withdraw and the timing of the withdrawal notice, Nautilus acted fairly with respect to its insureds.

### E.    Nautilus Did Not Fail to Settle the Switzer Action.

Plaintiffs assert that Nautilus violated NRS § 686A.310(1)(e) : "failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." This subsection requires that the insurer's liability be reasonably clear.  *Arlitz v. Geico Casualty Co.*, Case No. 2:19-cv-00743-CDC, 2022 WL 17155941, at *20 (D. Nev. Nov. 22, 2022).

Here, as this Court noted in its Summary Judgment Order, it was disputed when the duty to

defend was triggered.  (ECF No. 315 at 38).  This Court also determined that the duty to defend was triggered after the first re-tender on July 28, 2017, but until then Nautilus had no duty to defend, and therefore, no duty to settle.  *Id*.  This Court acknowledged that the court in the Coverage Action denied Plaintiffs' motion for relief from judgment thereby casting doubt on whether the deposition testimony triggered the duty to defend.  *Id*.  Finally, this Court determined that Nautilus's consideration of settlement or not to settle spans from August 7, 2017 to August 9, 2017.  *Id*.

Given the decisions in the Coverage Action, i.e., that Nautilus had no duty to defend and that the deposition testimony would likely not trigger coverage, Nautilus's liability was not reasonably clear during the relevant settlement timeframe or at any point in time during the Switzer Action.

### F.    Nautilus Did Not Compel Plaintiffs to Litigate for Benefits Owed.

Plaintiffs assert that Nautilus violated NRS § 686A.310(1)(f): "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered."  Plaintiffs contend that Nautilus violated this subsection because it forced Plaintiffs to litigate to enforce the duty to defend and costs for independent counsel.  This subsection does not apply to Plaintiffs' argument.  *See Young v. Mercury Casualty Co.*, Case No. 2:12-cv-00091-RFB, 2016 WL 4083217, at *7 (D. Nev. July 29, 2016) (insured demanded the full amount of the policy, the insurer offered $0, while the insured received the full amount of the policy).

### G.    Plaintiffs Cannot Recover Attorneys' Fees and Costs as Special Damages Under the Unfair Claims Practices Act.

Plaintiffs may contend that they are entitled to attorneys' fees as special damages under Nevada's Unfair Claims Practices Act because subsection 2 permits any damages for the violation of the act, including: "(f) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered."  NRS 686A.310(f).  However, courts have interpreted that the Nevada's Unfair Claim Practices Act does not permit attorneys' fees as damages.

In *Rosas v. Geico Casualty Company,* 2002 WL 2440953 at *4, 2:18-cv-01200-APG-NJK (D. Nev. Jan. 26, 2022), the court addressed a motion in limine to exclude evidence regarding attorneys' fees and costs.  In addressing this motion, the court recognized that "I am not aware of any Nevada case holding that a plaintiff may recover attorneys' fees as special damages for a breach of the Nevada Unfair Claims Practices Act." *Id*.  And in *Tracey v. American Family Mutual Insurance Company*, 2010 WL 5477751 at *4, 2:09-CV-1257-GMN-PAL (D. Nev. Dec. 30, 2010), the plaintiff argued that NRS § 686A.310 permits attorneys' fees as damages.  The plaintiff specifically argued that NRS § 686A.310(2) provides for "any damages" if the insured is compelled to litigate a claim and incur attorneys' fees because the insurance company refuses to pay the amounts due under the policy of insurance. *Id*.  The jury found that the defendant violated NRS § 686A.310(1)(f).  In reviewing whether the statute permitted attorneys' fees as damages, the court analyzed a Ninth Circuit ruling that interpreted a similar statute under Oregon law. *Id*. at *5.  In reviewing *Clausen v. M/A New Carissa*, 339 F.3d 1049 (9th Cir. 2003), the court acknowledged that the Oregon statute specifically defined damages to include attorney fees, while noting that the Nevada Unfair Claims Practices Act did not "delineate attorney fees as an element of damages." *Tracey*, 2010 WL 54477751 at *5.  The court further stated that it failed to find any Nevada case holding that a plaintiff may receive attorneys' fees as special damages under the Nevada Unfair Claims Practices Act. *Id*.  The court recognized that there were recently legislative efforts to clarify this issue but NRS § 686A.310 "was never amended to authorize attorney's fees." *Id*.

## V.   <u>NAUTILUS'S CROSS-CLAIM FOR UNJUST ENRICHMENT[8]</u>

Nautilus is entitled to judgment on its counterclaim for unjust enrichment[9] in the total amount of $876,744.95 against Plaintiffs, representing defense costs Nautilus paid from February 25, 2015,[10]

---

[8] Nautilus's claims should have been styled as a counterclaim.

[9] Nautilus asserts three counterclaims against Plaintiffs for unjust enrichment, equitable estoppel, and equitable subrogation; however, each claim requests reimbursement of attorneys' fees and costs that Nautilus expended on behalf of its insureds in the *Switzer* Action.  (ECF No. 167, at pp. 17- 27.). Based on *Nautilus Ins. Co. v. Access Medical, LLC, et al.*, 137 Nev. 96, 482 P.3d 683 (2021), which identified that unjust enrichment is the theory under which Nautilus was entitled to reimbursement of defense costs incurred, Nautilus is only pursing its counterclaim for unjust enrichment at trial.

[10] In the Coverage Action, Judge Dorsey determined that Nautilus was entitled to reimbursement of defense costs, but only through the date Nautilus filed its declaratory relief complaint on February 24,

to July 27, 2017, on behalf of Plaintiffs in the Switzer Action when Nautilus had no duty to defend.

The Nevada Supreme Court held in *Nautilus Insurance Company v. Access Medical, LLC, et al.*, 137 Nev. 96, 482 P.3d 683 (2021) that restitution and unjust enrichment underpin an insurer's right to reimbursement of defense costs paid under a reservation of rights where a court determines that an insurer never owed a duty to defend, the insurer expressly reserved its rights to seek reimbursement in writing after a defense was tendered, and the policyholder accepted the defense from the insured.  *Id.* at 101-02, 482 P.3d at 688-89 (rejecting that the insurance policy and contract principles control because the contract is not implicated where there is no coverage for a claim).  The Court held that where a court determines that an insurer does not owe a defense under its policy, yet the insurer pays for such defense under a reservation of rights when it had no obligation to do so, equity demands that the policyholder reimburse its insurer.  *Id.* at 102, 482 P.3d at 689.  Equity was at the forefront of the Court's decision based, in part, on the fact that Nevada law "more forcefully encourages insurers to offer to defend doubtful claims," thus "it is only fair to permit those insurers to recover costs they never agreed to bear."  *Id.* at 103, 482 P.3d at 690.

In short, reimbursement looks at four elements: 1) the court's determination of no duty to defend, 2) whether the insurer's reimbursement right was preserved, 3) whether the policyholder accepted the defense, and 4) the reasonableness of the defense costs requested.

Element 1:  Here, this Court already stated that Nautilus had no duty to defend through July 27, 2017.  (ECF 315, at 38:17-19).  As recognized by the Ninth Circuit in the Coverage Action appeal, that the insurer's duty to defend may be triggered at a later time based on new evidence does not undermine the Nevada Supreme Court's rationale that an insurer may obtain reimbursement of defense costs paid when the policy did not require that the insurer pay in the first instance because there was no duty to defend at the time of incurring the expense, which is the case here.

Elements 2 and 3:  The Ninth Circuit in the Coverage Action appeal established factors 2 and 3 based on the very same factual underpinning that this Court will consider at trial.  Here, Nautilus advised Plaintiffs on at least five occasions that it was reserving all rights, including the right to seek

2015, and on March 28, 2023, Judge Dorsey awarded those defense costs incurred through February 24, 2015.

reimbursement.  Nautilus's May 19, 2014, October 2, 2014, October 17, 2014, April 5, 2016, and November 7, 2016 correspondence to Plaintiffs contained similar statements that Nautilus "further reserves the right to seek reimbursement for any and all attorney fees, expert fees, defense costs, indemnification payments, and any other litigation-related expenses in connection with its defense and indemnification."  Next, Plaintiffs accepted Nautilus's defense when they did not reject Nautilus's appointment of defense counsel, Wolfe & Wyman and later Gordon Rees, and independent counsel, Wild, Carter & Tipton, and payment of counsels' invoices and other vendor charges.  As acknowledged by the Ninth Circuit, Plaintiffs cannot dispute that they accepted Nautilus's defense.

Element 4:  The reasonableness of the defense costs paid by Nautilus remains for trial, and Nautilus submits that the amounts set forth below were reasonable, necessary, and properly incurred in defense of Plaintiffs in the Switzer Action.  Here, Nautilus received invoices from defense counsel, independent counsel, a forensic accountant, a discovery facilitator, a mediator, an expert, court reporters, and others in connection with defense of Plaintiffs in the Switzer Action.  Nautilus paid a total of $876,744.95 on behalf of Plaintiffs between February 25, 2015, and July 27, 2017.  As is standard practice in the insurance industry, Nautilus's payments included deductions for counsels' excessive time and time spent on tasks unrelated to defense of Plaintiffs, or for unrelated costs.

| Vendor | Role | Total Paid: February 25, 2015 – July 27, 2017 |
|---|---|---|
| Wolfe & Wyman LLP | Original defense counsel assigned by Nautilus to represent Access Medical, LLC and Robert Wood in *Switzer* Action | $89,924.54 |
| Gordon Rees Scully Mansukhani LLP | Replacement defense counsel assigned by Nautilus to represent Access Medical, LLC and Robert Wood in *Switzer* Action | $425,546.77 |
| Wild, Carter & Tipton | Independent counsel selected by Access Medical, LLC and Robert Wood to represent Access Medical, LLC and Robert Wood in *Switzer* Action | $129,261.91 |
| Hemming Morse LLP | Forensic accountant | $197,024.22 |
| Dowling Aaron Incorporated | Access Medical, LLC and Robert Wood's portion of fees for discovery facilitator | $2,960.00 |
| JAMS Inc. | Access Medical, LLC and Robert Wood's portion of fees for case management and mediator's time (9/30/2016 mediation) | $1,500.00 |
| LA Best Color Imaging | Printing services | $2,869.63 |
| Barkley Court Reporters Inc. | Court reporter | $21,980.89 |
| Aptus Court Reporting | Court reporter | $1,294.84 |
| Wood & Randall | Court reporter | $1,120.20 |
| Sean D. Early MD | Expert services | $2,250.00 |
| IFY Travel & Tours Inc. | Travel services | $1,011.95 |
| **Total:** | | **$876,744.95** |

In Nevada, the reasonable value of an attorneys' services considers the following factors set forth in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345,455 P. 2d 31 (1969):

(1) the qualities of the advocate: his [or her] ability, his [or her] training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.

*Id*. at 349, 455 P. 2d at 33.   Nautilus will demonstrate these fees were reasonable.

### A.        Plaintiffs' November 9, 2016 Letter Did Not Reject Nautilus's Defense.

On November 8, 2016, Plaintiffs responded to Nautilus's November 7, 2016, supplemental reservation of rights letter stating that "[Plaintiff] do no object to the continuing defense . . . [Plaintiffs] are not agreeing, however, to reimburse Nautilus for any costs and fees paid by Nautilus."   Here, Plaintiffs expressly accepted Nautilus continuing to pay their defense costs even after Judge Dorsey determined there was no duty to defend.   Plaintiffs' unilateral disagreement with the terms of the reserved rights defense provided by Nautilus is not a rejection of Nautilus's defense or a rejection of Nautilus paying defense costs.   Nautilus had no obligation to provide a defense but did so anyway and Plaintiffs appreciated the benefit of that defense. Reimbursement is necessary.

### B.        Independent Counsel Fees are Reimbursable Defense Costs.

In Nevada, the duty to provide independent counsel where a conflict of interest exists between an insurer and insured is part of an insurer's duty to defend.  *See Hansen*, 357 Nev. 338 at 341-42 (2015) (requiring insurers "to satisfy its contractual duty to provide representation by permitting the insured to select independent counsel and by paying the reasonable costs of such counsel.")  *Hansen* did not establish an independent-counsel duty separate from the insurer's contractual duty to defend. Here, Nautilus paid for independent counsel to satisfy the potential duty to defend.  Because the duty to defend did not exist through July 28, 2017, Nautilus is entitled to reimbursement for the defense fees and costs paid to Wild, Carter & Tipton in the amount of $129,261.91.

/ / /

/ / /

/ / /

Date:  May 8, 2023                          **ARMSTRONG TEASDALE LLP**

                                            By:___*/s/ Tracy A. DiFillippo*_____
                                               TRACY A. DIFILLIPPO, ESQ.
                                               Nevada Bar No. 7676
                                               MICHELLE D. ALARIE, ESQ.
                                               Nevada Bar No. 11894
                                               7160 Rafael Rivera Way, Suite 320
                                               Las Vegas, Nevada 89113

                                               WILLIAM S. KRONENBERG, ESQ. (LR IA 11-2)
                                               California Bar No. 133730
                                               KRONENBERG LAW PC
                                               1 Kaiser Plaza, Suite 1675
                                               Oakland, California 94612

                                            *Attorneys for Defendant/Counter-claimant Nautilus Ins. Co.*

**CERTIFICATE OF SERVICE**

     Pursuant to Fed.R.Civ.P.5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of ARMSTRONG TEASDALE LLP, and that the foregoing document was served through the CM/ECF to all parties on the service list.

Date: May 8, 2023

                                       _/s/ Christie Rehfeld_
                                       An employee of Armstrong Teasdale LLP